IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM F. DAVIS, III ) | C. A. No. 04-209-SLR |
| ) | |
| v. ) | TRIAL BY JURY OF |
| ) | TWELVE DEMANDED |
| CORRECTIONAL MEDICAL SERVICES, ) | |
| INC. (incorrectly designated as "Correctional ) | |
| Medical Systems"), et al. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT, CORRECTIONAL MEDICAL SERVICES, INC.** (incorrectly designated as "Correctional Medical Systems") **TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, Correctional Medical Services, Inc. (incorrectly designated as "Correctional Medical Systems") ("CMS"), through its undersigned counsel, hereby submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiff's Complaint and, in support thereof, avers as follows:

1. Plaintiff is an inmate incarcerated at the Multi Purpose Criminal Justice Facility (Gander Hill) in Wilmington, Delaware.  He filed a Complaint on or about April 7, 2004.  D.I. #2.

2. Plaintiff's Complaint alleges civil rights violations under 42 U. S. C. §1983.[1]

3. Defendant, CMS, was the medical services provider in Delaware's prisons from July 1, 2000 through June 30, 2002.[2]

4. Plaintiff alleges in his Complaint that he informed the medical care unit at Gander Hill on May 22 2002 that he was experiencing abdominal pain, that he was seen by the medical

---

[1] 42 U.S.C. §1983 reads, in part:
  Every Person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory… subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in the action at law, suit in equity, or other proper proceeding for redress.

[2] CMS became the medical services provider in Delaware's prisons again on July 1, 2005.  Plaintiff's allegations do not encompass CMS' current tenure period.

staff and was diagnosed with two small ventral hernias, that he refused at that time to have the hernias reduced and was given pain medicine and ordered to wear an "abdominal binder", that he was seen again on May 23, 2002 when it was determined that the two hernias were easily reducible and were not causing plaintiff pain, that he complained of pain of June 6, 2002, that diagnostic tests were performed which revealed that the hernias were not reducible and plaintiff's bowel movements were decreased, that consequently, plaintiff was admitted to the infirmary for six (6) days where he was placed on a liquid diet and given a stool softener and pain medication, that on June 13, 2002 his diet was increased, his symptoms resolved and an x-ray showed that his abnormality had cleared, that plaintiff was still taking pain medication then, and that on July 3, 2002 he complained of pain during a follow-up examination and was issued Tagament. D.I.#2, Ex.B. See also Memorandum Opinion dated 4/25/05, D.I. #19.

5. A claim must be dismissed because it fails to allege sufficient facts to support a cognizable legal claim. Fed. R. Civ. P. 12(b)(6). Even a pro se litigant must plead sufficient facts assisting a legal claim. See Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996). Further, the Complaint "must provide the defendants with fair notice of what plaintiff's claim is and the grounds upon which it rests." United States v. City of Philadelphia, 644 F.2d. 187, 204 (3rd Cir. 1980), citing Conley v. Gibson, 355 U.S. 41, 47 (1957).

6. In order to state a cognizable claim for violations of civil rights in connection with medical treatment, "a prisoner must allege and prove acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977). A plaintiff must prove that the defendant either acted with "reckless disregard" or "actual intent" to disregard his medical condition to satisfy the "deliberate indifference" test set forth in Estelle. Benson

v. Cady, 761 F. 2d 335, 339 (7th Cir. 1985).  To show "deliberate indifference", the plaintiff must demonstrate that the individual attending to his medical condition consciously disregarded a substantial risk of serious harm.  Farmer v. Brennan, 511 U.S. 825, 838 (1994).  In addition, a plaintiff must allege that his/her medical condition is "serious".  Boring v. Kozakiewicz, 833 F. 2d 468, 472 (3d Cir. 1987), cert. denied, 485 U.S. 991 (1988).  Mere medical malpractice does not give rise to a claim for a violation of the Eighth Amendment to the U.S. Constitution.  Durmer v. O'Carroll, 991 F. 2d 64, 67 (3d Cir. 1993).  A claim for medical malpractice should be brought in state court under the applicable tort law, not in federal court.  Estelle, 429 U.S. at 107.

7. In order to be liable in a civil rights action, a defendant must have personal involvement in the alleged wrongs.  Rode v. Dellarciprete, 845 F.2d. 1195, 1207 (1988) (citations omitted).  "Personal involvement" may be demonstrated through "allegations of personal direction or of actual knowledge and acquiescence."  These allegations, however, must be made with appropriate particularity.  Id.

8. Although plaintiff's Complaint lists CMS as defendant, it fails to set forth any specific allegations of personal involvement in the alleged violation of plaintiff's civil rights.  Accordingly, CMS is entitled to dismissal of all claims against it.

9. CMS may only be held liable for a policy or custom that demonstrates deliberate indifference to plaintiff's serious medical needs.  Miller v. Correctional Medical Systems, Inc., 802 F. Supp. 1126 (D.Del. 1992), citing Monell v. Dept. of Social Services, 436 U.S. 658 (1978).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict'".  "'Custom, on the other hand, can proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well settled and

permanent as virtually constitute law". Whalen v. Correctional Medical Services, et al., 2003 U.S. Dist. LEXIS 14562, Mem. Op. (Aug. 18, 2003) citing Miller, 802 F. Supp. at 1132. See Exhibit "A". "To state a claim, plaintiff would have to demonstrate that CMS as a policy or custom of not providing necessary medical care to inmates". CMS would not be liable unless it had a policy of custom that encouraged or otherwise caused its physicians to not provide such necessary services." Id.

10. Plaintiff has failed to allege nor could he prove the existence or execution of any unconstitutional policy or custom on the part of CMS constituting deliberate indifference to a serious medical need. On contrary, plaintiff was treated for his medical condition from the beginning of his date of complaint until the end of CMS' tenure at the subject time. Plaintiff has also failed to plead that CMS had "personal involvement in the alleged wrong". The fact that he believes that he should have been afforded treatment other than that which was provided is merely a disagreement over the course of medical treatment and does not rise to a constitutional issue. Whalen, C.A. No. 02-246-JJF Mem. Op. at 5. Accordingly, the §1983 – based claims in plaintiff's Complaint must fail.

11. CMS is also entitled to dismissal of plaintiff's Complaint because it cannot be held responsible under a theory of respondeat superior in a §1983 action. Private corporations that provide medical services for the State cannot be held liable under a theory of respondeat superior. Swan v. Daniels, 923 F. Supp. 626, 633 (D. Del.1995); Miller v. Correctional Medical Systems, Inc., 802 F. Supp. 1126, 1132 (D. Del. 1992).

12. Plaintiff's state law based claims, to the extent that his Complaint purports to plead them, must also necessarily fail because plaintiff's Complaint was not filed with an affidavit of merit. Pursuant to 18 Del. C. §6853 (a)(1), an affidavit of merit must accompany a medical negligence Complaint filed after October 9, 2003 or "the Clerk of Court shall

refuse to file the Complaint and it shall not be docketed through the Court." Where the Clerk of Court or Prothonotary mistaken accepts a medical negligence complaint without the required affidavit of merit, a defendant's remedy is dismissal of the Complaint. Jackson v. First Correctional Medical Services, 380 F. Supp. 2d 387, 392, (D.Del. 2005). Thus, to the extent that plaintiff's Complaint purports to include state law claims, those state laws claims must be dismissed as a matter of law. Jackson, 380 F. Supp. 2d at 392.

13. The plaintiff has also failed to exhaust his administrative remedies available to him as required by the Prison Litigation Reform Act of 1996. 42 U.S.C. §1997e (a) provides that:

> No action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available to him are exhausted.

14. The Courts have upheld the requirements of 42 U.S.C. §1997e(a), and stated that inmates must first exhaust all the administrative remedies available to them prior to filing a §1983 action premised upon prison conditions. Nyhuis v. Reno, 204 F.3d 65, 67 (3rd Cir. 2000); see also Booth v. Churner, 206 F.3d 289, 294-95 (3d Cir. 2000) cert. granted, No. 99-1964, 2000 WL 798208 (Oct. 30, 2000) (§1997e (a) is applicable to all inmate claims except those challenging the fact or duration of confinement).

15. Prison conditions have been defined to include the environment in which the prisoners live, the physical conditions of that environment and the nature of the services provided therein. Booth, 206 F.3d at 291.

16. The Delaware Department of Corrections has established administrative procedures that an inmate must follow to file a grievance. See Exhibit "B", at 5 and 6  An inmate must file a grievance , on Form #584, with the Inmate Grievance Chairperson (IGC) who then

forwards it to the inmate's housing unit supervisors. The supervisor investigates the grievance and attempts a resolution. If the grievance is not resolved, it is referred to the Resident Grievance Committee (RGC) to conduct a hearing. The grievant will be offered the opportunity to participate in the RGC hearing through examination of all information presented and discussion with all participants. The RGC will then make a recommendation that is forwarded to the warden/warden's designee. If the warden/warden's designee and the grievant do not concur with the RGC recommendation, then the grievance is referred to the Bureau Grievance Officer (BGO).

17. The BGO will review the grievance file. Concurrence with the warden/warden's designee decision and signature by the BGO and Bureau Chief of Prisons ends the inmate grievance procedure process. The IGC closes the file and monitors issues of compliance. At the BGO's discretion, mediation between grievant and the warden/warden's designee may be attempted or outside review recommended. The Bureau Chief of Prisons may accept or reject the BGO's written recommendation. Decisions by the Bureau Chief of Prisons are final and not open to grievant interpretation. The Bureau Chief of Prisons will return his final decision and the grievance form to the IGC for closure and monitoring for issues of compliance.

18. The Delaware Department of Corrections procedures also allow for appeals to be taken. <u>See</u> Exhibit "B", at 7. "The Grievant shall have 3 calendar days upon receipt of their copy of the Warden/Warden's Designee decision to appeal, as well as, to include any additional information for review at the next level."

19. 42 U.S.C. §2997e(a) should be applied without exception to promote the policy behind the exhaustion requirement, which is to allow the Department of Corrections an

opportunity to discover and correct mistakes.  <u>O'Neil v. Kearney, et al.</u>, C.A. No. 99-849-SLR, Mem. Order, Robinson, J. (Nov. 6, 2000), attached hereto as Exhibit "C".

20. It is clear from plaintiff's Complaint that he is complaining about a prison condition which, under 42 U.S.C. §1997e(a), requires him to exhaust administrative remedies available to him.  Plaintiff asserts that he filed a grievance and states that a treatment plan was being worked out.  D.I. #2.  By his own account, then, plaintiff establishes that the administrative process was not complete, such that he failed to exhaust all administrative remedies.

21. ICMS' tenure as healthcare provider in Delaware's prisons was from July 1, 2000 through June 30, 2002.  As set forth above, plaintiff was afforded medical care by CMS from the date of his initial complaint on May 22, 2002 through expiration of CMS' tenure at the time, namely June 30, 2002.  To the extent that plaintiff alleges violations which purportedly occurred after June 30, 2002, CMS cannot be held liable for them.

WHEREFORE, defendant Correctional Medical Services, Inc. (incorrectly designated as "Correctional Medical Systems"), respectfully moves this Honorable Court to enter the attached Order, dismissing plaintiff's Complaint with prejudice.

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN

BY:   */s/ Kevin J. Connors*
Kevin J. Connors, Esquire #2135
1220 North Market Street, 5th Fl.
P.O. Box 8888
Wilmington, DE 19899-8888
Attorney for Defendant,
Correctional Medical Services, Inc
(incorrectly designated as "Correctional Medical Systems")

Dated: March 3, 2006
\15_A\LIAB\KJCONNORS\LLPG\336919\VLLUCAS\13252\00161