IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM F. DAVIS, III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-209-SLR |
| ) | |
| CORRECTIONAL MEDICAL SYSTEMS,) | |
| FIRST CORRECTIONAL MEDICAL, ) | |
| NURSE BETTY BRADLEY, and ) | |
| DR. BENJAMIN ROBINSON, ) | |
| ) | |
| Defendants. ) | |

William F. Davis, III, Delaware Correctional Center, Smyrna, Delaware. Pro se.

Kevin J. Connors, Esquire, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware. Counsel for Defendant Correctional Medical Systems.

Daniel L. McKenty, Esquire, and Dana Spring Monzo, Esquire, McCullough & McKenty, P.A., Wilmington, Delaware. Counsel for Defendants First Correctional Medical, Betty Bradley, and Dr. Benjamin Robinson.

**MEMORANDUM OPINION**

Dated: March 29, 2007
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

Presently before the court is plaintiff's motion for default judgment against defendant First Correctional Medical ("FCM"), FCM's renewed motion to dismiss, and Dr. Benjamin Robinson ("Dr. Robinson") and Betty Bradley's ("Bradley") motion to dismiss.[1] (D.I. 49, 50, 66) For the reasons set forth below, the court will deny the motion for default judgment and will grant in part and deny in part the motions to dismiss filed by FCM, Dr. Robinson, and Bradley.

## II. BACKGROUND

Plaintiff, an inmate at the Delaware Correctional Center ("DCC"), filed this civil rights complaint pursuant to 42 U.S.C. § 1983. (D.I. 2) The defendants named in the original complaint are Correctional Medical Systems[2] ("CMS"), FCM, and the Department of Correction ("DOC"). (D.I. 2) On September 21, 2004, the clerk's office sent copies of the complaint and USM-285 forms to the U.S. Marshal Service for service upon defendants. (D.I. 7) Early on in the case, the DOC returned its waiver of service. (D.I. 12) FCM and CMS, however, did not return the waiver of service and, as a result, the U.S. Marshal was required to personally serve these two defendants. FCM was personally served on January 13, 2006. (D.I. 36) Nonetheless, on November 15, 2004, well before it was personally served, FCM's attorney entered his appearance and, on November 1, 2005, filed a motion to dismiss. (D.I. 14, 30)

Plaintiff amended the complaint several times and added two new defendants:

---

[1] Bradley and Dr. Robinson's motion to dismiss adopts and incorporates FCM's renewed motion to dismiss. (D.I. 66)

[2] The correct name is Correctional Medical Services.

Dr. Robinson, who was the resident physician for FCM, and Bradley, who was employed as a nurse by FCM and CMS. (D.I. 17, 23, 33) Plaintiff seeks compensation for defendants' alleged deliberate indifference to a serious medical need while he was incarcerated at the Gander Hill Correctional Facility ("Gander Hill").

Plaintiff alleges that in May 2002, he was told by the medical department he had developed a ventral hernia. (D.I. 2) He alleges that he was seen on many occasions by Dr. Robinson but he never received proper help. Id. Plaintiff was in the infirmary from May 10 through May 20, 2002. (D.I. 2 Ex. C). Plaintiff alleges that he continued to complain of pain after he returned to his cell. Id. On June 17, 2002, Bradley allegedly told plaintiff that he was not going to the hospital, and that his problem was not a hernia but an obstruction of the bowels. (D.I. 2 Ex. C) Exhibits to the complaint indicate that as of July 15, 2002, it had been determined that surgery was not necessary. (D.I. 2 Ex. A, B) As of July 29, plaintiff continued to have pain to the extent that Tylenol 3 did not help. Id.

Plaintiff was written up for disciplinary action on August 2, 2002, after he became disruptive because he wanted medical attention due to pain. (D.I. 2 Ex.) Plaintiff alleges that his mother called Delaware Senator Margaret Henry's office on August 16, 2002. (D.I. 2 Ex. C) The Senator's office was told by the prison that plaintiff was to see a surgeon. Id. Surgery was performed on September 5, 2002. Id. It is alleged that plaintiff could have died from the bacteria in his feces if treatment had been delayed much longer. Id. Plaintiff specifically alleges that, as a result of the delay in treatment, his "intestine burst, [he] almost died, and [he] lost four inches of [his] intestines." (D.I. 2) Id.

2

## III. DISCUSSION

### A. Motion for Default Judgment

Entry of default judgment is a two-step process. Fed. R. Civ. P. 55(a), (b). A party seeking to obtain a default judgment must first request that the clerk of the court "enter. . .the default" of the party that has not answered the pleading or "otherwise defend[ed]," within the time required by the rules or as extended by court order. Fed. R. Civ. P. 55(a). Timely serving and filing a motion to dismiss under Fed. R. Civ. P. 12(b), precludes entry of default. See Francis v. Joint Force Headquarters Nat'l Guard, Civ. No. 05-4882(JBS), 2006 WL 2711459, at *2 (D.N.J. Sept. 19, 2006). Even if default is properly entered, the entry of judgment by default pursuant to Rule 55(b)(2) is within the discretion of the trial court. Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

Plaintiff moves for judgment by default on the basis that FCM was served with the complaint on July 29, 2006, yet it never filed an answer or otherwise defended itself in the case. FCM responded by filing a document opposing the motion and renewing its motion to dismiss. (D.I. 50) The opposition does not directly address the issue of judgment by default. Nonetheless, the court exercises its discretion and will deny the motion for default judgment.

FCM appeared in this case on November 15, 2004, just a few months after the complaint was filed, and it subsequently filed a motion to dismiss on November 1, 2005. (See D.I. 14, 30) Both actions occurred before FCM was actually personally served. The court concludes that the early filing of the motion to dismiss precludes entry of default and, therefore, will deny the motion for default judgment. (D.I. 49)

3

### B. FCM's Renewed Motion to Dismiss
### Bradley and Dr. Robinson's Motion to Dismiss

#### 1. Standard of Review

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). To that end, the court assumes that all factual allegations in plaintiff's pleading are true, and draws all reasonable factual inferences in the light most favorable to plaintiff. Amiot v. Kemper Ins. Co., 122 Fed. Appx. 577, 579 (3d Cir. 2004). However, the court should reject "unsupported allegations," "bald assertions," or "legal conclusions." Id. A Rule 12(b)(6) motion should be granted to dismiss a pro se complaint only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

#### 2. Service

FCM argues that it should be dismissed as a defendant because plaintiff has not demonstrated good cause why it was not served within 120 days. FCM's position is not well-taken. The court docket sheet indicates that, following screening of the case, on September 24, 2004, a copy of the complaint, the USM-285 form, notice of lawsuit and return of waiver form were forwarded to the U.S. Marshal for service, well within the 120 time period as set forth in the court's July 27, 2004. (See D.I. 6 ¶¶ 2, 3) FCM did not return the waiver of service and, as a result, the U.S. Marshal was required to personally

4

serve it. (See D.I. 36) FCM was personally served on January 23, 2006. (D.I. 36.) The delay in serving FCM is not attributable to plaintiff but, rather, is a result of FCM's own actions when it failed to execute the waiver of service. Accordingly, the court will deny the motion to dismiss on the basis of failure to timely serve.

FCM should be aware that Fed. R. Civ. P. 4(d)(2) states that "[i]f a defendant located within the United States fails to comply with a request for waiver made by a plaintiff located within the United States, the court shall impose the cost subsequently incurred in effecting service on the defendant unless good cause for the failure be shown." Therefore, FCM shall, within thirty days from the date of this order, show good cause for its failure to comply with the request for waiver of service.

### 3. Failure to State a Claim

FCM argues that because it has no vicarious liability in a § 1983 civil rights action, the complaint fails to state a claim against it. In order to state an inadequate medical treatment claim under the Eighth Amendment, an inmate must allege deliberate indifference to serious medical needs constituting "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. at 104. When a plaintiff relies on the theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. Sample v. Diecks, 885 F.2d 1099, 1110 (3d Cir. 1989); Miller v. Correctional Med. Sys., Inc., 802 F.Supp. 1126, 1132 (D. Del. 1992).

Here, in order to establish that FCM is directly liable for the alleged constitutional violations, plaintiff "must provide evidence that there was a relevant [FCM] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (because

5

respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

Plaintiff's complaint alleges that FCM employees were aware of plaintiff's condition, that they consistently ignored his complaints, and delayed treatment. The complaint alleges that it was not until a Delaware State Senator was notified of plaintiff's condition that surgery occurred. The court finds that, on a motion to dismiss, plaintiff has adequately alleged a policy or custom of ignoring medical complaints and delay of treatment. Therefore, FCM's motion to dismiss for failure to state a claim is denied.

### 4. Medical Malpractice

Defendants move to dismiss the medical negligence claim on the basis that plaintiff failed to accompany the complaint with an affidavit of merit as required pursuant to 18 Del. Code § 6853(a)(1). In plaintiff's response, he withdraws any claim of negligence. (D.I. 58) Therefore, the court will grant defendants' motions to dismiss the medical negligence claim.

### 5. Administrative Remedies

Defendants move for dismissal on the basis that plaintiff has failed to exhaust his administrative remedies. They rely upon plaintiff's statement in his complaint that he "filed a grievance due to being denied medical treatment. [He] was informed that a treatment plan would be worked out." (D.I. 2 ¶II. C.) Plaintiff opposes the motion arguing that the medical department "strung" him along with an inadequate treatment plan, that his grievance does not reflect a resolution, and that FCM was dismissed from its contract before there was a resolution.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Under § 1997e(a) "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). The exhaustion requirement is absolute, absent circumstances where no administrative remedy is available. See Spruill v. Gillis, 372 F.3d 218, 227-28 (3d Cir. 2004); Nyhuis v. Reno, 204 F.3d 65, 67 (3d. Cir. 2000); but see Freeman v. Snyder, No. 98-636-GMS, 2001 WL 515258, at *7 (D. Del. Apr. 10, 2001) (finding that if no administrative remedy is available, the exhaustion requirement need not be met). However, if prison authorities thwart the inmate's efforts to pursue the grievance, administrative remedies may be presumed exhausted, as no further remedies are "available" to him. Brown v. Croak, 312 F.3d 109, 112-13 (3d Cir. 2002).

As discussed, the complaint alleges that plaintiff filed a grievance and was told a plan would be worked out. Plaintiff also argues that he attempted to resolve the medical issue, to no avail. The court liberally construes the complaint and, at this stage of the proceedings, presumes that administrative remedies were exhausted. Therefore, at this time the court will deny the motions to dismiss on the basis of failure to exhaust administrative remedies.

### 6. Statute of Limitations

Defendants move to dismiss the claims against Dr. Robinson and Bradley arguing that the claims against them are barred by the applicable two year limitations period. Dr. Robinson and Bradley were served on January 22, 2007, and just recently filed a motion to dismiss adopting and incorporating the motion to dismiss filed by FCM on September 12, 2006. (D.I. 66) Counsel for FCM has entered her appearance on behalf of Dr. Robinson and Bradley. Id. The court will address their motion even though plaintiff has not filed a response to it because the limitations is identical to that raised in FCM's motion to dismiss and plaintiff filed a response to FCM's motion.

Defendants argue that the claims against Dr. Robinson and Bradley are barred by the limitations period and plaintiff is ineligible for equitable tolling.[3] Plaintiff argues that equitable tolling applies because he asserted his claim in the wrong forum and he did not have the correct addresses to serve these two defendants. Neither party addressed the issue of whether the filing of plaintiff's amended complaint relates back to the filing of the original complaint for purposes of determining the timeliness of his claims. Rule 15(c) of the Federal Rules of Civil Procedure can ameliorate the running of the statute of

---

[3]Generally, the tolling rules in § 1983 actions are taken from the rules of the forum state, unless they conflict with federal law or policy. See 42 U.S.C. § 1988; Hardin v. Straub, 490 U.S. 536, 539 (1989). Under Delaware law, equitable tolling occurs when the plaintiff can show he was ignorant of the wrong due to the defendant's fraud or fraudulent concealment or some other circumstance justifying why plaintiff did not have reason to know of the facts constituting the alleged wrong. Kahn v. Seaboard Corp., 625 A.2d 269, 276 (Del. Ch. 1993). Under federal law, equitable tolling is appropriate in three general scenarios: (1) where a defendant actively misleads a plaintiff with respect to his cause of action; (2) where the plaintiff has been prevented from asserting his claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts his claims in a timely manner but has done so in the wrong forum. Lake v. Arnold, 232 F.3d 360, 370 n.9 (3d Cir. 2000).

limitations on a claim by making the amended claim relate back to the original, timely filed complaint. See Singletary v. Pennsylvania Dept. of Corr., 266 F.3d 186, 189 (3d Cir. 2001); Nelson v. County of Allegheny, 60 F.3d 1010, 1015 (3d Cir. 1995).

Three conditions must be met for the successful relation back of an amended complaint that adds new parties: 1) the additional claim arose out of the same conduct as the original pleading; 2) the newly named party received such notice of the institution of the action within 120 days of the complaint so that the party will not be prejudiced in maintaining a defense on the merits; and 3) the newly named party must have known or should have known within 120 days that, but for a mistake made by the plaintiff concerning the newly named party's identity, the action would have been brought against the newly named party in the first place. Singletary, 266 F.3d at 189 (internal quotations and citations omitted).

The first condition is met as it is clear that the claims against Dr. Robinson and Bradley arise out of the same conduct as alleged in the original pleading. The court finds that the second condition, whether Bradley and Dr. Robinson had notice, is also met. Under Rule 15(c)(3), notice does not require actual service of process on the party sought to be added, and notice can be actual, constructive, implied or imputed. Singletary, 266 F.3d 195. Notice may be imputed through the "shared attorney" method. Id. at 196-198.

The "shared attorney" method is based upon the theory that, when an originally named party (i.e., FCM) and the parties added (i.e., Bradley and Dr. Robinson) are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action. See Singletary, 266 F.3d 196.

9

Here, the court's service order following screening of a complaint filed by a person who proceeds in forma pauperis, initiates the running of the 120 days for service to be effected. See 28 U.S.C. § 1915; Fed. R. Civ. P 4(c)(2). As evidenced by the court docket, the service order was entered on July 27, 2004, and FCM's attorney, Daniel L. McKenty from the law firm McCullough & McKenty, entered his appearance on November 15, 2004. (D.I. 6, 14). Hence, FCM was aware of the litigation within the 120 day period. Later, Dana Spring Monzo, an attorney from the same law firm, also entered her appearance on behalf of FCM. (See D.I. 30) She recently entered her appearance on behalf of Bradley and Dr. Robinson. (See D.I. 66)

Plaintiff's original complaint refers both to "Nurse Betty" (i.e., Bradley) and Dr. Robinson, and names FCM as a defendant. As discussed above, it is alleged that Dr. Robinson was the resident physician for FCM, and FCM employed Bradley as one of its nurses. Hence, the complaint on its face supports the inference that any investigation of the case by the shared attorneys (both with the same law firm) would have placed Bradley and Dr. Robinson on notice of the institution of the action.

Finally, the court finds that the third condition is also met for relation back of the amended complaint under Rule 15(c)(3)(B)'s mistake requirement. "Rule 15(c)(3)(B)'s mistake requirement has been held to be met (and thus relation back clearly permitted) for an amended complaint that adds or substitutes a party when a plaintiff makes a mistake by suing the state but not individual officers in a § 1983 action." Singletary, 266 F.3d at 202 n.5 (citing Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173, 1192 n.13 (3d Cir.1994); see Fromson v. Citiplate, Inc., 886 F.2d 1300, 1303-04 (Fed. Cir. 1989) (allowing plaintiff to relate back the amendment of the complaint to add the two owners

of a corporation which already was named as a defendant). Here, plaintiff proceeds pro se and initially sued only FCM. The court takes into consideration his pro se status and that § 1983 liability is predicated upon personal involvement in the alleged wrongdoing. Accordingly, the court finds that the claims in the amended complaint relate back to the timely filed original complaint because a mistake occurred when plaintiff originally sued only FCM and failed to name certain of its employees. The court finds no need to address the issue of equitable tolling.

Based upon the foregoing, the court will deny the motions to dismiss filed by Dr. Robinson and Bradley and FCM which seek dismissal based upon the limitations period.

## IV. CONCLUSION

Based upon the foregoing analysis, the court will deny plaintiff's motion for default judgment. (D.I. 49) The court will grant in part and deny in part FCM's motion to dismiss and Dr. Robinson and Bradley's motion to dismiss. (D.I. 50, 66) An appropriate order will be entered.