the United States District Court

William F. DAVIS III          ;
    Plaintiff                 ¦
    V.                        ¦  Civil Action No. 04-209-SLR
Correctional Medical Services ¦
First Correctional Medical    ¦
Nurse Betty Bradley, and      (
Dr. Benjamin Robinson         ¦
    Defendants.               ;

FILED

AUG 20 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## Motion for Summary Judgment

There is a genuine issue of material fact which requires trial.
Beard v. Whitley County Remc 840 F.2d 405, 410 (7th Cir 1988)
Valley Liquors inc. V. Renfield importers Ltd. 822 F.2d 656, 659, 7th
Cir 1987.

1. A letter from Raphael Williams to Josep R. Bider about my need to repair my ventral hernia.

2. A letter from Civil Division from Gregory E. Smith, about my medical Condition does not require a operation.

3. A letter from Lois Davis my mother about my medical Condition because in a lot of pain all the time.

4. Disciplinary report because I ask to see a doctor because I was in a lot of pain all the time.

5. my medical Report from doctor thomas mammer-findings, Vomiting, Abdominal pains for three month, lost 40 pounds, Sick looking. I was Admitted emergently from the doctor office to St. Francis hospital for Surgery.

I am entitled to Summary Judgment as a matter of law because there is a genuine issue of material fact which requires trial.

Date: 8-17-08
William F. Davis III

## Statement of Claim ①

Violations my eighth Amendment with Cruel and unusual punishment.
Delay or denial of Access to medical Attention.

I William F. Davis III I am Showing how First Correctional medical
incorperated who is Supervisory personnel with power And duty to ensure
Adequate medical Care is liable under 1983 for breaches of thier legal
obligation resulting in Constitutional Violations. First Correctional medical
duty to monitor nurse Betty Bradley and Doctor Benjamin Robinson to
ensure inmate is getting Adequate medical Care before a Serious illnesses
happen. nurse Betty Bradley and Doctor Benjamin Robinson displayed
diliberate indifference with a Culpable State of mind by them ignoring
I, William F. Davis III face a SubStantial risk of Serious harm and
disregard that risk by failing to take reasonble measures to abate it.
the letter from Raphael Williams Stated on may 22,02 I, William F. Davis III
Complained of Abdominal pains. the letter stated from the medical
department determined I had two small Ventral hernias.

First Correctional medical time period began June 30, 2002 when Correctional
medical Services left June 30, 2002.

the letter Stated my hernia were easily reducible and were not Causing pain
who reduce my hernia. I was seen again for pain and it was determined
the hernia <u>were not reducible and bowel Sounds were decreased.</u>

I, William F. Davis III was admitted to the infirmary and X-ray
revealed partial distal Small bowel obstruction but request for
Admission No.13 Stated I had no bowel Obstruction by the X-ray
report.

nurse Betty Bradley and Doctor Benjamin Robinson displayed deliberatly
indifferent they knew from the diagnosis that my hernia was not
reducible Causing all Kinds of Agonizing pain did nothing for 4½ months
resulting in losing 4-inches of my intestines, finding feces inside
of my Abdominal and leaving me with a very hidious and unattractive
long Scar on my obdominal.

②

I call because of the pain 6-10-02. on 6-14-02 I call because of pain and I could not hardly walk and little appetite. on 6-15-06 I call because of pain. on 6-16-02 I call because I was feeling weak and no appetite nauseated and throwing up. I call 6-17-02 to my mother Lois Davis nurse Betty stated I am not going to the hospital. I call my mother and told her I lost a lot of weight because I weighed my self. on 6-20-02 Still having pain and medical put me back on the pod.

6-21-02 Still having pain on the pod.

6-22-02 Still having pain and no appetite.

6-25-02 Still having pain lost 20 pounds.

6-26-02 Still having pain no appetite, weak and nauseated.

6-28-02 Still having pain.

7-7-02 Still having pain nausea, no appetite Stated I am getting weak and cramps.

7-8-02 Stated lost weight from 250 to 232 pounds.

7-9-08 Still having no appetite because I am nausea all the time and Stated nobody care about my problem over and over again.

7-29-02 Still having pain tylenal 3 not helping.

8-16-02 my mother call Senator margaret henry because I was weaker and weaker the pain was so bad I could not stand it no more think God for Senator margaret helping me.
Surgeon Doctor mammen Stated if Surgery was put off much longer because bacteria in feces was in my abdominal.
Request for Admission Defendants, stated no.13 on June 20.02 I had no bowel obstruction by the x-ray report lieing again.
letter from Civil Division by gregory E. Smith Deputy Attorney general Stated, the medical Services provider, based upon the results of diagnostic tests. has determined that your Son's present condition does not require an operation.

if infection had developed because misdiagnosis resulting finding ⑧
feces in my abdominal I would have suffered serious complications
or death.

1. Objective evidence: that condition seriously affect my health
or safety. the pain was so bad keeping me from normal actistites
such as work, exercise, sports and sleep. physically I were
injured losing 4-inches of my intestines and feces was in my
abdominal and a very hidious and unattractive long scar on my
obdominal. Psychologically is I almost die if infection had
developed because feces was in my abdominal. I do not trust doctor
or nurse they Cover-up and lie. it was bad and a long time in pain
for 4½ month. (Barney v. Pulsipher, 143 F. 3d 1299, 1311 (10ᵗʰ Cir1998).

2. Subjective evidence: Deliberate indifference doctor, Benjamin Robinson
and nurse Betty Bradley knew from the diagnosis that my hernia
was not reducible causing all kinds of agonizing because
they gave my pain pills all the time and did nothing for 4½
months. Farmer v. Brennan, 511 U.S. 825 (1994).
Estelle v. Gamble, 429 U.S. 97, 104, 97, S. Ct. 285 (1976).

▶ Serious Medical need under the Eighth Amendment: one that has been
diagnosed by a physician as mandating treatment or one that is so obvious
that even a lay person would easily recognize the necessity for a doctor's
attention. Hill v. DeKalb Reg'l youth, Det. Ctr. 40 F. 3d 1176, 1187 (11ᵗʰ Cir1994).
Courts usually agree that the medical need must be one that if left un-
attended poses a a substantial risk of serious harm. Taylor v. Adam, 221
F. 3d 1254, 1258 (11ᵗʰ Cir2000).
Brock v. Wright, 315 F.3d 158 (2d Cir. 2003).

I was in a lot of pain all the time because the letter from my mother
Lois Davis when I was calling home all the time showing I call
because of the pain date-6-2-02. Call again because of the pain
6-4-02 and no appetite could not eat.

Raphael Williams to Joseph R. Bider United States Senator ⑤
Stated, there were no other concerns such as nausea or vomitting
and he had positive bowel sounds but, medical record by Doctor
Mammen the Surgeon Stated, he has had intermittent Vomiting and
Abdominal pain for the past three months and there was CT
scan done Approximately a month ago the showed a near total
obstruction of the small bowel. medical trying to Cover-up again.
At the present time there is no reason to recommedd Surgery for this
condition as there is no clinical need to repair the ventral hernia.
but, Doctor the Surgeon Mammen stated Physical examiation when
he came to the office revealed a sick looking male. He was admitted
emergergently from the office to St. Francis hospital.
the Civil law generally calls a person reckless who acts or if the person
has a duty to act fails to act in the face of an unjustifiably high risk
of harm that is either know or so obvious that is should be known.
failed to act despite his knowledge demonstration inusual was
bypassed such procedures, plolicy and Custom a culpable state
of mind by nurse Betty Bradley and Doctor Benjamin Robinson
ignoring know or obvious proof delay requiring immediate emerency
treatment when my medical condition got worsened. Deterioration
of my health, examine the evidence my medical record from St.
Franics hospital show my intestines burst and massive fecal in my
Abdominal protein Calorie malnutrition lost 40 pounds of weight,
Sick looking, four month history of pain, Vomiting and Abdominal
pain for three month, A bowel obstruction for three. When surgery
was done I was in a intensive care unit because Chronic dehydration.
Disciplinary report show I been in a lot of pain because my hernia I want
to see a doctor but I was put in Solitary Confinement to punish me.

I receive substandard medical care by nurse Betty Bradley and Doctor (5)
Benjamin Robinson policy and procedure they did not follow the Standards
for health Services for jails national Commission on Correctionall health
Care.

Policy - is defined a facility official position on a particular issue related
to an organiztion operation.

Procedure - is defined as describing indetail Sometime in sequence how a
Policy is to be Carried out.
I did not get Adequat, Appropriate and Sufficient medical Care Standard
established by national Commission on Correctional health Care.
the defendant liable as if they had inflicted the pain themseleves by give
me pain medicantion to hide the herina problem making the Syptoms
Worst.

Date: 8-17-08
Sincerely, William F Darr III

## Grievance Exhaustion

I field a grievance due being denide medical treatment. I was informed by mrs. jean Long was the Superviory over seer stated a treatment plan would be work out.

Jones V. Bock, 127 S. Ct 910 (2007). the supreme court held that the PLRA exhaustion requirement is an affirmative defense not a pleading requirement. therefore Although exhaustion is necessary, Prisoners are not required to specially plead or demonstrate exhaustion in their complaints Id. At 919.

finally the Court rejected the total exhaustion rule and held that while no unexhausted rule. Claims may be heard under the PLRA a Court may not dismiss a entire action simply because the Complaint includes both exhausted and unexhausted Claims. Id. At 923 the court rejected the respondent's Analogy that the PLRA is Similar to the total exhaustion rule in habeas Corpus. the Court found that the PLRA's language does not Support total exhaustion stating that as general matter if Complaint Contains both good and bad claims. the Court proceeds with the good and leaves the bad. Id. At 924. (Bishop V. Lewis C.A.9 Ariz 1998).

Date: 8-17-08

William Davis III

United States District Court

William F. Davis III
   Plaintiff's,

   V.

Correctional medical Services
First Correctional medical
nurse, Betty Bradley, and
Dr. Benjamin Robinson

   Defendants.

Declaration
Lois E. Davis

Civil Action No. 04 209-SLR

hereby declares:

I Ms. Lois E. Davis wrote the letter regarding my son, William F. Davis III medical condition, regarding his hernia and I attained letters from the civil Division of New Castle County and Senator Biden's Office, trying to help my sons medical condition

I declare under penalty of perjury that the foregoing is true and correct Executed at City and State on

Lois E. Davis

2-1-08

I, Mrs. Lois E. Davis wrote a letter regarding my son, William F. Davis III, medical condition, regarding his hernia and I attained letters from the civil division of New Castle County and Senator's Bidens office, trying to help my son's medical condition.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at city and State on

Lois E. Davis

STATE OF DELAWARE
DEPARTMENT OF CORRECTION

⑧

CLASS I ✗   CLASS II _____     **DISCIPLINARY REPORT**     DR #: 02-0641

INMATE NAME: Davis, William     INST #: 162762   HOUSING UNIT: 2Z-08

PLACE OF INCIDENT: 2Z-Pod     DATE: 08·02·02   TIME: Approx 10/8

VIOLAITON(S): 1.06 Disorderly or Threatning 2.05 disrespect 2.06 Failing To
Obay an order  2.11 off limits

WITNESSES: 1. Schaffer, T.     2. _____     3. _____

DESCRIPTION OF ALLEGED VIOLATION(S): Inmate Davis, William Spoke with
Corporal McMillian about seeing the doctor. Cpl. McMillian tool
Mr. Davis name and said he will go speak with someone in medical. Five
minutes after the Corporal left 2Z-Pod Mr. Davis became irate
demanding for C/O Schaffer to call a CODE4 because he need to see
the doctor Mr Davis started yelling  yall Motherfuckers don't give a
~~fuck~~ I have to die in this motherfucker Mr. Davis than reach
on the panel grab the papers and envelopes and threw them on
the Pod. A direct Order was given to lock-in Mr. Davis continue
pacing in front of the C/Os desk. Called Secondary to Notify them
of the situation a CODE 6 was called.

← ~~I was in a lot of pain~~
because of my Herniat Staff put me in     C/O Schaffer, T.
Solitary Confinement is for punishment     REPORTING/STAFF'S SIGNATURE

DISPOSITION OF INMATE: (✗) PRE-HEARING DETENTION   ( ) CURRENT STATUS

REASON: Threat To STAFF & Security

DATE: 8-2-02   TIME: 13 30   CELL SECURED ✗ YES   ( ) NO

DISPOSITION OF EVIDENCE: _____

X _____
WATCH COMMANDER'S SIGNATURE

I have received a copy of this notice on DATE:_____ TIME:_____, and have been informed
of my rights to have a hearing and be present at the hearing and present evidence on my own
behalf.

I understand, if found guilty, I will be subject to imposition of sanctions outlined in the
Rules of Conduct.

Cpl _____     X _____
REVIEWER                 INMATE'S SIGNATURE

FORM #: 593





M. JANE BRADY
ATTORNEY GENERAL

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

**NEW CASTLE COUNTY**
Carvel State Building
820 N. French Street
Wilmington, DE 19801
Criminal Division (302) 577-8500
Fax: (302) 577-2496
Civil Division (302) 577-8400
Fax: (302) 577-6630
TTY: (302) 577-5783

**KENT COUNTY**
102 West Water Street
Dover, DE 19901
Criminal Division (302) 739-4211
Fax: (302) 739-6727
Civil Division (302) 739-7641
Fax: (302) 739-7652
TTY: (302) 739-1545

**SUSSEX COUNTY**
114 E. Market Street
Georgetown, DE 19947
(302) 856-5352
Fax: (302) 856-5369
TTY: (302) 856-4698

**PLEASE REPLY TO :**    *Civil Division – New Castle County*

July 8, 2002

Lois Davis
102 South Heald Street
Wilmington, Delaware 19801

re:    William F. Davis, III
        SBI # 00162762

Exhibit "B"

Dear Ms. Davis:

Please accept this letter in response to your phone call of July 8, 2002 regarding your son and his complaints about the medical care that he receives at the Multi-Purpose Criminal Justice Facility.

As you may be aware, your son is presently housed in the infirmary at the MPCJF as a result of his complaints about his health. The medical services provider, based upon the results of diagnostic tests, has determined that <u>your son's present condition does not require an operation.</u> While your son may believe that he is entitled to additional medical care, his condition is being taken seriously and treated appropriately.

Sincerely,

Gregory E Smith
Gregory E. Smith
Deputy Attorney General





STATE OF DELAWARE
DEPARTMENT OF CORRECTION
MULTI-PURPOSE CRIMINAL JUSTICE FACILITY
1301 EAST 12TH STREET
WILMINGTON, DELAWARE 19809
Telephone: (302) 429-7747
Fax: (302) 429-7716

Exhibit C

Raphael Williams
Warden IV


July 15, 2002


Joseph R. Biden, Jr.
United States Senator
1105 N. Market Street
Suite 2000
Wilmington, DE 19801

**SUBJ: WILLIAM DAVIS (SBI #162762)**

Dear Senator Biden:

This letter is written in response to your letter dated July 2, 2002, concerning offender William Davis.

On May 22, 2002, offender Davis complained of abdominal pain and was seen in the medical department. That unit determined he had two small ventral hernias. At that time, he refused to have them reduced and was given pain medicine and an abdominal binder was ordered for him to wear. He was seen again on May 23 and the hernias were easily reducible and were not causing pain. On June 6, he was seen again for pain and it was determined the hernias were not reducible and bowel sounds were decreased. He was admitted to the infirmary and an x-ray revealed a partial distal small bowel obstruction. He remained in the infirmary and was placed on a liquid diet, stool softener and pain medicine. By June 12 his abdomen was soft and non-tender. On June 13, his diet was increased and his symptoms had resolved, but he was still taking pain medicine. There were no other concerns, such as, nausea or vomiting and he had positive bowel sounds. An x-ray revealed that the partial obstruction had resolved. A follow-up appointment on July 3 indicated complaints of discomfort and he was issued Tagamet. There is no significant weight loss. Upon admission (2/10/00) he weighed 250 pounds and on July 3 he weighed 240 pounds. His weight has fluctuated between 256 and 240 pounds during this incarceration.

At the present time there is no reason to recommend surgery for this condition, as there is no clinical need to repair the ventral hernia.

781 F.Supp. 566
781 F.Supp. 566
**(Cite as: 781 F.Supp. 566)**

Page 2

*Summand*
*Judgment*

with deliberate indifference to his medical needs in connection with treatment of his skin, stomach, and cholesterol problems. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**\*567** Fabio Diaz, pro se.
Michael A. Schoening, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

### MEMORANDUM AND ORDER
ALLEN SHARP, Chief Judge.
On December 22, 1987, plaintiff *pro se,* Fabio Diaz, an inmate at the Westville Correctional Center, filed a complaint purporting to state a claim under 42 U.S.C. § 1983, and invoking this court's jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3) and (4).

On October 31, 1991, the Honorable Robin D. Pierce, United States Magistrate Judge, entered a Report and Recommendation, which this court has now carefully and fully examined. The plaintiff, Fabio Diaz, filed written notice of objection to that Report and Recommendation on November 8, 1991, with extensive and elaborate attachments, which basically restate his assertions.

It is all too apparent that deliberate indifference is not a static concept but an evolutionary one, even at this level of the federal judiciary. *See Felders v. Miller,* 776 F.Supp. 424 (N.D.Ind.1991); *Wolf v. Napier,* 742 F.Supp. 1014 (N.D.Ind.1990); *Gorman v. Moody,* 710 F.Supp. 1256 (N.D.Ind.1989), and *Cameron v. Metcuz,* 705 F.Supp. 454 (N.D.Ind.1989).

It is to be assumed that *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) must be reexamined under *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) and such cases as *Richardson v. Penfold,* 839 F.2d 392 (7th Cir.1988), which are modified by *McGill v. Duckworth,* 944 F.2d 344 (7th Cir.1991) and *Steading v. Thompson,* 941 F.2d 498 (7th Cir.1991).

Magistrate Judge Pierce has ably defined the current status of the law in this regard in his Report and Recommendation, and **\*568** such is worthy of

publication. Said Report and Recommendation is ADOPTED. The defendants' motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED as to all Eighth Amendment claims. Each party will bear its own costs. The Clerk shall enter judgment. IT IS SO ORDERED.

### REPORT AND RECOMMENDATION
ROBIN D. PIERCE, United States Magistrate Judge.
This cause is presently before the court on defendants' motions for summary judgment filed on January 24, 1988 and June 27, 1990, as well as the plaintiff's motion for summary judgment filed on July 11, 1989.

▶ *Summary Judgment Standard*

[1] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for the motion, and identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, once a properly supported motion for summary judgment is made, the party that bears the burden of proof on a particular issue at trial cannot resist the motion by merely resting on its pleadings. *U.S. v. Lair,* 854 F.2d 233, 235 (7th Cir.1988). Rather, the party opposing the motion must "affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988); *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir.1987). "A genuine issue for trial only exists when there is sufficient evidence favoring the nonmovant for a jury

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

781 F.Supp. 566
781 F.Supp. 566
**(Cite as: 781 F.Supp. 566)**

*Summary / Judgment*

to return a verdict for that party." *Celotex Corp. v. Catrett*, 106 S.Ct. at 2553. "Summary judgment is properly entered in favor of a party when the opposing party is unable to make a showing sufficient to prove an essential element of a case on which the opposing party bears the burden of proof." *Common v. Williams*, 859 F.2d 467 (7th Cir.1988). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Flip Side Productions, Inc. v. Jam Productions, Ltd.*, 843 F.2d 1024, 1032 (7th Cir.1988). The inquiry involved in ruling on a motion for summary judgment implicates the substantive evidentiary standard of proof, for example, preponderance of the evidence, that would apply at trial. *Anderson*, 106 S.Ct. at 2512. All factual inferences must be drawn in favor of the non-moving party. *Valley Liquors*, 822 F.2d at 659.

The defendants' submission in support of their June 27, 1990 summary judgment motion satisfies their burden under Rule 56. The plaintiff has not met his burden of presenting specific facts to show that there is a genuine issue of material fact. Further, the plaintiff has not shown that there is sufficient evidence in his favor so that a jury could return a verdict in his favor. Finally, the plaintiff's submissions in support of his own motion for summary judgment have not satisfied his burden under Rule 56. Accordingly, the record before the court shows no genuine issue of material fact and that the defendants are entitled to judgment as a matter of law. For the foregoing reasons, the court now recommends that the defendants' motion for summary judgment be granted, and the plaintiff's motion for summary judgment denied.

### Procedural Background

Plaintiff Fabio Diaz, an inmate at Westville Correctional Center ("WCC") in Westville,**\*569** Indiana, filed a pro se complaint in this cause on December 22, 1987, pursuant to 42 U.S.C. § 1983. His original complaint alleges that defendants G. Michael Broglin, Kurt Plescher, and Anthony Metzcus

provided inadequate treatment of a serious skin disorder. Mr. Diaz claims that he was denied access to a dermatologist and denied medication from September through October, 1987, and that these denials constituted cruel and unusual punishment under the Eighth Amendment.

On December 24, 1987, Mr. Diaz filed a motion for temporary restraining order and preliminary injunction which the court subsequently denied. The defendants responded to Mr. Diaz's complaint by denying all of the allegations contained therein and filing a motion to dismiss on January 22, 1988. On February 24, 1988, the court converted this motion to a motion for summary judgment. The defendants subsequently submitted documentation specifically addressing the allegations contained in Mr. Diaz's complaint. He filed his response to defendants' motion for summary judgment on March 8, 1988. This matter is still pending before the court. In an order dated June 6, 1988, the court dismissed all claims against defendants Broglin, Plescher, and Metzcus in their official capacities.

Mr. Diaz filed his own motion for summary judgment on July 13, 1989. On July 28, 1989, he filed a motion for leave to file a supplemental complaint, and on August 7, 1989 the court granted this motion. This supplemental complaint, which was filed on August 7, 1989, named two additional defendants who were initially identified as "Joan Doer." Mr. Diaz alleged that these defendants were nurses who had refused to see him about a stomach problem. He claimed that the nurses' conduct constituted deliberate indifference to his serious medical needs, and was thus in violation of the Eighth Amendment. On December 29, 1989, he filed a request for service of summons substituting Dawn Kortman and Caroline Schumaker for the "Joan Doer" identified in the August 7 complaint.

Mr. Diaz subsequently failed to perfect service on defendants Kortman and Schumaker. When he served Kortman and Schumaker on January 9, 1990, Mr. Diaz made no attempt to serve the supplemental complaint on defendants' counsel. On February 16, 1990, Mr. Diaz obtained an entry of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"contextual and responsive to 'contemporary standards of decency.' " *Hudson v. McMillian,* 503 U.S. 1, ----, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (quoting *Estelle,* 429 U.S. at 103, 97 S.Ct. at 290). Regarding the subjective component, "[t]his court has consistently held that knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference." *Mandel v. Doe,* 888 F.2d 783, 788 (11th Cir.1989). To analyze Swain's responsive conduct upon learning of blood in Hill's underwear, we first must evaluate "whether there was evidence of a serious medical need" to determine if the four-hour delay in acquiring medical attention was unwarranted, such that it "amounted to deliberate indifference." *Id.* (citing *West v. Keve,* 571 F.2d 158, 161 (3d Cir.1978) (recognizing that the "deliberate indifference" standard is "two-pronged," consisting of deliberate indifference by prison officials in response to a prisoner's "serious" medical needs)).

▶ a. Serious Medical Needs and Treatment Delay

[13][14] "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.' " *Hudson,* 503 U.S. at ----, 112 S.Ct. at 1000. In *Estelle,* the Court recognized that medical needs constitutionally requiring medical attention ranged from "the worst cases," producing "physical torture or a lingering death," to "less serious cases," resulting from the "denial of medical care," which could cause "pain and suffering." *1187*Estelle,* 429 U.S. at 103, 97 S.Ct. at 290. In 1987, when Hill's alleged medical mistreatment occurred, a federal court had determined that "[a] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Laaman v. Helgemoe,* 437 F.Supp. 269, 311 (D.N.H.1977). This standard has been acknowledged and used by other federal circuit and district courts. *See, e.g., Gaudreault v. Municipality of*

*Salem,* 923 F.2d 203, 208 (1st Cir.1990) (per curiam), *cert. denied,*500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991); *Monmouth County Correctional Institutional Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987), *cert. denied,*486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988); *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980), *cert. denied,*450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Casey v. Lewis,* 834 F.Supp. 1477, 1543 n. 1 (D.Ariz.1993); *Hare v. City of Corinth,* 814 F.Supp. 1312, 1321 (N.D.Miss.1993); *Johnson v. Vondera,* 790 F.Supp. 898, 900 (E.D.Mo.1992). Not only was the *Laaman* standard established for a decade at the time that Swain allegedly violated Hill's Eight Amendment rights, but also we believe it to be the appropriate and guiding principle by which to gauge "serious medical needs" of prisoners.

Both aspects of the *Laaman* test are pertinent to the Hills' claim of delay in appropriate medical treatment by Swain. The previous day, a doctor at Grady Memorial Hospital had diagnosed Hill's medical complaints as a gastrointestinal condition for which he had prescribed medication. Swain personally had administered this medicine to Hill and monitored him closely for this *diagnosed* medical problem. Thus, the mandated treatment for his diagnosed ailment undisputedly was received by Hill. *Cf. Aldridge v. Montgomery,* 753 F.2d 970, 972-73 (11th Cir.1985) (per curiam) (holding that a state prisoner demonstrated a triable issue of fact when he presented evidence that a deputy failed to administer an ice pack and pain medication as instructed by attending doctor after suturing a wound).

Because Swain was a layperson and not a physician, we also examine her response and reaction to learning of blood in Hill's underwear to determine if "a lay person would easily recognize the necessity for a doctor's attention" under those circumstances. *Laaman,* 437 F.Supp. at 311. Clearly, Swain did recognize the need for a physician's attention because she contacted Hill's mother to see if he had insurance so that he could be taken to

Dekalb General Hospital. The Hills, however, complain that the four-hour delay in Hill's transportation to the hospital, the cause of which was occasioned by Swain's overseeing the serving of dinner to the DRYDC inmates, was unwarranted. Consequently, we must review Swain's response upon learning of blood in Hill's underwear to determine if his medical condition required immediate or emergency attention.

[15][16] Delay in access to medical attention can violate the Eighth Amendment, *Estelle,* 429 U.S. at 104-05, 97 S.Ct. at 291, when it is "tantamount to 'unnecessary and wanton infliction of pain,' "*Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir.) (per curiam) (quoting *Estelle,* 429 U.S. at 104, 97 S.Ct. at 291).*cert. denied,*496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990). Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem.[FN21] In contrast, delay or *1188 even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation.[FN22]

> FN21. *See, e.g., Brown,* 894 F.2d at 1538 (six-hour delay in medical treatment for "a serious and painful broken foot was sufficient to state a constitutional claim"); *Thomas v. Town of Davie,* 847 F.2d 771, 772 (11th Cir.1988) (automobile accident where the individual was " 'in obvious need of immediate medical attention,' " because of his " 'medically emergent and deteriorating ... condition' "); *H.C. ex rel. Hewett v. Jarrard,* 786 F.2d 1080, 1086-87 (11th Cir.1986) (three-day delay in medical treatment for shoulder injury was " 'reckless disregard' " for detainee's serious medical need and was a constitutional violation); *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 702 (11th Cir.1985)

(valid constitutional claim where inmate died of leukemia four months after complaining of "serious" medical problems, including swollen ankles, inability to sleep, chills, hyperventilation, severe pain in back and right leg, and double vision, and county jail defendants made no arrangements for a doctor's examination until compelled to do so by two court orders); *Aldridge,* 753 F.2d at 972 (one-and-a-half-inch cut over detainee's eye bleeding for two and a half hours before sutured at a hospital); *Hughes v. Noble,* 295 F.2d 495, 496 (5th Cir.1961) (per curiam) (following automobile accident, individual jailed for thirteen hours with broken neck and forced to endure "severe pain" despite "repeated requests for medical attention"); *see also Cooper v. Dyke,* 814 F.2d 941, 945-46 (4th Cir.1987) (detainee's gunshot wound required immediate medical attention and delay in providing it caused shock and extensive internal bleeding).

FN22. *See, e.g., Shabazz v. Barnauskas,* 790 F.2d 1536, 1538 (11th Cir.) (per curiam) (state inmate's " 'pseudofolliculitis' or 'shaving bumps,' " even if shaving required by prison officials when physician ordered otherwise, "does not rise to the level of the cruel and unusual punishment forbidden by the Eighth Amendment"), *cert. denied,*479 U.S. 1011, 107 S.Ct. 655, 93 L.Ed.2d 709 (1986); *Dickson v. Colman,* 569 F.2d 1310, 1311 (5th Cir.) (per curiam) (county inmate's high blood pressure presented " 'no true danger' or 'serious threat' to his health," and he also had full range of motion in his shoulder despite continuing pain from a three-year-old injury; further, he obtained a medical examination the day after he requested it), *cert. denied,*439 U.S. 897, 99 S.Ct. 259, 58 L.Ed.2d 244 (1978); *see also*

40 F.3d 1176
40 F.3d 1176
**(Cite as: 40 F.3d 1176)**

plaining how the four-hour delay in taking Hill to the hospital detrimented or worsened his medical condition. The record does not indicate what, if any, treatment was provided by the examining doctor or if medication was prescribed. Discovery of sexual assault is different from medical treatment or the need for medical attention. The Hills make a bare, unsupported assertion that "[i]t is rather common knowledge that *any* delay following a sexual assault will cloud the forensic waters." Appellees' Brief at 33 (emphasis added). Without medical evidence contrariwise, we are unpersuaded that the four-hour delay in transporting Hill to a hospital was more detrimental for forensic purposes than the approximate twelve-hour delay following the sexual assault caused by Hill's silence.[FN27] When Hill was asked at his deposition if Swain did anything that prevented him from receiving the medical care that he needed, he responded "No." Deposition of Mark Anthony Hill at 111. Consequently, the objective facts in this case do not demonstrate that Hill had a "serious" medical need requiring immediate medical attention, that the four-hour delay in transporting him to a hospital was unreasonable, or that this delay exacerbated Hill's medical condition.

> FN27. Additionally, we are unconvinced that the Eighth Amendment in the context of medical needs applies to forensic testing as opposed to physical condition. The Hills have provided no authority for the proposition that the preservation of evidence constitutes a serious medical need, and we have found none.

▶ b. Determination of Deliberate Indifference

[21] Having reviewed the relation between a serious medical need and treatment delay, we are in a position to assess Swain's subjective or cognitive response upon learning of blood in Hill's underwear and the consequent four-hour delay in transporting him to a hospital to determine if this amounted to deliberate indifference to his sexual assault. In **\*1191**Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), a case concerning a

state prisoner who was shot by a prison official quelling a riot, the Court held that "[i]t is obduracy and wantonness, not inadvertence or error in good faith" that violates the Eighth Amendment in "supplying medical needs."[FN28] *Id.* at 319, 106 S.Ct. at 1084. "A defendant must *purposefully ignore or fail to respond* to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin v. Smith,* 974 F.2d 1050, 1060 (9th Cir.1992) (emphasis added). Implicit in the *Estelle* deliberate indifference standard is *knowledge* of the *particular medical condition* in order to establish intent or "a sufficiently culpable state of mind,"*Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324.*to deny or to delay purposely* "access to medical care" or intentionally to interfere "with the treatment once prescribed," *Estelle,* 429 U.S. at 104-05, 97 S.Ct. at 291. Thus, "*[k]nowledge* of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is *essential* to a finding of deliberate indifference."[FN29] *Horn ex rel. Parks v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.) (emphasis added), *cert. denied,*513 U.S. 873, 115 S.Ct. 199, 130 L.Ed.2d 130 (1994); *see Mandel v Doe,* 888 F.2d 783, 788 (11th Cir.1989).

> FN28. We are cognizant that the Supreme Court now has defined "deliberate indifference" as requiring more than negligence, but less than conduct undertaken to cause harm. *Farmer v. Brennan,* 511 U.S. 825, ----, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994). The Court has adopted a "subjective recklessness" standard from criminal law so that a prison official is not deliberately indifferent unless the individual "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1979, 114 S.Ct. at 1979. We do not base our analysis of this case on this new stand-

ard because it was not the law in 1987, when Swain's challenged conduct occurred. *See Lassiter,* 28 F.3d at 1150. Further, *Farmer* specifically concerns prison safety rather than inmates' medical needs.

FN29. *See Wilson,* 501 U.S. at 299-301, 111 S.Ct. at 2325 ("The long duration of a cruel prison condition may make it easier to *establish* knowledge and hence some form of intent...."); *Harris,* 21 F.3d at 394 ("[D]eliberate indifference could be inferred from an unexplained delay in treating a *known or obvious* serious medical condition."); *see also Brown,* 894 F.2d at 1539 (affirming summary judgment for state prison officials because there was no evidence that they were aware that inmate had broken his foot on the day that it occurred and sending him to a hospital upon knowledge of this fact precluded finding deliberate indifference); *Loe v. Armistead,* 582 F.2d 1291, 1292, 1296 (4th Cir.1978) (prison officials who delayed twenty-two hours in obtaining doctor's care for inmate's obviously broken arm showed deliberate indifference because the arm was swollen, "locked in an extraordinary position" and it was an "excruciating injury"), *cert. denied,* 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980).

[22] In this case, Swain *did not know* that Hill had been sexually assaulted when the guard reported to her that there was blood in his underwear.[FN30] She had no reason to suspect such an occurrence from his behavior, in the context of his gastrointestinal problems and stomach-ache complaints for which he was being treated, or the conduct of DRYDC personnel. Indeed, Hill did not disclose the sexual assault until he was examined by a doctor at Dekalb General Hospital on the evening of August 7, 1987. The district court apparently was persuaded by the Hills' arguments that blood in underwear is evidence of sexual abuse, and that Swain's training from

a course in recognizing sexual assault should have alerted her to this fact. The Supreme Court does not consider physicians who are negligent in diagnosing or treating a medical condition to be in violation of the Eighth Amendment. *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292. Swain, a layperson, clearly cannot be held to a higher standard merely because she had a course in sexual abuse.

FN30. *Cf. Love v. Sheffield,* 777 F.2d 1453, 1454-55 (11th Cir.1985) (per curiam) (a reasonable person could find that there was awareness both of danger and need for medical treatment, yet a choice not to supply protection and medical assistance when county sheriff refused to provide medical care for detainee whom he confined with violent prisoners, who assaulted and injured detainee).

Significantly, Swain did not exhibit the wanton mental state for an Eighth Amendment violation. To the contrary, she had given Hill extraordinary care and medical attention. She was so concerned about his medical condition that she had remained at **\*1192** the DRYDC from 11:00 P.M. on August 6, 1987, after the end of her shift, until approximately 5:00 A.M. the next morning, waiting for Hill to return from Grady Memorial Hospital. Upon his return at 4:20 A.M., she still stayed to give him his supper that she had saved for him, administered his prescription medication, and ordered that he be allowed to sleep late that morning because of his lack of sleep the night before. She checked on him upon her arrival at the DRYDC at 3:00 P.M. on August 7, 1987, administered his medicine when he told her that his stomach still hurt, did not leave his cell until he told her that he felt better, personally monitored him regularly, and requested that the guards check on him every fifteen minutes. She also informed him that he would have further medical attention if his problems continued. When advised of blood in Hill's underwear, she took appropriate measures under the *known* circumstances, as we have analyzed.

JTVCC James T. Vaughn Correctional Center                    Date: 07/16/2008
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE REPORT

### OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name :** DAVIS, WILLIAM F 3 | **SBI#** : 00162762 | **Institution** : JTVCC | |
| **Grievance #** : 159078 | **Grievance Date** : 05/12/2008 | **Category** : Individual | |
| **Status** : Resolved | **Resolution Status :** Level 2 | **Resol. Date** : 07/16/2008 | |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 05/12/2008 | **Incident Time :** 12:00 | |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg T2, Cell 1, Bed 47 | | |

### OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** Inmate Claims:   I was told that a treatment plan would be work out by Jean Long who was the supervisory over seer when I had a hernia in Gander Hill Prison May 22, 02. i am having abdominal pain again. i want all copies my medical grievances when I was at Gander Hill Prison in Wilm. Del. starting April 01,02 to Sept 30, 02. I want to know if I had all of my grievance hearing.

**Remedy Requested** : Inmate Action Requested: Where is my treatment plan by Jean Long for my hernia.

### INDIVIDUALS INVOLVED

| Type | SBI# | Name |
|---|---|---|
| | | |

### ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| **Medical Grievance :** YES | **Date Received by Medical Unit :** 05/21/2008 |
| **Investigation Sent** : 05/21/2008 | **Investigation Sent To** : Moore, Ronnie |
| **Grievance Amount :** | |

JTVCC James T. Vaughn Correctional Center                      Date: 07/16/2008
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## INFORMAL RESOLUTION

| OFFENDER GRIEVANCE INFORMATION | | | |
|---|---|---|---|
| **Offender Name :** DAVIS, WILLIAM F 3 | **SBI#** | : 00162762 | **Institution** : JTVCC |
| **Grievance #** : 159078 | **Grievance Date** : 05/12/2008 | | **Category** : Individual |
| **Status** : Resolved | **Resolution Status:** Level 2 | | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 05/12/2008 | | **Incident Time :** 12:00 |
| **IGC** : Merson, Lise M | **Housing Location** :Bldg T2, Cell 1, Bed 47 | | |

| INFORMAL RESOLUTION | |
|---|---|
| **Investigator Name** : Moore, Ronnie | **Date of Report** 05/21/2008 |

**Investigation Report :** 6/7/08-Im request grievances from 2002 while incarcerated at Gander Hill; refused to sign off; IM request next level

**Reason for Referring:**

Offender's Signature:_____

Date                    :_____

Witness (Officer)       :_____

JTVCC James T. Vaughn Correctional Center          Date: 07/16/2008
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE INFORMATION - IGC

| OFFENDER GRIEVANCE INFORMATION | | |
|---|---|---|
| **Offender Name** : DAVIS, WILLIAM F 3 | **SBI#** : 00162762 | **Institution** : JTVCC |
| **Grievance #** : 159078 | **Grievance Date** : 05/12/2008 | **Category** : Individual |
| **Status** : Resolved | **Resolution Status** : Level 2 | **Inmate Status** : |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 05/12/2008 | **Incident Time** : 12:00 |
| **IGC** : Merson, Lise M | **Housing Location** : Bldg T2, Cell 1, Bed 47 | |

IGC

**Medical Provider:**                     **Date Assigned**

Comments:

[x] Forward to MGC          [ ]  Forward to Medical Provider          [ ]  Warden Notified

[ ] Forward to RGC          Date Forwarded to MGC :

[x] Offender Signature Captured          Date Offender Signed          : 07/16/2008

JTVCC James T. Vaughn Correctional Center           Date: 07/16/2008
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE INFORMATION - MGC

### OFFENDER GRIEVANCE INFORMATION

| | |
|---|---|
| **Offender Name :** DAVIS, WILLIAM F 3 | **SBI#** : 00162762    **Institution** : JTVCC |
| **Grievance #** : 159078 | **Grievance Date** : 05/12/2008    **Category** : Individual |
| **Status** : Resolved | **Resolution Status:** Level 2    **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 05/12/2008    **Incident Time :** 12:00 |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg T2, Cell 1, Bed 47 |

### MGC

**Date Received :** 06/24/2008          **Date of Recommendation:** 07/16/2008

### GRIEVANCE COMMITTEE MEMBERS

| Person Type | SBI # | Name | Vote |
|---|---|---|---|
| | | | |

### VOTE COUNT

| | | |
|---|---|---|
| Uphold : | Deny : | Abstain : |

### TIE BREAKER

| Person Type | SBI # | Name | Vote |
|---|---|---|---|
| | | | |

### RECOMMENDATION

Hearing held 7/16/08: Inmate signed off as resolved.

## E. Clothing

Prisoners are entitled to clothing that is "at least minimally adequate for the conditions under which they are confined."[154] They are entitled to clothing that is clean or to have an opportunity to clean it themselves,[155] and to enough clothing that they have something to wear while one change of clothing is being washed.[156] Clothing that fits badly or does not look good generally does not violate the Constitution.[157] Prison officials may limit the amount of clothing an inmate possesses.[158]

Prisoners are not entitled to their choice of clothing, and even pre-trial detainees may be required to wear uniforms.[159] However, persons on trial in criminal courts are entitled to wear civilian clothes and not jail uni-

1982).

154 Knop v. Johnson, 667 F.Supp. 467, 475-77 (W.D.Mich. 1987) (jackets found inadequate protection for severe winter temperatures, and boots or heavy socks also required), aff'd in pertinent part, 977 F.2d 996, 1012 (6th Cir. 1992), cert. denied, 113 S.Ct. 1415 (1993); accord, Gordon v. Faber, 973 F.2d 686, 687-88 (8th Cir. 1992) (denial of hats and gloves in sub-freezing weather violated the Eighth Amendment); Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991) (allegation of deprivation of winter coats stated an Eighth Amendment claim); Balla v. Idaho State Bd. of Corrections, 595 F.Supp. 1558, 1575 (D.Idaho 1984) (inmates given lightweight uniforms must also get insulated underwear); see also Hernandez v. Denton, 861 F.2d 1421, 1423-24 (9th Cir. 1988) (month-long deprivation of shoes could violate the Eighth Amendment), vacated on other grounds, 110 S.Ct. 37 (1989). But see Pendergrass v. Hannigan, 788 F.Supp. 488, 489 (D.Kan. 1992) (claim of denial of winter clothing rejected on facts); Kendrick v. Bland, 659 F.Supp. 1188, 1196 (W.D.Ky. 1987) (raincoats and undershirts not constitutionally required), aff'd sub nom. Thompson v. Bland, 843 F.2d 1392 and Smith v. Bland, 856 F.2d 196 (6th Cir. 1988).

155 Divers v. Dept. of Corrections, 921 F.2d 191, 194 (8th Cir. 1990) ("adequate laundry facilities" required); Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989); Reece v. Gragg, 650 F.Supp. 1297, 1305 (D.Kan. 1986); Martino v. Carey, 563 F.Supp. 984, 1000 (D.Or. 1983); Toussaint v. Rushen, 553 F.Supp. 1365, 1379 (N.D.Cal. 1983) (lack of regular laundry service unconstitutional), aff'd in part and vacated in part on other grounds, 722 F.2d 1490 (9th Cir. 1984); Dawson v. Kendrick, 527 F.Supp. 1252, 1288 (S.D.W.Va. 1981); Rutherford v. Pitchess, 457 F.Supp. 104, 116-17 (S.D.Cal. 1978), aff'd in part and rev'd in part on other grounds, 710 F.2d 572 (9th Cir. 1983), rev'd on other grounds, 468 U.S. 576 (1984); Hickson v. Kellison, 296 S.E.2d 855, 859 (W.Va. 1982). But see State v. House, 229 Kan. 600, 629 P.2d 167, 172 (Kan. 1981) (two-week deprivation of clean clothing was not unconstitutional).
   Prisoners may be required to do their own laundry. Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986); Shelby County Jail Inmates v. Westlake, 798 F.2d 1085, 1091 (7th Cir. 1986).

156 Hazen v. Pasley, 768 F.2d 226, 228 n.2 (8th Cir. 1985); Evans v. Headley, 566 F.Supp. 1133, 1138 (S.D.N.Y. 1983); see also Hickson v. Kellison, 296 S.E.2d at 858 (failure to provide clothing other than what the prisoner was wearing when arrested is unconstitutional).

157 Knop v. Johnson, 667 F.Supp. at 475.

158 Rust v. Grammer, 858 F.2d 411, 414 (8th Cir. 1988); Lyons v. Farrier, 730 F.2d 525, 527 (8th Cir. 1984).

159 Wolfish v. Levi, 573 F.2d 118, 132-33 (2d Cir. 1978), rev'd on other grounds sub nom. Bell v. Wolfish, 441 U.S. 559 (1979); In re Alcala, 222 Cal.App.3d 345, 271 Cal.Rptr. 674, 691-95 (Cal.App. 1990) (prohibition of most civilian clothing did not violate federal or state law).

---

forms.[160]

The denial of clothing to prisoners in segregation units or under atric isolation or restraint, even for short periods of time, may vio Eighth Amendment or due process unless prison officials ( strate a strong justification for such treatment.[161]

## F. Medical Care

Since prisoners cannot obtain their own medical services, the C tion requires prison authorities to provide them with "reasonab quate" medical care.[162] Courts have defined "adequate" medical as "services at a level reasonably commensurate with modern med

160 Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691 (1976); Felts v. Estelle, 875 F.2d (9th Cir. 1989). But see Saenz v. Marshall, ... defense witness in prison garb did not violate the defendant; Wilson v. DeBruyn, 633 F.Supp. 1222 ( 1986) (federal court lacked jurisdiction to intervene in pending criminal question of clothing at trial).

161 Johnson v. Williams, 788 F.2d 1319, 1323 (8th Cir. 1986); Wells v. Franzen, 1258, 1264 (7th Cir. 1985); Maxwell v. Mason, 668 F.2d 361, 363-65 (8th C McCray v. Burrell, 622 F.2d 705, 706-07 (4th Cir. 1980), cert. denied, 449 U.S. and 449 U.S. 1003 (1980); Inmates of Allegheny County Jail v. Wecht, 565 F.Su 1286 (W.D.Pa. 1981); see also Walker v. Mintzes, 771 F.2d 920, 929 (6th Cir. 1985); am (prisoners in segregation could not be required to walk naked to the shower ... pertinent part sub nom. Walker v. Johnson, 544 F.Supp. 345, 361 (E.D. cited in [6] of this chapter, n.713. But see Johnson v. Boreani, 946 F.2d 67 (7th 1991) (officials were entitled to qualified immunity for repeated short depri clothing); Porth v. Farrier, 934 F.2d 154, 156-57 (8th Cir. 1991) (unjustifie deprivation of clothing would have permitted, but did not require, a jury verd plaintiff); Campbell v. Grammer, 889 F.2d 797, 802 (8th Cir. 1989) (in deprivation of clothing did not violate Eighth Amendment); Green v. Baron 879 F.2d 380, 385 (8th Cir. 1989) (deprivation of clothing as part of a behavior program might have been justified by prisoner's mental condition); Rodgers v 879 F.2d 380, 385 (8th Cir. 1989) (unjustified deprivation of clothing unconstitutional where other conditions were adequate); Hawkins v. Hall, 64 917-18 (1st Cir. 1981) (deprivation of clothing for less than 24 hours pendin psychiatric evaluation did not violate due process); inadequate lighting and the McMahon v. Beard, 583 F.2d 172, 174-75 (5th Cir. 1978) (three-month naked pe without mattress, sheet or blankets did not violate the Eighth Amendment); prisoner continued to present a suicide risk); Friends v. Moore, 776 F.Su 1390-91 (E.D.Mo. 1991) (leaving the plaintiff stripped naked and wet in a s yard area was not unconstitutional because the defendants intended to res rather than punish).
   In LeMaire v. Maass, 745 F.Supp. 623, 639 (D.Or. 1990), vacated and remand 1444 (9th Cir. 1993), the lower court held unconstitutional the practice prisoners' clothing and returning it only after they "earned it back" thro behavior. This practice violated prison rules, and the appeals court held t officials should be enjoined to follow their own rules.

162 Newman v. Alabama, 559 F.2d 283, 291 (5th Cir. 1977), cert. denied, 438 U.S. 915 (19 Heptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Wolfish v. Levi, 573 F.2 (2d Cir. 1978), rev'd on other grounds sub nom. Bell v. Wolfish, 441 U.S. 520 (19 Langley v. Coughlin, 888 F.2d 252, 254 (2d Cir. 1989) (officials must "reasonably necessary medical care ... which would be available to the pris incarcerated").

ence and of a quality acceptable within prudent professional stand-ards,[163] and as "a level of health services reasonably designed to meet routine and emergency medical, dental and psychological or psychiatric care."[164]

In practice, providing care to prisoners generally means paying for the care, since most prisoners have little money and no medical insurance and are ineligible for public assistance.[165] The fact that the care may be expen-sive does not excuse prison officials from providing it.[166] If a prisoner does have money or insurance, it is probably not unconstitutional to bill the prisoner for the costs of medical care.[167]

Some states have statutes to this effect, usually covering prisoners in lo-cal jails who require treatment at outside hospitals.[168] But prison offi-cials may not withhold medical care until the prisoner pays or agrees to pay; they must first provide the care and leave arguments about money until later.[169]

Recently some states have begun requiring prisoners to pay small amounts of money for medical visits. One such requirement was found unconstitutional because it would have required days and even weeks at inmate pay rates to earn the money, and would have fallen particularly harshly on the chronically ill who require more medical care than other prisoners.

[163] Fernandez v. United States, 941 F.2d 1488, 1493 (11th Cir. 1991); United States v. DeCologero, 821 F.2d 39, 43 (1st Cir. 1987); Tilley v. Owens, 719 F.Supp. 1256, 1305 (W.D.Pa. 1989), aff'd, 907 F.2d 418 (3d Cir. 1990).

[164] Tilley v. Owens, 719 F.Supp. at 1301; accord, Raines v. Lamm, 639 F.2d 559, 574 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981).

[165] Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 350 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988) (quoting City of Revere v. Mass. General Hospital, 463 U.S. 239, 245-46, 103 S.Ct. 2979 (1983).

[166] Harris v. Thigpen, 941 F.2d 1495, 1509 (11th Cir. 1991); Langley v. Coughlin, 888 F.2d at 254; Ancata v. Prison Health Services, Inc., 769 F.2d 700, 705 (11th Cir. 1985); Yarbaugh v. Ancata v. Prison Health ... 736 F.Supp. 318, 320 n.7 (D.D.C. 1990).

[167] Smith v. Linn County, 342 N.W.2d 861, 864 (Iowa 1984); Metro. Dade County v. P.L. Dodge Foundations, 509 So.2d 1170, 1173 (Fla.App. 1987); see City of Revere v. Mass. General Hospital, 463 U.S. at 245 n.7 (leaving question open); Matter of Commitment of F.H., 258 N.J. Super. 532, 610 A.2d 884-85 (N.J.Super.A.D. 1992) (statute permitting state to recover costs of mental hospitalization from patient's assets did not apply to prisoners)

[168] Ancata v. Prison Health Services, Inc., 769 F.2d at 705 n.7 (11th Cir. 1985); Smith v. Linn County, 342 N.W.2d at 863; Salem Hospital v. Marion County, 307 Or. 213, 766 F.2d 376, 378-81 (Or. 1988); Montana Deaconess Medical Center v. Johnson, 232 Mont. 474, 758 P.2d 756, 757-58 (Mont. 1988); see also Smith v. Dept. of Corrections, 105 Or.App. 61, 804 P.2d 482, 484 (Or.App. 1990) (upholding statute requiring inmates to pay for certain prosthetic devices; constitutional claims not raised).

[169] Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d at 351.

---

The statute was then amended to charge only for physician v without a referral from a nurse or physician's assistant, and t version was upheld as constitutional.[170]

Prisoners who are denied adequate medical care may use 4 1983 to sue prison medical care providers, including personnel i rations who work as private contractors.[171] They may also seel for medical malpractice under state law.[172]

1. The Deliberate Indifference Standard

The Supreme Court has stated that "deliberate indifference medical needs of prisoners constitutes the 'unnecessary and wat tion of pain' . . . proscribed by the Eighth Amendment."[173] M have also applied the deliberate indifference standard to pr tainees under the Due Process Clause.[174] State law—statutes tions, or case law—may provide different standards.[175]

[170] Collins v. Romer, 962 F.2d 1508, 1513-14 (10th Cir. 1992); see also Scott v. A F.Supp. 1064, 1067 (D.Nev. 1991) (describing a similar statute but not l validity), aff'd, 980 F.2d 738 (9th Cir. 1992).

[171] See cases cited in Ch. VIII, § B.1.c.
Some courts have held that you can sue a medical care corporation unde only for injuries that result from policies of the corporation. Howell v. Eva 712, 723-25 (11th Cir.), modified as settled, 931 F.2d 711 (11th Cir. 1991); Mellw William Hospital, 774 F.Supp. 986, 989-90 (E.D.Va. 1991); Miller v. Correctic Systems, Inc., 802 F.Supp. 1126, 1132 (D.Del. 1992). This means that if you by the deliberate indifference of doctors or other employees of such a corp will probably have to sue them individually. See Hicks v. Frey, 992 F.2d 1 (6th Cir. 1993) (upholding judgment against employee and dismissal of c corporation).

[172] See § F5 of this chapter on negligence and malpractice.

[173] Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).

[174] Salazar v. City of Chicago, 940 F.2d 233, 237-38 (7th Cir. 1991); Martin County Comm'rs of Pueblo County, 909 F.2d 402, 406 (10th Cir. 1990); Molt Cleveland, 839 F.2d 240, 242-43 (6th Cir. 1988), cert. denied, 489 U.S. 1068 (1 v. Kozakiewicz, 833 F.2d 468, 471-73 (3d Cir. 1987), cert. denied, 485 U.S. 9 also City of Revere v. Mass. General Hospital, 463 U.S. 239, 244, 103 S.Ct. (detainees' due process rights are "at least as great" as convicted prisoners'); Bryant v. Maffucci, 923 F.2d 979, 983 (2d Cir. 1991) (constitutional standar detainees' medical care remains unsettled), cert. denied, 112 S.Ct. 152 (1991).
One court has held that detainees "are entitled to a greater degree of l than convicted inmates. They must be provided with 'reasonable medical the failure to supply it is reasonably related to a legitimate governmental Rhyne v. Henderson County, 973 F.2d 386, 291 (5th Cir. 1992) (statue difference" from the deliberate indifference standard. Cupit v. Jones, 835 (5th Cir. 1987). Another court has held that denial of medical care to an A has not been arraigned is governed by a Fourth Amendment 'objective reas standard, under which "the presence or absence of punitive intent is ir Freese v. Young, 756 F.Supp. 699, 705-04 (W.D.N.Y. 1991).

[175] See, e.g., Jorgenson v. Schiedler, 87 Or.App. 100, 741 P.2d 528, 529 (Or.App. constitution requires 'such medical care in the form of diagnosis and the reasonably available under the circumstances of [the prisoner's] confi medical condition').
State law claims of malpractice or negligence may be litigated as tort da

Under the deliberate indifference standard, courts will not take sides in disagreements with medical personnel's judgments or techniques.[176] In general, as long as there has been an exercise of professional judgment—even a mistaken or incompetent one—the courts will hold that the Constitution has been satisfied.[177] Negligence or medical malpractice generally do not violate the Constitution, with one important exception.

Several courts have held that "repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff" may add up to deliberate indifference.[178]

Deliberate indifference can be shown in various ways.[179] Sometimes it is demonstrated by acts or statements by prison personnel directly showing an indifferent or hostile attitude toward prisoners' medical

---

court; these are discussed in § F.5 of this chapter.

[176] Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Cf. Bailey v. Gardebring, 940 F.2d 1150, 1155 (8th Cir. 1991) (failure to provide treatment for the patient's condition), cert. denied, _ U.S. _, 112 S.Ct. 1516 (1992).

[177] There is an exception. Prison officials may not stop around until they get a medical opinion that suits their non-medical concerns and may not rely on a medical opinion that is without adequate basis. Hamilton v. Endell, 981 F.2d 1063, 1066-67 (9th Cir. 1992).

[178] See Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) (failure to diagnose broken ribs was not deliberate indifference); Givens v. Jones, 900 F.2d 1229, 1232-33 (8th Cir. 1990) (giving a prisoner medication to which he was allergic was negligence at worst); Benson v. Cady, 761 F.2d 335, 341 (7th Cir. 1985) (prescription of wrong drug was only malpractice); Owens-El v. United States Attorney General, 759 F.2d 349, 350 (4th Cir. 1985) (injection of dangerous drug was merely negligent); Sires v. Berman, 792 F.2d 958, 963 (10th Cir. 1986) (decision not to give female prisoners access to transsexual was not deliberately indifferent); Gordon v. Higgs, 716 F.Supp. 1351, 1353 (D.Nev. 1989) (failure to take an x-ray was no more than negligence); Mastrota v. Robinson, 534 F.Supp. 434, 436, 438 (E.D. 1982) (claim of failure to diagnose an vertebral fracture and failure to insert drainage, 595 F.2d 948, 952-53 (4th Cir. Eighth Amendment violation); Boyce v. Boyce v. Alizaduh, 595 F.2d 948, 952-53 (4th Cir. indifference); Thomas v. Pate, 493 F.2d 151, 158 (7th Cir.) (same as Boyed), cert. denied, 419 U.S. 879 (1974).

[179] Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981); accord, Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); DeGidio v. Pung, 920 F.2d 525, 533 (8th Cir. 1990) ("consistent pattern of reckless or negligent conduct" establishes deliberate indifference); Todaro v. Ward, 565 F.2d 48, 52 (2d Cir. 1977) (acts that appear negligent in isolation may constitute deliberate indifference if repeated); Williams v. O'Leary, 805 F.Supp. 634, 638 (N.D.Ill. 1992) (deliberate indifference could be inferred from negligent treatment of long duration); Diaz v. Broglin, 781 F.Supp. 566, 564 (N.D.Ind. 1991); Langley v. Coughlin, 715 F.Supp. 522, 541 (S.D.N.Y. 1988); Robert E. v. Lane, 530 F.Supp. 930, 941 (N.D.Ill. 1981) ("A pattern of similar instances presumptively created an environment in which negligence is unacceptably likely"); see also Kelley v. McGinnis, 899 F.2d 612, 616 (7th Cir. 1990) (noting court has not ruled "definitively" on this "potential theory of recovery").

[180] The general definition of deliberate indifference is discussed in § A.2 of this chapter. However, there are large numbers of cases applying the standard to prison medical care, and we focus on those cases here.

---

needs.[180] But most often, courts focus on facts that show tha judgment was either not exercised or was not followed exercised. In those fact situations, good intentions may not As one court stated:

> Deliberate indifference can be proved by showin prison official's mental state. But delibe indifference is also a standard for measuring adequacy of prison officials' responses to the kno medical needs of inmates and their system allowing inmates to make their needs known.[181]

There are several familiar fact patterns that courts have he tute deliberate indifference:

(a) Delay or denial of access to medical attention.[182] Hov is tolerated, of course, depends on the seriousness and urge

---

[180] Hughes v. Joliet Correctional Center, 931 F.2d 425, 428 (7th Cir. 1991) (r prisoner with spinal injury he was "full of bullshit"); White v. Napole 109 (3d Cir. 1990) (doctor allegedly burned the hand of an inmate who feeling); Kersh v. Derozier, 851 F.2d 1509, 1510, 1513 (5th Cir. 1988) ( sight in one eye because police and jail personnel would not let him out of it); Meriwether v. Faulkner, 821 F.2d 408, 413 (7th Cir.) ( transsexual prisoner and completely denied care), cert. denied, 484 Mullen v. Smith, 738 F.2d 317, 318-19 (8th Cir. 1984) (prisoner was subj and denied in response to complaints of pain and inability to wa Vincent, 508 F.2d 544, 544 (2d Cir. 1974) (doctor refused to try to reatta severed ear and threw it away in front of him); Phillips v. Mit Corrections, 731 F.Supp. 792, 800 (W.D.Mich. 1990) (doctor direct offensive remarks to a transsexual prisoner), aff'd, 932 F.2d 969 (6th Cir supported by "display of hostility by prison personnel [and] the in which sometimes led to outright refusals to treat"); Smallwood v. Ren 182, 187-88 (N.D.Ill. 1989) (deliberate indifference claim was suppor that a lieutenant overruled a decision to send the plaintiff to a hospital and hit the plaintiff).

[181] Doan v. Coughlin, 623 F.Supp. 392, 402 (S.D.N.Y. 1985); accord, Weeks v F.2d 185, 187 (6th Cir. 1990) (...); [A] determination of deliberate indif require proof of intentional harm, or a showing that the dete mind. . . . [The] facts establish that he was deliberately indifferen Faulkner, 715 F.2d 269, 273 (7th Cir. 1983) ("good intentions" do not e systemic deficiency"), cert. denied, 468 U.S. 1217 (1984); Todaro v. W. 1129, 1160 (S.D.N.Y.), aff'd, 565 F.2d 48 (2d Cir. 1977).

[182] Estelle v. Gamble, 429 U.S. at 104 ("intentionally denying or delaying a care"); Fields v. Gander, 734 F.2d 1313, 1315 (8th Cir. 1984) (delay in (evidence that police officers exercised wide discretion in summoning prisoners); Miller v. Beorn, 896 F.2d 848, 853-54 (4th Cir. 1990) (nurses infirmary patient who lost consciousness and fell); Boswell v. Sherbu F.2d 1117, 1122 (10th Cir. 1988) (delay in hospitalizing a miscarryin denied, 488 U.S. 1010 (1989); H.C. by Hewett v. Jarrard, 786 F.2d 1080, Cir. 1986) (isolation of injured inmate and denial of treatment for sever days); Archer v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984) (similar fa Prison Health Services, Inc., 769 F.2d 700, 704-05 (11th Cir. 1985) (req specialty consultations without a court order); Robinson v. Moreland 889-90 (8th Cir. 1981) (weekend's delay in treating a broken hand); Hur F.2d 940, 941-42 (5th Cir. 1978) (refusal to take a prisoner to a doctor'

## PRISONERS' SELF-HELP LITIGATION MANUAL

medical need.[183]

(b) Denial of access to medical personnel qualified to exercise judgment about a particular medical problem. There are several variations on this theme. In some cases, personnel may simply lack medical qualifications or training.[184] In others, prisoners are denied access to medical personnel with the necessary specialized expertise.[185] Sometimes prisoners who need a physician's care are permitted to see only lower-level, non-physician personnel.[186]

(c) Failure to inquire into essential facts that are necessary to make a professional judgment. As one court put it, "We will defer to the informed judgment of prison officials as to an appropriate form of medical treatment. But if an informed judgment has not been made, the court may find that an eighth amendment claim has been stated."[187] Such cases may involve failure to conduct an adequate examination,[188] failure to ask nec-

[183] McGill v. Mountainside Police Dept. 720 F.Supp. 418, 423 (D.N.J. 1989) (police officers failing to get medical help for arrestee who was vomiting blood and had breathing difficulties); Tomarkin v. Ward, 534 F.Supp. 1224, 1235 (S.D.N.Y. 1982) (denial of medical care in solitary confinement); Isaac v. Jones, 529 F.Supp. 175, 180 (N.D.Ill.1981) (delay by guards in providing care); see also Hodge v. Ruperto, 739 F.Supp. 873, 879 (S.D.N.Y. 1990) (police officers could be held liable for removing an arrestee from the hospital before his x-rays could be examined and his injuries treated).

[184] See, e.g., Bass by Lewis v. Wallenstein, 769 F.2d 1173, 1183 (7th Cir. 1985) (holding ten to fifteen-minute delay in doctor's response to patient in cardiac arrest supported liability). One court has stated that "an unexplained delay of hours in treating serious injury states a prima facie case of deliberate indifference." Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (four-hour delay in treating a broken foot), cert. denied, 110 S.Ct. 2624 (1990); Reed v. Dunham, 893 F.2d 285, 287 (10th Cir. 1990) (two-hour delay in treatment of stab wounds); Van Cleave v. United States, 854 F.2d 82, 84 (9th Cir. 1988) (24-hour delay in treating a broken leg after seven requests); Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978) (22-hour delay in treating a broken arm), cert. denied, 446 U.S. 928 (1980); Johnson v. Summers, 411 Mass. 82, 577 N.E.2d 301, 305 (Mass. 1991) (delay of hours in taking prisoner with a broken leg to the hospital), cert. denied, 112 S.Ct. 1166 (1992); But see Mills v. Smith, 656 F.2d 337, 340 (8th Cir. 1981) (one and a half hour delay in treating a broken arm with a subsequent delay did not constitute deliberate indifference); Brown v. Commissioner of Cecil County Jail, 501 F.Supp. 1124, 1126-27 (D.Md. 1980) (delay of less than a week in treating gonorrhea was not deliberate indifference).

[185] See § F.3.c of this chapter.

[186] See § F.3.c of this chapter.

[187] Williams v. Edwards, 547 F.2d 1206, 1216-18 (5th Cir. 1977) (Constitution was violated by medical staff consisting of mostly unlicensed doctors, untrained inmates and an untrained pharmacist); Casey v. Lewis, 834 F.Supp. 1477, 1545 (D.Ariz. 1993) (making of medical judgments by security staff could constitute deliberate indifference).

[188] Tillery v. Owens, 719 F.Supp. 1256, 1308 (W.D.Pa. 1989), aff'd, 907 F.2d 418 (3d Cir. 1990); Owens v. Owens, 719 F.Supp. at 1306, 1308 (citing "cursory" sick call inquiries and unlikely physical examinations that were not "thorough" and in which the patient was never touched); see §§ F.3.a, F.3.b of this chapter. But see Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) (failure to perform a physical examination, resulting in a broken rib, broken ribs, was not deliberate indifference. In our opinion, Brown was incorrectly decided, and the failure to perform

42

---

## PRISONERS' SELF-HELP LITIGATION MANUAL

essary questions or take a history,[189] or failure to conduct tests [...] prisoner's symptoms call for.[190]

(d) Interference with medical judgment by non-medical fa[...] These factors can include staffing that is so inadequate that medi[...] sonnel lack the time to do their jobs,[192] facilities and procedures [...] not allow for proper diagnosis and treatment,[193] and rules or pro[...] restricting medical care on non-medical grounds.[194]

so obvious that an examination should be considered deliberate indifference.

[189] Liscio v. Warren, 901 F.2d 274, 276-77 (2d Cir. 1990) (physician failed to inquire into cause of an arrestee's delirium and thus failed to diagnose alcohol withdrawal); Aldridge v. Montgomery, 753 F.2d 948, 952-53 (4th Cir. 1979) (prison doctor ignored a com[...] allergy to medication).

[190] Miller v. Beorn, 896 F.2d 848, 853 (4th Cir. 1990) (doctor failed to perform [...] cardiac disease in patient with symptoms that called for them); Medcalf v. [...] Kansas, 626 F.Supp. 1179, 1183 (D.Kan. 1986) (doctor failed to order tests [...] suggested by "the elemental and classic symptoms of a brain tumor"); Weaver v. [...] 611 F.Supp. 40, 44 (N.D.Ga. 1985) (prison doctor refused to conduct diagnostic [...] a prisoner with symptoms of optic disease leading to blindness).

[191] See West v. Atkins, 484 U.S. 42, 56 n. 15, 108 S.Ct. 2250 (1988) (acknowledging [...] nonmedical functions of prison life will probably influence the nature, timing and [...] medical care provided to inmates"); Durmer v. O'Carroll, 991 F.2d 64, 68-69 (3d [...] 1993) (holding that delay of treatment for non-medical reasons could [...] deliberate indifference); Hamilton v. Endell, 981 F.2d 1063, 1066-67 (9th C[...] (holding that prison officials' disregarding a surgeon's recommenda[...] non-medical grounds could constitute deliberate indifference); Delker v. Ma[...] F.Supp. 1390, 1398, 1401 (D.O. 1994).

[192] See § F.3.c of this chapter.

[193] Matzker v. Herr, 748 F.2d 1142, 1147 (7th Cir. 1984) (lack of facilities), overruled [...] grounds, Salazar v. City of Chicago, 940 F.2d 233, 240 (7th Cir. 1991); Green v. [...] 581 F.2d 669, 671, 675 (7th Cir. 1978) (failure to provide adequate range [...] emergencies, failure to maintain working respirator, staff who did not know [...] operate emergency equipment); aff'd, 446 U.S. 1 (1980); Lightfoot v. Wal[...] F.Supp. 1066 (1988); Jones v. Prison Health Services [...] (inadequate system of medical records).

A number of cases have held that courts should not permit a [...] assessment of the prisoner's complaint are established, inadequate treatment [...] this chapter. Inadequate physical facilities and medical record systems have a [...] found to violate the Constitution. See §§ F.3.e, F.3.f of this chapter.

[194] Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, [...] 486 U.S. 1006 (1988) (restriction on abortion unrelated to individual treatment needs); [...] (refusal to provide specialty consultations without a court order); Casey v. Le[...] F.Supp. at 1545 (security staff's overruling of medical orders); United States v. [...] Michigan, 680 F.Supp. 928, 1002, 1043-45 (W.D.Mich. 1987) (security or transp[...] restrictions); Arceta v. Trevino..., Inc., 769 F.2d 771 (9th Cir. 1986) (bu[...]

There are a few situations in which courts have upheld security-based restric[...] medical treatment. Prisons may limit the availability of narcotics and other a[...] drugs because of their potential for abuse as long as they provide a reasonable [...] prisoners' pain and other medical problems. Lawhorn v. Duckworth, 736 F.Supp. [...] 1565 (N.D.Ind. 1990), aff'd, 902 F.2d 37 (7th Cir. 1990) (Valium); Wolfel v. Ferg[...] F.Supp. 756, 760 (S.D. Ohio 1979), aff'd sub nom. Inmates of Allegheny County Jail v. Pie[...] F.2d 754, 760-61 (3d Cir. 1979) (an inmate could have a valid claim for medical treat[...] court has held that female hormone treatment may be denied [...] because of the security problems in placing them in either male or female [...] White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988). See § F.4.a of this chapter [...] discussion of transsexuals in prison.

43

## PRISONERS' SELF-HELP LITIGATION MANUAL

(e) Failure to carry out medical orders.[195] Such cases often involve the failure to provide prescribed medication[196] or the failure to act on medical recommendations for surgery or for other specialized care,[197] including hospitalization or other care not available in the prison.[198]

In addition to these "no professional judgment" cases, there are also many decisions that say, in effect, that not every judgment by a doctor is a medical judgment,[199] or that extreme cases of bad judgment by medical

[195] Estelle v. Gamble, 429 U.S. at 105 ("intentionally interfering with the treatment once prescribed"); Aswegan v. Bruhl, 965 F.2d 676, 677-68 (8th Cir. 1992) (failure to honor doctors' orders and refrain from cuffing the plaintiff's hands behind his back); Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (nurse's failure to perform prescribed dressing change); Martin v. Board of County Comm'rs of Pueblo County, 909 F.2d 402, 406 (10th Cir. 1990) (removal of prisoner from hospital against doctor's orders); Payne v. Lynaugh, 843 F.2d 177, 178 (5th Cir. 1988) (denial of access to recommended life-saving equipment); Gill v. Mooney, 824 F.2d 192, 195-96 (2d Cir. 1987) (denial of gymnasium time prescribed as rehabilitation therapy); Arnold on behalf of H.B. v. Lewis, 803 F.Supp. 246, 257 (D.Ariz. 1992) (overriding of medical decisions by security staff, changes ordered by nonmedical staff); Kelley v. McGinnis, ... prescribed back brace); Goodman v. Wagner, 553 F.Supp. 255, 257 (E.D.Pa. 1982) (failure to follow a doctor's orders for wound treatment); Johnson v. Harris, 479 F.Supp. 333, 335-37 (S.D.N.Y. 1979) (failure to provide special diet for diabetic).

One court has recently held that prison officials' failure to obey a medical order for showers and dressing changes did not constitute deliberate indifference. DesRosiers v. Moran, 949 F.2d 15, 19-20 (1st Cir. 1991). In our opinion this decision is contrary to Estelle v. Gamble's reference, cited above, to "intentionally interfering with the treatment once prescribed" as a form of deliberate indifference.

[196] Aswegan v. Bruhl, 965 F.2d at 677-78; Hill v. Marshall, 962 F.2d 1209, 1213-14 (6th Cir. 1992), cert. denied, 113 S.Ct. 2992 (1993); Johnson v. Hay, 931 F.2d 456, 461-62 (8th Cir. 1991); Boretti v. Wiscomb, 930 F.2d at 1156; Johnson v. Hardin County, Ky., 908 F.2d 1280, 1284 (6th Cir. 1990); Martinez v. Mancusi, 443 F.2d 921, ... Ellis v. Butler, 890 F.2d 1001, 1003-04 (8th Cir. 1989); Mitchell v. ... 877 F.2d 594, 598 (7th Cir. 1989); Williams v. O'Leary, 865 F.Supp. 634, 638 (N.D.Ill. 1992); Lowe v. Board of Comm'rs County of Dauphin, 750 F.Supp. ... (M.D.Pa. 1990) (indiscriminate confiscation of medication from all incoming inmates); Goodman v. Wagner, 553 F.Supp. 255, 257 (E.D.Pa. 1982).

Some courts have held that denial or delay of prescribed medication does not violate the Eighth Amendment if the delay is short or the consequences are not serious. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); Martin v. New York City Dept. of Corrections, 522 F.Supp. 169, 170 (S.D.N.Y. 1981); Russell v. Enser, 496 F.Supp. 320, 326-28 (D.S.C. 1979) ... 424 F.2d 1095 (4th Cir. 1980); Burrascano v. Levi, 452 F.Supp. 1066, 1069 (Md. 1978); Harris v. Mapp, F.Supp. 1317, 1324-25 (E.D.Va. 1989) (failure to provide prescribed Dilantin was merely negligent; the prisoner died), aff'd, 907 F.2d 1136 (4th Cir. 1990).

[197] Johnson v. Lockhart, 941 F.2d 705, 706-07 (8th Cir. 1991) (10-month delay in surgery that doctor recommended be done within days); Howell v. Evans, 922 F.2d 712, 723 (11th Cir. 1991) (failure to act on a medical judgment that prisoners needed access to a respiratory therapist), vacated as settled, 931 F.2d 711 (11th Cir. 1991); Johnson v. Bowers, 884 F.2d 1053, 1056 (11th Cir. 1989) (failure to perform surgery recommended by prison doctor); Dace v. Solem, 858 F.2d 385, 387-88 (8th Cir. 1988) (failure of prison doctors to carry out surgery scheduled before plaintiff's incarceration); LaFaut v. Smith, 834 F.2d 389, 393-94 (4th Cir. 1987) (failure to provide rehabilitation therapy recommended by orthopedic specialist); Johnson v. District of Columbia, 579 A.2d 163, 169 (D.C. 1990) (failure to take prescribed action to dermatologist).

[198] See § F.3.d of this chapter.

[199] See, e.g., Hughes v. Joliet Correctional Center, 931 F.2d 425, 428 (7th Cir. 1991) (evidence that medical staff treated the plaintiff "not as a patient, but as a nuisance," and "were insufficiently interested in his health to take even minimal steps to guards against ...

44

## PRISONERS' SELF-HELP LITIGATION MANUAL

personnel constitute deliberate indifference. For example, one federal appeals court has held that treatment "so grossly incompetent, inade or excessive as to shock the conscience" or "so inappropriate as to a intentional maltreatment" violates the Eighth Amendment.[200]

In these cases, courts give substantial weight to expert testimony cizing the prisoner's care, rather than dismissing it as a difference of ion among doctors.[201] Most cases of this nature involve not just bad but also very serious medical conditions, often leading to death, disa or disfigurement.[202] Their reasoning may not be extended to less s cases.

[200] Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (emphasis supplied); Howell v. Evans, 922 F.2d 712, 719 (11th Cir. 1991) ... deliberate indifference"), vacated as settled, 931 F.2d 711 (11th Cir. 1991); Jenkins, 919 F.2d 90, 93 (8th Cir. 1990) (plaintiff should be permitted to prc treatment "so deviant from professional standards that it amounted to de indifference"); Rosen v. Chang, ...

[201] "'Whether an instance of medical misdiagnosis resulted from deliberate indiffe negligence is a factual question requiring exploration by expert witnesses.'" R district court [is] at 1058; accord, Smith v. Jenkins, 919 F.2d at 94 (suggesting prisoner's pre-incarceration medical experts ... established sta deliberate indifference claim), vacated as settled, 931 F.2d 711 (11th Cir. 1991).

[202] Waldrop v. Evans, 871 F.2d 1030, 1032-36 (11th Cir.) (severe self-mutilation fo psychiat ...), rehearing denied, 880 F.2d 421 (11th Cir. 1989); Rogers v. Ev 454, 455-57 (11th Cir. 1988) (treatment of a diabetic); Carswell v. Bay County; with laxatives and pain-killers); Wood v. Sunn, 865 F.2d 982, 989 (9th Cir. 1989 doctors' disregarded complaints because they assumed the prisoner's p v. Chang, 811 F.Supp. ... (death from untreated appendicitis) ... medication states a claim). Johnson v. District of Columbia (failure ... to the failure to perform tests are similar.

45

## PRISONERS' SELF-HELP LITIGATION MANUAL

Prison personnel sometimes respond to allegations of deliberate indifference by saying that they did provide some medical care, or that your medical care was adequate in general. This claim may not be a valid defense; they must respond to the *particular* claim of deliberate indifference that you raise.

For example, one prisoner alleged that he suffered a broken nose, broken teeth, and an eye injury in a fight, but he only got treatment for the broken nose; the court ruled that his allegations stated a claim for deliberate indifference.[203]

In another case, a pregnant woman alleged a five-hour delay in taking her to the hospital when she began to miscarry; the court held that she had raised a factual issue of deliberate indifference concerning that incident even though she received "extensive" medical attention on other occasions.[204] The deliberate indifference standard "does not necessarily excuse one episode of gross misconduct merely because the overall pattern reflects general attentiveness."[205]

### a. Suing the Right Defendants

In pursuing a deliberate indifference claim, you must think closely about exactly *who* was deliberately indifferent—that is, who caused the constitutional violation and can be held liable for it.[206] Doctors and other medical personnel can be liable for the consequences of their own acts or

---

One court has made this point explicit, stating that "life-threatening" or "fest-developing" situations call for closer judicial scrutiny of prison medical care. Liscio v. Warren, 901 F.2d 274, ...

[202] Matzker v. Herr, 748 F.2d 1142, 1147-48 (7th Cir. 1984), *overruled on other grounds,* Salazar v. City of Chicago, 940 F.2d 233, 240 (7th Cir. 1991).

[203] Archer v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984); *see also* Smith v. Jenkins, 919 F.2d 90, 93-94 (8th Cir. 1990) (mere proof of diagnosis by a doctor did not require dismissal of case; district court directed to review prisoner's medical records); Williams v. O'Leary, 805 F.Supp. 634, 638 (N.D.Ill. 1992) ("Mere volume of medical attention is insufficient to defeat an Eighth Amendment claim."); Henderson v. Harris, 672 F.Supp. [...] the warden to have the case dismissed.) *Cf.* Knop v. Johnson, 667 F.Supp. 512, 524-25 (W.D.Mich. 1987) (evidence that the prison system spends a lot of money and hires a lot of staff does not refute a deliberate indifference claim against the medical care system), *aff'd in part and rev'd in part on other grounds,* 977 F.2d 996 (6th Cir. 1992), *cert. denied,* 113 S.Ct. 1415 (1993).

[205] Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980); *see* McGuckin v. Smith, 974 F.2d 1050, 1060-61 (9th Cir. 1992) (a finding that maltreatment was an "isolated exception" to the prisoner's overall treatment militates against a finding of deliberate indifference, but a single "egregious" failure may support a deliberate indifference claim); Jones v. Evans, 544 F.Supp. 769, 775 (N.D.Ga. 1982) (a defendant may respond to a claim of denial of care or inadequate care by "establishing he was generally attentive to the prisoner's needs", a claim of interference with prescribed care is less subject to that defense).

[206] The "causation" or "personal involvement" requirement applied in civil rights actions is discussed in Ch. VII, § B.4.a.

---

## PRISONERS' SELF-HELP LITIGATION MANUAL

omissions if they amount to deliberate indifference,[207] but in some case the fault may be with correctional personnel who keep you from gettin; to see the medical staff or interfere with treatment that has been prescribed.[208]

Wardens and other correctional supervisors are not deliberately indifferent when they act in reliance on the judgments of qualified medica personnel.[209]

But they may be deliberately indifferent if they fail to provide adequat medical care[210] if they maintain policies that interfere wit adequate medical care[211] if they fail to remedy unlawful conditions tha they know or should know about,[212] or if they otherwise fail to carry ou

---

[206] See §§ F.1 of this chapter.

[207] Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990), *cert. denied,* 110 S.Ct. 262 (1990); Kelley v. McGinnis, 899 F.2d 612, 616 (7th Cir. 1990); Parrish v. [...] 600, 605 (6th Cir. 1986); H.C. by Hewett v. Jarrard, 786 F.2d 1080, 1086-87 (11th Cir. 1986); Lewis v. Cooper, 771 F.2d 334, 336-37 (7th Cir. 1985); Harris v. O'Grady, 80 F.Supp. 1361, 1366 (N.D.Ill. 1992).

[208] A[...] court observed, a warden is "not responsible for second-guessing his medica staff." Tomarkin v. Ward, 534 F.Supp. 1224, 1232 (S.D.N.Y. 1982); *accord,* Miltier v. Beorn, 896 F.2d 848, 854-55 (4th Cir. 1990); White v. Farrier, 849 F.2d 322, 327 (8th Ci 1988); Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987); McCracken v. Jones, 562 F.2d 22, (10th Cir. 1977), *cert. denied,* 435 U.S. 917 (1978); *see also* Estate of Cartwright v. Cit; Concord, Cal., 856 F.2d 1437, 1438 (9th Cir. 1988) (jail staff were not liable for waitin [...] an ambulance instead of personally administering CPR).
     Prison officials may not, however, shop around until they get a medical opinion th; suits their non-medical plans for a prisoner. *See* Hamilton v. Endell, 981 F.2d 106 1066-67 (9th Cir. 1992).

[209] Greason v. Kemp, 891 F.2d 829, 837-40 (11th Cir. 1990); Anderson v. City of Atlanta, 77 F.2d 678, 686-89 (11th Cir. 1985); Miranda v. Munoz, 770 F.2d 255, 260-62 (1st Cir. 1985

[210] Howell v. Evans, 922 F.2d 712, 723 (11th Cir. 1991), *vacated as settled,* 931 F.2d 711 (11t Cir. 1991); Bass by Lewis v. Wallenstein, 769 F.2d 1173, 1184-86 (7th Cir. 1985); Daniel [...] (9th Cir. 1988); Medcalf v. State of Kansas, 6; F.Supp. 1179, 1186 (D.Kan. 1988); *see also* § F.3 of this chapter.

[211] Boswell v. Sherburne County, 849 F.2d 1117, 1123 (10th Cir. 1988) (chief jailer an sheriff could be held liable for refusing to let medically untrained jailers wer and that medical care was restricted in order to save money), *cert. denied,* 488 U.S. 10 (1989); Meade v. Grubbs, 841 F.2d 1512, 1531 (10th Cir. 1988) (the failure of the sta health commissioner to make medical care available to prisoners could be deliberate indifference); Johnson, 781 F.2d 769, 771-72 (9th Cir. 1986) (supervisory officials could l liable for budgetary restrictions on medical care); Bass by Lewis v. Wallenstein, 7 F.2d at 1184-86 (damages awarded against assistant warden and medical administrato based on deficiencies in sick call procedure); Ancata v. Prison Health Services, Inc., 7 F.2d 700, 705-06 (11th Cir. 1985) (sheriff could be held liable for requiring the court orde for outside medical care); Carlson, 581 F.2d 669, 675 (7th Cir. 1985) (failu to provide emergency coverage when a doctor was on duty stated a claim against tl chief medical officer), *aff'd,* 446 U.S. 14 (1980).

[212] Aswegan v. Bruhl, 965 F.2d 676, 677-78 (8th Cir. 1992) (Deputy Warden and Securit Director held liable for failure to correct known violations of doctors' orders); Hill Marshall, 962 F.2d 1209, 1213 (6th Cir. 1992) (Deputy Superintendent of Treatment m; be held liable for failure to respond to complaints despite his knowledge of a breakdown in t medical system); Greason v. Kemp, 891 F.2d 829, 8: (11th Cir. 1990) (prison system mental health director could be held liable for failure remedy known deficiencies in mental health services); LaHurl v. Smith, 834 F.2d 38

their responsibilities to provide adequate medical care.[214]

City or county governments may be held liable on a similar basis.[215] In your complaint and other papers, you should be specific about the reasons you think a particular defendant is liable for a medical care deprivation.

### b. Remedies for Deliberate Indifference

Under the deliberate indifference standard, you may seek either an injunction requiring prison officials to give you proper medical care in the

392-94 (4th Cir. 1987) (damages awarded against warden who was "fully advised" of failure to provide a paraplegic inmate with adequate toilet facilities and rehabilitation therapy); Tomarkin v. Ward, 534 F.Supp. 828 F.2d 298, 305 (5th Cir. 1987) (Sheriff could be held liable for the plaintiff's medical treatment while being detained); ... Bass v. Lewis v. Wallenstein, 769 F.2d at 1184-86 (assigning warnings of inadequate medical administrator could be held liable for failure to ... F.Supp. at 544-49 (Commissioner, medical care); Langley ... Superintendent ... unit chief and security captain could be held liable based on their knowledge of deficiencies in mental health care); Jones v. Evans, 544 F.Supp. 769, 777 (N.D.Ga. 1982) (warden and commissioner could be held liable for inadequate training, supervision and direction of subordinate medical personnel); Tomarkin v. Ward, 534 F.Supp. 1224, 1232 (S.D.N.Y. 1982) (warden could be responsible if he knew of denial of medical care in solitary confinement).

Howell v. Burden, 12 F.3d 190, 192-94 (11th Cir. 1994) (Superintendent's administrative authority could support liability); Johnson v. Lockhart, 941 F.2d 705, ... 1991) ("Abdication of policy-making and oversight responsibilities" can ... reach the level of deliberate indifference); ... violent suppression of prison disturbance ... 235, 239-40 (2d Cir. 1991) administrators' liability); Al-Jundi v. Mancusi, ... (Superintendent's failure of deliberate indifference), cert. denied, ... (failure to carry out statutory duties could be deliberate indifference); Brown v. Coughlin, 758 F.Supp. 876, 889 (S.D.N.Y. 1991) (Commissioner and Superintendent have personal duties to ensure adequate medical services).

Colle v. Brazos County, Tex., 981 F.2d 237, 245 (5th Cir. 1993) (inadequate monitoring, lack of arrangements ... to medical facilities); Cabrales v. County of Los Angeles, 864 F.2d 1454, reinstatement (9th Cir. 1988) (inadequate staffing); vacated, 490 U.S. 1087 (1989), reinstated, 886 F.2d 235 (9th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); Anderson v. City of Atlanta, 778 F.2d at 685-89 (inadequate staffing and requiring court Health Services, Inc., 769 F.2d at 705-06 (policy of Salt Lake County, 768 F.2d 303, 307-08 orders for certain medical treatment); Garcia v. ... (10th Cir. 1985) (inadequate staffing and policy of admitting unconscious persons to jail).

If local governments establish adequate procedures for providing medical care to prisoners, they can't be held liable based on the failures of their employees to follow them; Holmes v. Sheahan, 930 F.2d ... 1201-02 (7th Cir. 1991), cert. denied, 112 S.Ct. 423 (1991); Bryant v. Maffucci, 923 F.2d 979, 986 (2d Cir. 1991), cert. denied, 112

Municipal liability in civil rights actions requires proof that the violation was caused by a municipal policy. This requirement is discussed in § VIII, § B.4 b. Similarly, a private corporation that provides prison medical care could only be held liable if the legal violation results from a corporate policy. See cases cited in § F of this chapter, n. 171.

future,[216] or damages for their past failure to provide proper ca both.

The two don't always go together. A court may find that you entitled to damages for what happened in the past, but you may entitled to an injunction to avoid harm in the future.[218]

Conversely, if you have received adequate care (or gotten well i) by the time the court decides the case, you may not need an inj but you can still receive damages for any pain and suffering you enced while waiting to receive proper treatment.[219]

### 2. Serious Medical Needs

Under the Constitution, prison officials need provide care only rious medical needs."[220] Some courts have held that a medical ne rious if it "has been diagnosed by a physician as mandating treat ... is so obvious that even a lay person would easily recognize th sity for a doctor's attention."[221]

[220] See, e.g., Arnold on behalf of H.B. v. Lewis, 803 F.Supp., 246, 258-57 (D.Ar Yarbaugh v. Roach, 736 F.Supp. 318, 320 (D.D.C. 1990); Phillips v. Michigan Corrections, 731 F.Supp. 792, 800-01 (W.D.Mich. 1990), aff'd, 932 F.2d 969 (6th C Prisoners may also seek injunctions against conditions that may cause illne future, such as exposure to infectious diseases or unsafe drinking water. ... McKinney v. Anderson, U.S., 113 S.Ct. 2475, 2480-81 (1993). Such conditions are c further in § C3 b of this chapter.

[221] See, e.g., Aswegan v. Bruhl, 965 F.2d 676, 677 (8th Cir. 1992); Hill v. Marshall, 1209, §215-17 (6th Cir. 1992), cert. denied, 113 S.Ct. 2992 (1993); Leach v. Shelby Sheriff, 891 F.2d 1241 (5th Cir. 1989), cert. denied, 495 U.S. 932 (1990); Mandel v. F.2d 783 (11th Cir. 1989). Other cases involving damage awards are cited thr the following sections on medical care. ...

Johnson v. Bowers, 884 F.2d 1053, 1056 (8th Cir. 1989); Crooks v. Nix, 872 ... (D.N.D. 1989); ... current medical records before ruling on injunctive claim); compare Lee v. Mc 543 F.Supp. 386, 391-93 (D.Kan. 1982) (granting injunction to paraplegic - V... further medical neglect) with Lee v. McManus, 589 F.Supp. 633, 638-41 (D.Ka (denying damages based on various defenses).

Boretti v. Wiscomb, 930 F.2d 1150, 1154-55 (6th Cir. 1991) (prisoner could get... for failure to treat his wound even though it had healed); Hathaway v. Cough F.2d 48 (2d Cir. 1988) (claim for damages should not have been dismissed the surgery was performed); H.C. by Hewett v. Jarrard, 786 F.2d 1080, 1083, 1C... Cir. 1986) (damages awarded for three-day denial of medical care with no pe injury resulting); Robinson v. Moreland, 655 F.2d 887, 890 (8th Cir. 1984); West 571 F.2d 158 (3d Cir. 1978) (similar to Hathaway); Isaac v. Jones, 529 F.Supp. (N.D.Ill. 1981).

Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976). The same standard is discussed in § F4 a of this chap The phrase "serious medical needs" is also discussed in 294 concerning transsexualism.

Duran v. Anaya, 642 F.Supp. 510, 524 (D.N.M. 1986); accord, Johnson v. Busbee 349, 351 (6th Cir. 1991); Caudreault v. Salem, Mass., 923 F.2d (1st Cir. 1990); Monmouth County Correctional Institution Inmates v. Lanzaro, at 347; Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U (1981) and cases cited; Maynard v. New Jersey, 719 F.Supp. 292, 295 (D.N.J. 1987); Tolbert v. Eyman, 434 F.2d 625, 626 (9th Cir. 1970); ... McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) ("the existence of a

A medical condition may also be serious if it "significantly affects an individual's daily activities."[222]

A more general definition of serious medical needs, and we think a better one, refers to "conditions that cause pain, discomfort, or threat to good health."[223] This definition is consistent with Supreme Court decisions holding that the Eighth Amendment prohibits the "unnecessary and wanton infliction of pain."[224] Many courts have cited pain in finding a medical need serious.[225] One court has stated, "Evidence of recent traumatic injury ... has generally been sufficient to demonstrate a serious medical need."[226]

---

[221] that a reasonable doctor or patient would find important and worthy of comment or treatment" supports a finding of seriousness); Davis v. Jones, 936 F.2d 971, 972 (7th Cir. 1991) (police are obligated to obtain medical care if an injury "reasonably appears to be serious"), rehearing denied, 946 F.2d 538 (7th Cir. 1991).

[222] McGuckin v. Smith, 974 F.2d at 1060; accord, Tillery v. Owens, 719 F.Supp. 1256, 1286 (W.D.Pa. 1989) (citing definition of "serious" mental illness as one "that has caused significant disruption in an inmate's everyday life and that prevents his functioning in the general population without disturbing or endangering others or himself"), aff'd, 907 F.2d 418 (3d Cir. 1990); see Johnson v. Bowers, 884 F.2d 1053, 1056 (8th Cir. 1989) (prison must treat a "substantial disability"—in this case, partial disability of an arm); Young v. Harris, 509 F.Supp. 1111, 1113-14 (S.D.N.Y. 1981) (failure to provide leg brace was actionable); see also Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d at 347 (medical need is serious if it imposes a life-long handicap or permanent loss").

[223] Denn v. Coughlin, 623 F.Supp. 392, 404 (S.D.N.Y. 1985); accord, McGuckin v. Smith, 974 F.2d at 1060 ("chronic and substantial pain" indicates that a medical need is serious); Boretti v. Wiscomb, 930 F.2d 1150, 1154-55 (6th Cir. 1991) (needless pain is actionable even where there is no permanent injury); Moreland v. Wharton, 899 F.2d 1168, 1170 (11th Cir. 1990) (constitutional and unconstitutional health problem is actionable); Johnson v. Schoemehl, 878 F.2d 1043, 1055 (8th Cir. 1989) (condition that is "medically serious or painful in nature" may be actionable); Farinaro v. Coughlin, 642 F.Supp. 276, 279 (S.D.N.Y. 1986) (Eighth Amendment requires "a specific showing of pain, discomfort, or threat to health").

[224] Estelle v. Gamble, 429 U.S. at 104.

[225] Ellis v. Butler, 890 F.2d 1001, 1003 (8th Cir. 1989) (swollen, painful knee must be considered "serious" on a motion to dismiss); Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir. 1988) (plaintiff was injured without treatment—eliminated pain and suffering at least temporarily); Moreland v. Wharton, 899 F.2d 1168, 1170 (11th Cir. 1990) (pain while awaiting a delayed operation); Kaminsky v. Rosenblum, 737 F.Supp. 1309, 1319 (S.D.N.Y. 1990) ("unnecessary pain and suffering"), appeal dismissed, 929 F.2d 922 (2d Cir. 1991); Bouchard v. Magnusson, 715 F.Supp. 1146, 1148 (D.Me. 1989) (persistent pain without substantial difficulty might be serious); Case v. Baker, 518 F.Supp. 1277, 1280 (S.D.Ohio 1981) (boil "in full flower" might be serious). But see Wilson v. Franchesci, 735 F.Supp. 395, 398 (M.D.Fla. 1990) (itching is not a serious medical need). Compare Harris v. Murray, 761 F.Supp. 409, 414 (E.D.Va. 1990) (hair loss is not serious) with Johnson-El v. District of Columbia, 579 A.2d 163, 167-69 (D.C. 1990) (hair loss is serious)(citations omitted).

[226] Brown v. Hughes, 894 F.2d 1533, 1538 n.4 (11th Cir. 1990), cert. denied, 110 S.Ct. 2624 (1990); see Smallwood v. Renfro, 708 F.Supp. 182, 187 (N.D.Ill. 1989) (cut lip might be serious).

[227] Several courts have held that such injuries were not serious. Gaudreault v. Municipality of Salem, Mass., 923 F.2d at 208; Williams-El v. Johnson, 872 F.2d 224, 230-31 (6th Cir. 1990), cert. denied, 493 U.S. 871 (1989); Martin v. Oglesby, 910 F.2d 83, 84 (8th Cir. 1990); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (cut over eye and

---

Courts have recognized that "there can be a serious cumulative... from the repeated denial of care with regard to even minor nee... Thus, even a bad headache might not be serious by itself, but if you... them continually, we think you have a serious medical need. The fa... certain care has been labelled "elective" does not necessarily mea... your need for it is not serious.[228]

In drafting a complaint or other court papers, you should addre... issue of "seriousness" by being very specific about the *effects* of the... of medical care.[229] This point is especially important since "one fe... court has held that if the seriousness of a medical need is not "appar... a lay person," the plaintiff must submit expert medical evidence— a... possible task for most *pro se* litigants.[230]

You should therefore do what you can to make the seriousness of... need "apparent" to the court by explaining how painful it is, to wh... tent it interferes with your activities, how long you have had it, whe... is getting worse, etc. You may also wish to ask the court to app... medical expert witness under Rule 706, Fed.R.Ev. This is a long sh... cause there is no provision to pay expert witnesses in civil *in forma... peris* cases[231] but in a serious case the court may be able to persua... expert to donate her services. A Rule 706 expert has been appointed... least one prison medical case.[232]

---

[227] piece of glass in hand were not so serious that a 14-hour delay in treating the... unconstitutional; in these cases, the plaintiff received some treatment, and t... issue was whether the treatment was not constitutionally inadequate.

[228] Jones v. Evans, 544 F.Supp. 769, 775 n.4 (N.D.Ga. 1982).

[229] Johnson v. Bowers, 884 F.2d at 1056; Monmouth County Correctional Inst... Inmates v. Lanzaro, 834 F.2d 326, 349 (3d Cir. 1987); Inmates of Allegheny... Delker v. Maass, 843 F.Supp. 1390, 1399-1400 (D.Or. 1994); But see Bor... Kozakiewicz, 833 F.2d 468, 475 (3d Cir. 1987) ("elective" surgery could be deem... "presumably brief" period of pre-trial detention), cert. denied, 485 U.S. 991 (1988).

[230] The failure to provide this kind of information can lead to the dismissal of you... See Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir. 1990) (claim of delay in treati... pain dismissed where the prisoner did not allege "that his condition was acute... any other reason required immediate attention nor that the [once-only] de... treatment aggravated his condition"); Dixon v. Fox, 893 F.2d 1556, 1557 (6th Cir... (claim of suspension of medical diet dismissed where plaintiffs did not explai... their serious medical needs were compromised), cert. denied, 112 S.Ct... Stinson v. Sheriff's Dept. of Sullivan County, 499 F.Supp. 259, 263 (S.D.N.Y... ("bruises and lacerations" were serious; vague claims of head pain and pai... suffering from unspecified "eye injury" were not).

[230] Boring v. Kozakiewicz, 833 F.2d at 473-74. The dissenting judge in that case... "The inhumanity of this paradoxical rule of law alone suggests a serious flaw."... 474. We agree.

[231] Boring v. Kozakiewicz, 833 F.2d at 473-74.

[232] Crabtree v. Collins, 900 F.2d 79, 81 (6th Cir. 1990); see also Smith v. Jenkins, 919 F... 94 (8th Cir. 1990) (suggesting that the district court "may" appoint an indep... expert or obtain an opinion from the doctor who treated the plaintiff befo... imprisonment). See Ch. IX, § S.1.e for further discussion of expert witnesses.
The need for expert testimony is also a factor that weighs in favor of appo...

## PRISONERS' SELF-HELP LITIGATION MANUAL

### 3. The Medical Care System

In order to provide adequate medical care, prison officials must have an adequate system for identifying prisoners with medical needs and making sure that they are diagnosed and treated. "[S]ystemic deficiencies in staffing, facilities, or procedures [which] make unnecessary suffering inevitable" constitute deliberate indifference.[233]

In the next several sections, we will discuss what prison officials must do to meet their obligation to provide "a medical care system that meets minimal standards of adequacy."[234]

#### a. Communication of Medical Needs

"Prison officials show deliberate indifference to serious medical needs if prisoners are unable to make their medical problems known to the medical staff."[235] Prisoners in isolated confinement must be able to communicate their medical needs to staff.[236] Sick call must be conducted in a

counsel to represent you, and you should point this out in your motion for the appointment of counsel. See Ch. IX, § C.5, concerning appointment of counsel.

233 Todaro v. Ward, 565 F.2d 48, 52 (2d Cir. 1977), quoting Bishop v. Stoneman, 508 F.2d 1224, 1226 (2d Cir. 1974); accord, Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); DeCidio v. Pung, 920 F.2d 525, 529 (8th Cir. 1990) (lack of adequate organization or control in the administration of health services supported finding of Eighth Amendment violation); Fernandez v. Granger, 887 F.2d 1552, 1556 (11th Cir. 1989) ("Proof of staffing, or procedural deficiencies may give rise to a finding of deliberate indifference."); Eng v. Smith, 849 F.2d 80, 82 (2d Cir. 1988) (evidence of systemic deficiencies in mental health care supported a preliminary injunction, and assisting Kemp, 891 F.2d 829, 839 (11th health treatment plans, lack of policies and procedures for held liable for lack of medical ... Greason v. suicide); French v. Owens, 777 F.2d 1250, 1254 (7th Cir. 1985), cert. denied, 479 U.S. 817 (1986); Newman v. Alabama, 503 F.2d 1320, 1331 (5th Cir. 1974) ... general disorganization of nursing services contributed to an Eighth Amendment violation), aff'd, 907 F.2d 418 (3d Cir. 1990); ... part of the administration and administration of health care adequately found inadequate); see also cases cited in § F.1.b of this chapter, nn. 201-216.

234 Wellman v. Faulkner, 715 F.2d 269, 271 (7th Cir. 1983), cert. denied, 468 U.S. 1217 (1984).

235 Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982); accord, Johnson-El v. Schoemehl, 878 F.2d 1043, 1054-55 (8th Cir. 1989) (sick call only once a week stated a constitutional claim); Bass by Lewis v. Wallenstein, 769 F.2d 1173, 1184-85 (4th Cir. 1985) (inadequate indifference); Arnold on behalf of H.B. v. Lewis, 803 F.Supp. 246, (D.Ariz. 1992) (lack of adequate system of psychiatric ... supported a finding of deliberate indifference); Morales Feliciano v. ... reported); Hernandez v. Colon, 697 F.Supp. 37, 41, 50 (D.P.R. 1988); Dawson v. Kendrick, 527 F.Supp. 1252, 1308 (D.W.Va. 1981); Lightfoot v. Walker, 486 F.Supp. 504, 516-17 (S.D.Ill. 1980); see Wright v. Jones, 907 F.2d 848, 852 (8th Cir. 1990) (supervisory officials were not liable for denial of treatment where they had instituted policies and procedures for communication of medical treatment requests).

236 Todaro v. Ward, 565 F.2d 48, 51-52 (2d Cir. 1977) (infirmary patients in isolation rooms must be provided a way to summon nurses); LeMaire v. Maass, 745 F.Supp. 623, 636

52

## PRISONERS' SELF-HELP LITIGATION MANUAL

fashion that permits prisoners' complaints to be evaluated in sional manner.[237] Correctional personnel without medical training used to convey sick call requests[238] but they cannot be allowed which prisoners will receive medical attention.[239]

Prisons may use nurses, physicians' assistants or medical tec sistants to determine priorities in seeing a doctor and to han problems for which a doctor is not necessary.[240]

However, in such a system, the person doing the screening m adequate training and physician supervision, and prisoners wl physician's direct attention must receive it.[241]

(D.Or. 1990) (segregation inmates could not be locked into cells from which not summon assistance), vacated and remanded, 12 F.3d 1444 (9th Cir. 1993). court in LeMaire did not disagree with the district court's finding of unconst but merely held that its injunction was too broad.

237 Hoptowit v. Ray, 682 F.2d at 1252-53 (9th Cir. 1982) (evaluation of m complaints via written "kites" rather than examination of the patient was i Todaro v. Ward, 565 F.2d at 50-51) (nurse screening procedure that all seconds per prisoner, did not permit physical examination, and assigne to cases for medical complaints was inadequate); Inmates of Occoquan v. F-1306 (D.N.D.Fla. 1989) ("cursory" sick call and sick call conducted where the prevented the doctor from hearing complaints were inadequate), aff'd, 907 F Cir. 1990); United States v. State of Michigan, 680 F.Supp. 928, 1043-45, 1061 1987) (decisions about medical priorities cannot be made from the inma requires all prisoners with non-routine complaints to be seen by a docto hours).

238 Miller v. Carson, 401 F.Supp. 835, 898 (M.D.Fla. 1975), aff'd in pertinent part, 5 (5th Cir.), rehearing denied, 566 F.2d 106 (5th Cir. 1977).

239 Fields v. City of South Houston, Texas, 922 F.2d 1183, 1192 n.10 (5th Cir. 199 v. Alusi, 872 F.2d 577, 581 (4th Cir. 1989) (allegation of medical screening b lay personnel supported a claim of deliberate indifference); Kelley v. Mc 842 F.2d 612, 616 (5th Cir. 1988) (allegation that non-medical personnel initi access to a doctor stated a deliberate indifference claim); Boswell v. Sherbu 849 F.2d 1117, 1123 (10th Cir. 1988) (deliberate indifference claim was su evidence that "inadequately trained jailers were directed to use their own about the seriousness of prisoners' medical needs"), cert. denied, 488 U.S. Hoptowit v. Ray, 682 F.2d at 1252; Morales Feliciano v. Hernandez Colon, 37-41, 50 (D.P.R. 1986); Martin v. Gentile, 561 F.Supp. 584, 589-90, 597-98 (D

240 Partee v. Lane, 528 F.Supp. 1254, 1259-61 (N.D.Ill. 1981); Burks v. Teasdale 650, 678-79 (W.D.Mo. 1980); see Toussaint v. McCarthy, 801 F.2d 1080, 111- 1986) (court should determine what services were performed by assistants, inmates and whether they were qualified to perform them), cert. denied, 48 (1987).

241 See cases cited in § F.4.c of this chapter, nn. 251 and 253.

53

(1)

To whom it may concern

Enclosed are issues and
documentation when my
son was incarcerated at
Gander Hill Prison
(Pain and suffering due to
hernia)

(A) Letter mailed to me after
my conversation with
Gregory Smith (Deputy Attorney General)
The letter states my son was
housed in infirmary
Not so at the time

(B) Second letter sent to Senator
Biden's Office, from Warden
after I gave Senator Biden
spokesperson - Leon Butler,
my documentation of
my sons complaints.

(C) Documentation of my son's
complaints to me.

6/24/02

①

I am addressing concerns to
Senator Biden's offices, that
my son has given to me.
He is a inmate at Gander
Hill Prison. His name
is William F. Davis III
S.B.I # 16276 2

5/22  9:19
      PM.
         Son called from Gander
Hill c/o severe pain.
(pay phone # 426-9321)
I put in a call to Gov
Minner's answering service,
operator took my name
and phone number, stated
Matt was spokesperson.
         No response from Matt

5/23 Son called and stated given
→ Tylenol
6/2  8:55 Son again c/o pain
       P.M
6/3  9:08 Call put into Jean
     A.M
     Long (medical supervisor)
         No response
6/4  Son again c/o pain. States
he can hardly move. No appetite

(○2)

**C**

6/4 cont'd

→ States given 600 mgm Motrin

6/6 Placed a call to main
    prison number (no response)

6/7 Called main number
    again (no response)
    Placed a call to Governors
    office (Wilmington) Spoke to
    John Henry. Stated my
    concerns to him. Did not
    call me back

10³⁰ₐₘ Son called to state he is
    in infirmary, to be x-rayed

6/10
    1¹⁹ₚₘ Son called and stated
    x-rays were taken, but no one
    has communicated with him.
    I spok to Jean Long (1³⁰ₚₘ)
    Hesitant to speak to me. Stated
    I don't know who you are.
    I informed her firmly, I
    was his mother.

6⁴⁵ₚₘ Son to pain

6/12. Son still in infirmary.
    I call Rick Brown (internal
    affairs) addressed my concern

(62)

6/12 (cont'd)

to him. He returned back to me
and stated mostly dealing
with a intestinal problem
(according to the doctor)
6/13 Spoke to Prison Comm's secretary
States will check into situation
(Did not call me back)
6/14 Son continues to ℅ pain
States he can hardly walk, very
little appetite. Was told he
will get another x-ray
6/15 ℅ pain
6/16 ℅ feeling weak, no appetite,
nauseated, throwing up.
6/16 I left a message on voice
mail of H. Governors office (Dover)
6/17 Call came from H. Governor's 2:26 P.M.
office. (message left) Stating they
had received my message (5:17)
3:08
and would get back to me
6/17 Son states needs are being
ignored, Stated a Nurse Betty
stated to him "Your not going
to the hospital, it's not your
hernia, it's a obstruction
of the bowels

6/18 Called Senator Biden's office
6/18 Diane Butler returned my
   call. Stated medical unit states
   not constipated, bowels moving okay
   hernia is small, blood work done,
   x ray done, no infection (
   according to my son he weighed
   himself when first placed in
   infirmary (225 lbs)

cont'd conversation with Diane Butler
   Stated Medical staff feels he wants
   to stay in infirmary. Not eating
   his special diet, Eating what
   he is not supposed to eat
   (Note: If he is on a special diet,
   how is he getting things to
   eat he is not supposed to have?)
6/19 Son states went to bathroom
   and passed a lot of waste
   (Stated by staff bowels were okay
   on 6/18)
6/20 Son states still having pain,
   but stated to be placed back
   on pod.

6/21 Son placed back on food,
States he is still in pain
I call Comm. office again
Told to call I Cathy English
I did not place call

6/23 Son continues to C/o pain and
not having a appetite

6/25 12:34 P.M. Son continues to C/o pain
States lost 20 lbs.

6/26 Son continues to C/o pain,
No appetite, weak, cannot
hardly move, nauseated,
stating I'm tired of being sick,
I feel like crying

6/27 Called Biden's Office
(No response)

6/28 C/o pain

7/7 Son still C/o pain, nausea,
no appetite, states I'm getting
weak, given no pain medication
C/o cramps

7/8 Called att. General's Office Wilm
Spoke to Gregory Smith
I gave him my concerns
about my son. After
listening to my concerns

7/8 cont'd

Mr. Smith stated. How do you
think families feel who have
crimes committed against them.
I could not understand why
he made the statement to me
when it had nothing to do with
my son's issues.

7/8 Son called and stated he was
to have more blood work done.
States went from 250-232 (lbs)

7/9 Son continues to to no appetite
States nobody cares about his
problem repeating over and
over.

7/10 Senator Biden's spokesperson
Diane Butler suggested a I
make a visit to see weight loss

8/5 Spoke to Linda Hunter (medical)
Stated being taken care of

7/29 Son states continued pain
Tylenol 3 not helping

8/16/ Called Senator Margaret Henry.
Gave my concerns to her
called me back and stated

(62)                                          (7)

## C

5/16 cont'd

She spoke to the Warden
and stated he was to see
a surgeon
Surgery performed on
9/5 (Dr. Mammer)
It seems as tho nothing
would have been done for
my son, if I had not
communicated with Senator
Henry. According to my son
KPA → the doctor stated he could have
died from the bacteria in
his feces if treatment
was put off much longer.

9/13    Spoke to Linda Hunter (Medical
11 26/AM    Stated he is doing better
than last week.

Lois E. Davis
102 So. Heald St.
Wilm De 19801
(302)-777-7558

Discharge Summary (1)

FINAL DIAGNOSES:
1. Perforation of the small bowel with extensive peritonitis.
2. Incarcerated ventral hernia.

SECONDARY DIAGNOSES: Protein calorie malnutrition and postoperative ileus.

OPERATIVE PROCEDURE: Exploratory laparotomy with small bowel resection and anastomosis, peritoneal debridement and toilet, repair of incarcerated ventral incisional hernia by Dr. Mammen on 9/5/02.

BRIEF HISTORY AND PHYSICAL FINDINGS: This 41-year-old patient presented with a four month history of pain in the umbilical area. He was noted to have a hernia approximately four months ago in that area. This was originally reducible, but then became irreducible. He has had intermittent vomiting and abdominal pains for the past three months and has apparently lost about 40 pounds of weight. There was a CT scan done approximately a month ago that showed near total obstruction of the small bowel. Physical examination when he came to the office revealed a sick looking male with a pulse of 110 per minute, blood pressure 120/90 mmHg. Abdomen was moderately distended with a 10 cm x 10 cm periumbilical swelling with marked tenderness, guarding and percussion tenderness of the abdomen. The picture was that of an incarcerated ventral hernia with intestinal obstruction and signs of peritonitis.

He was admitted emergently from the office to St. Francis Hospital and emergently underwent abdominal exploration. There was evidence of long standing small bowel obstruction around the jejunal ileal junction with a perforation possibly from a Richter's hernia. There was massive fecal peritonitis with small bowel contents all through the abdomen. These were multiloculated over the lower spleen, pericolic gutters and the pelvis. The entire peritoneal surface was covered with purulent exudate indicating perforation had occurred quite some time before the exploration. The segment of small bowel with the perforation was resection and staple anastomosis created. Extensive peritoneal toilet and debridement of as much of the exudate as possible was carried out. All of the loculated interloop collections were drained. He did have a hernia, but the hernia had only preperitoneal fat at the time of surgery because the bowel that was trapped in slipped back after it perforated and decompressed itself. The skin incision was left open except for a few sutures to hold the umbilical area skin together.

| Catholic Health East | Pt. name: DAVIS,WILLIAM F III |
| | Medical Record #: W0909564 |
| ST. FRANCIS HEALTHCARE SERVICES | Admission Date: 09/05/02 Acct#: W004170064 |
| | Consultant: Mammen,Thomas K. M.D |
| DISCHARGE SUMMARY | D/C Date: 09/14/02    Rm: W734-2 |
| (1010-0060) | Pt. Status: DIS IN    Pt.Loc.: W7N |

U00082

Operative Report (1)

▶ PREOPERATIVE DIAGNOSIS: Incarcerated ventral hernia with signs of intestinal obstruction and peritonitis.

POSTOPERATIVE DIAGNOSIS: Incarcerated ventral hernia with question of small bowel perforation and massive fecal peritonitis.

OPERATIVE PROCEDURE: Exploratory laparotomy and small bowel resection with anastomosis, peritoneal debridement and tiolette repair of incarcerated ventral hernia.

SURGEON: THOMAS MAMMEN, M.D.

INDICATION FOR SURGERY: This 41-year-old patient apparently had a 3 month history of progressive weight loss, intermittent nausea and vomiting and progressive abdominal distention. This became worse over the last several weeks. He had lost about 30 to 40 pounds over the past 3 to 4 months. CT scan of the abdomen done approximately a month ago at St. Francis Hospital revealed near total small bowel obstruction. The patient when seen the office had an incarcerated tender hernia with signs of peritonitis. The patient emergently brought to the Operating Room for exploration.

▶ OPERATIVE FINDINGS: The patient had evidence of long-standing small bowel obstruction at around the jejunoileal junction with a perforation at that point possibly from a Richter's hernia. The proximal bowel was hypertrophic and distended and the distal bowel was collapsed. There was massive fecal peritonitis with small bowel fluid free and loculated around the liver, spleen, pericolic gutters, pelvis and within multiple loops of small bowel. The entire peritoneal surface was covered with brownish/yellow exudates indicating the peritonitis had been present for quite some time.

OPERATIVE PROCEDURE: Under endotracheal general anesthesia, the abdomen was prepared with Betadine and draped. An incision was made from the mid epigastric area down to the pubic area around the umbilicus. The incision was deepened through the subcutaneous tissue. The hernia defect was identified but when opened had only preperitoneal fat within it. When the peritoneum was opened, it was quite evident that the patient had had a perforation that occurred some time ago with massive fecal peritonitis. The portion of the small bowel that had the perforation was identified and the leaking hole was occluded with a single suture of 3-0 silk. After this was done, all of the collections from the peritoneal cavity was drained. As much of the peritoneal surfaces that could be debrided without causing extensive damage were debrided off of the brownish/yellow exudate that covered all the

| Catholic Health East | Pt. name: DAVIS,WILLIAM F III |
| --- | --- |
| | Medical Record #: W0909564 |
| ST. FRANCIS HEALTHCARE SERVICES | Account#: W004170064    Proc. Date: 09/05/02 |
| | Admission Date: 09/05/02 |
| OPERATIVE REPORT | Surgeon: Mammen,Thomas K. M.D |
| (1010-0022) | D/C Date: 09/14/02     Pt.Loc.: W7N |

peritoneal surfaces. The subdiaphragmatic area, the surface of the liver, the Morrison's pouch, the pericolic gutters and the surface of the spleen were drained of pus and fluid collection. Copious irrigation was carried out to remove as much of the small bowel contents that had spilled as possible. A portion of the small

bowel was resected using a GIA stapling device and a stapled functional end-to-end anastomosis was created. The opening created made to insert the GIA stapling instrument was a TA stapling device. Several sutures of 3-0 silk were placed where the bowel was put together to prevent the distraction of the anastomosed bowel. The opening in the mesentery was approximated with several 3-0 silk sutures. The peritoneal cavity was irrigated once again. The fascia was now approximated using looped #1 PDS suture with single interrupted #1 PDS suture in between. The looped PDS sutures started from the superior portion of the wound and another one from the inferior portion of the wound, met in the middle and were tied to each other. Several 3-0 nylon sutures were placed in the skin and subcutaneous tissue to loosely approximate the skin in three locations. The wound was covered with Adaptic and gauze dressings. The blood loss during the procedure was 100 to 150 mL. The patient tolerated the procedure well and was transferred to the Intensive Care Unit postoperatively.


DD: 10/09/2002  TD: 10/09/2002
Job: 58682  TM/TL373

CC: THOMAS MAMMEN, M.D. (faxed)

_____
Thomas K. Mammen, M.D.

| Catholic Health East | Pt. name: **DAVIS, WILLIAM F III** |
|---|---|
|  | Medical Record #: **W0909564** |
| **ST. FRANCIS HEALTHCARE SERVICES** | Account#: **W004170064**    Proc. Date: 09/05/02 |
|  | Admission Date: 09/05/02 |
| OPERATIVE REPORT | Surgeon: Mammen, Thomas K. M.D |
| (1010-0022) | D/C Date: 09/14/02        Pt.Loc.: W7N |

J00093

The patient was initially managed in the Intensive Care Unit and massive fluid infusion had to be carried out because the patient had had chronic dehydration. He was started on TPN by 9/7/02 because the patient had lost 30 to 40 pounds of weight during the previous three months and was in protein calorie malnutrition. He had a prolonged ileus. He was subsequently transferred out of the ICU and was nursed on the regular floor with IV fluids and IV antibiotics and nasogastric suction.

The nasogastric tube was removed on 9/10/02 - the fifth postoperative day and he was started on clear liquids. He did have some urinary problems with voiding. He was started on Flomax prn and Foley catheterization. The medical care and the TPN was managed by Dr. Brus. The diet was slowly advanced to a regular diet and the TPN was tapered off. He was discharged back to the prison on 9/14. At the time of discharge, he was tolerating a regular diet, receiving pain relief with oral agents and the patient appeared to be slowly healing.

He was discharged with instructions to continue Cipro and Flagyl for four more days after discharge. Wound care instructions were given. He will be returned to the office for a follow up examination in two week's time.

DD: 10/09/2002   TD: 10/10/2002
Job: 58671   TM/TL468

CC: THOMAS MAMMEN, M.D. (faxed)

Thomas K. Mammen, M.D.

| Catholic Health East | Pt. name: DAVIS,WILLIAM F III |
|---|---|
| | Medical Record #: W0909564 |
| ST. FRANCIS HEALTHCARE SERVICES | Admission Date: 09/05/02 Acct#: W004170064 |
| | Consultant: Mammen,Thomas K. M.D |
| DISCHARGE SUMMARY | D/C Date: 09/14/02     Rm: W734.2 |
| (1010-0060) | Pt. Status: DIS IN   Pt.Loc.: W7N |

000083

St. Francis Hospital
Wilmington, DE. 19805

SURGICAL PATHOLOGY REPORT

=================================================================
PATIENT: DAVIS,WILLIAM F          DATE: 09/08/2002    PATH #: 02S-4024
=================================================================
BIRTHDATE: 11/07/1960      AGE/SEX: 41Y M      LOCATION: 3ICU 10
ATTENDING PHYS.:MAMMEN, THOMAS             ACCT. NO.: W004170064
ORDERING PHYS.: MAMMEN, THOMAS             MED REC #:W0909564
COPIES TO: CHART COPY
CLINICAL DATA: "ONE WEEK HISTORY OF PROGRESSIVELY WORSENING ABDOMINAL PAIN.
DOMINATED SMALL BOWEL OBSTRUCTION ONE MONTH AGO. AT SURGERY PERFORATED
SMALL BOWEL WITH EXTENSIVE PERITONITIS".
SURGICAL PROCEDURE: SEGMENTAL RESECTION
SPECIMEN: SMALL BOWEL
=================================================================

DIAGNOSIS:   SMALL BOWEL, SEGMENTAL RESECTION:
             - SMALL BOWEL SEGMENT WITH CHANGES CONSISTENT WITH ISCHEMIA.
             - SEROSAL SURFACE WITH SEVERE ACUTE SEROSITIS/PERITONITIS.
             - ABSCESS WITHIN FATTY TISSUE.


Service Codes: 8807

Gross Description: Received in formalin and designated "small bowel" are two
separate fragments of tissue: a segment of small bowel (8 cm. length x 4 cm.
diameter) and a separate fragment of fibrofatty tissue (10 x 6 x 2 cm.).
The surface of the small bowel exhibits extensive purulent exudate over
approximately 50% of the surface. The remaining surfaces are purple and
beefy red. The small bowel wall measures 0.8 cm. in maximal thickness. The
mucosa exhibits a crisscross shaped pattern of erythema and apparent
ulceration. No polypoid lesions are noted. The fragment of fibroadipose
tissue exhibits a focal peritonealized surface with erythema.
Representative sections are submitted. SNK/amb
KEY:
A-E: cross sections through small bowel
  F: cross sections through fatty tissue


ELECTRONIC SIGNATURE: SOPHIA N. KOTLIAR, M.D.
Date Finalled:  09/12/2002




            CHART COPY


                                  PRINTED: 09/13/2002    TIME:0744
                                  PAGE: 1

U00091

Attach a copy to bill and mail to:
**First Correctional Medical**
**Attn. Heather Norris**
P.O. Box 69370
Tucson, AZ 85737-0015



**F** **FIRST**
**C** **CORRECTIONAL**
**M** **MEDICAL**

## CONSULTATION REQUEST

Facility: _Garden Hine_

_WILLIAM DAVIS_
**Name of Inmate**

Inmate ID #: _O 0162762_    Date of Birth: _11/07/60_

Date of Request: _9/5/02_

_G. ROACH. M.D._
**Provider's Name (Please Print)**

### REASON FOR REFERRAL

Pertinent history & physical finding(s) (please Print)

_4 y/o cell-mate of Hx ventral hernia_
_trapped extraperitoneally 5 mnth - 7 pain_
_tenderness_

**Urgency of consult (please circle one)**    (**emergency**
**(going out now)**)    **urgent**
**(1-2weeks)**    **routine**
**(3-12weeks)**    **standard**
**(13wk-6months)**

Consult or test(s) requested: _Reduction of Ventral Hernia_

Estimated cost of consult/test(s):_____

FCM Approved: _Heather Chase_    Date: _9/5/02_
                (SIGNATURE)

FCM Denied:_____    Date:_____
           (SIGNATURE)

Contract Approved:_____    Date:_____
                  (SIGNATURE)

Contract Denied:_____    Date:_____
                (SIGNATURE)

Consult Provider Name and Address:_____

000089

Scheduled date/time of appt:_____

Authorization #:_____    _Per referral about_
-1016                                        _Emergency consult_

IM: *William F. Davis III*

SBI# *262762* UNIT *T2*

DELAWARE CORRECTIONAL CENTER

1181 PADDOCK ROAD

SMYRNA, DELAWARE 19977

*Office of the Clerk*
*United States District Court*
*844 N. King Street, Lockbox 18*
*Wilm, Del 19801-3570*

