Exhibit A

17810
pldg

Exhibit A

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIAM DAVIS, III | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-CV-209 SLR |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST CORRECTIONAL MEDICAL, | ) | TRIAL BY JURY OF |
| INC., et al., | ) | TWELVE DEMANDED |
| | ) | |
| Defendants. | ) | |

## REQUEST FOR ADMISSION

In accordance with the provisions of Federal Rules of Civil Procedure 33 and 36, Defendant hereby requests that within thirty (30) days after service hereof, plaintiff admit, for the purposes of this action only, and under the penalty provisions of Federal Rule of Civil Procedure 37 (a), the truth of the following statements of fact.

1. Admit that medical care provider, Correctional Medical Services, Inc., and not First Correctional Medical, Inc. was the healthcare provider from January 2000 to June 30, 2002.

## RESPONSE:

17810
pldg
Case 1:04-cv-00209-SLR    Document 110-4    Filed 08/29/2008    Page 3 of 23
cument 97    Filed 06/16/2008    Page 1 of 13

TATES DISTRICT COURT
RICT OF DELAWARE

                )
                )    C.A. No. 04-CV-209 SLR
                )
                )
                )
CAL,            )    TRIAL BY JURY OF
                )    TWELVE DEMANDED
                )
                )

EST FOR ADMISSION

rovisions of Federal Rules of Civil Procedure 33

uests that within thirty (30) days after service

urposes of this action only, and under the penalty

Civil Procedure 37 (a), the truth of the following

cal care provider, Correctional Medical Services,

l Medical, Inc. was the healthcare provider from

2.    I had been diagnosed with a hernia by at least January 17, 2001.  I
was seen on January 23, 2001 but no masses or lumps in my abdomen could be
felt and it was determined that no treatment was required at that time.

**RESPONSE:**


3.    On October 16, 2001, I requested to be seen by a healthcare
provider due to continuing pain in my side, I renewed the request to be seen on
October 17, 2001 and I was seen October 29, 2001.  On October 17, 2001 I
requested to be seen to see if I have "a hernia or gas so that I can go back to
work."

**RESPONSE:**


4.    On October 29, 2001, I was given medication and told to return if
my symptoms persisted.

**RESPONSE:**

...osed with a hernia by at least January 17, 2001.  I

...ut no masses or lumps in my abdomen could be

...no treatment was required at that time.

...2001, I requested to be seen by a healthcare

...in in my side, I renewed the request to be seen on

...seen October 29, 2001.  On October 17, 2001 I

...I have "a hernia or gas so that I can go back to

...2001, I was given medication and told to return if

5.    On March 20, 2002, I requested to be seen to have my sugar levels checked and I was seen by a healthcare provider on March 25, 2002.

**RESPONSE:**

6.    On May 22, 2002 I was taken to the infirmary and examined by a nurse.  The nurse located two (2) "golf ball" size protrusions and I explained they had been giving me trouble for about a month-then "tonight they just popped with excruciating pain."  The nurse called a physician and ordered three (3) Tylenols and the plan at that time was to attempt to reduce the hernias in one (1) to two (2) hours.  Nurse Betty Bradley requested that I be seen by a physician in the morning.

**RESPONSE:**

7.    On May 23, 2002, I was examined by a healthcare professional who palpated a hernia on my right side and a hernia on my left side, that was "easily reducible, and non-tender."  After given treatment, my symptoms decreased and I was told to return to the clinic as needed.

**RESPONSE:**

, I requested to be seen to have my sugar levels

lthcare provider on March 25, 2002.

I was taken to the infirmary and examined by a

) "golf ball" size protrusions and I explained they

r about a month-then "tonight they just popped

nurse called a physician and ordered three (3)

ne was to attempt to reduce the hernias in one (1)

Bradley requested that I be seen by a physician in

I was examined by a healthcare professional who

side and a hernia on my left side, that was "easily

fter given treatment, my symptoms decreased and

c as needed.

8.    On June 2, 2002, I requested to be seen because "I [had] a hernia [and was] having lots of pain." The request to be seen was received on June 3, 2002 and I was seen on June 3, 2002 at Westside Sick Call.

**RESPONSE:**

9.    On June 6, 2002, I was evaluated by Dr. Keith Ivens at which point I explained to Dr. Ivens that I believe I have had a hernia for about a year. I explained that I have used an abdominal binder and for the most part did well with the binder. I explained that three (3) weeks ago, the hernia bulged out while I was at work and stayed out about 12 hours until I reduced it myself. Dr. Ivens examined me and found that the two (2) hernias were "incarcerated but not appearing to be strangulated." I received a Nubain injection for pain and while the left hernia was reducible, the right hernia was not reducible. "Dr. Ivens admitted me to the infirmary, requested an x-ray of my abdomen, and recommended a referral to Dr. Mammen for repairs."

**RESPONSE:**

requested to be seen because "I [had] a hernia
The request to be seen was received on June 3,
002 at Westside Sick Call.

was evaluated by Dr. Keith Ivens at which point I
believe I have had a hernia for about a year.  I
abdominal binder and for the most part did well
that three (3) weeks ago, the hernia bulged out
d out about 12 hours until I reduced it myself.  Dr.
d that the two (2) hernias were "incarcerated but
ted."  I received a Nubain injection for pain and
ucible, the right hernia was not reducible.  "Dr.
irmary, requested an x-ray of my abdomen, and
Mammen for repairs."

10.    In addition to being seen by Dr. Ivens on June 6, 2002, I was seen by Nurse Betty Bradley who gave me the 10 mgs of nubain, who told me I should refrain from eating solids and start a liquid diet to attempt to reduce the hernias. About 45 minutes after my nubain injection, Dr. Ivens examined me and found that the left hernia was reducible but the right was not reducible.  I explained to Dr. Ivens that I believe I have had a hernia for about a year.  I explained that I have used an abdominal binder and for the most part did well with the binder.  I explained that three (3) weeks ago, the hernia bulged out while I was at work and stayed out about 12 hours until I reduced it myself.  Dr. Ivens observed that the two (2) hernias were "incarcerated but not appearing to be strangulated." After the injection, I had almost no pain during the reduction attempts.  Dr. Ivens ordered that I continue to be monitored.  Between June 6, 2002 and June 20, 2006, I was monitored daily by healthcare professionals, including Nurse Bradley.  I was prescribed pain medication to reduce the pain, colace for constipation, a liquid diet, suppositories, and dulcolax.

**RESPONSE:**

g seen by Dr. Ivens on June 6, 2002, I was seen by

ne the 10 mgs of nubain, who told me I should

art a liquid diet to attempt to reduce the hernias.

ain injection, Dr. Ivens examined me and found

e but the right was not reducible. I explained to

ad a hernia for about a year. I explained that I

and for the most part did well with the binder. I

ago, the hernia bulged out while I was at work

ntil I reduced it myself. Dr. Ivens observed that

rcerated but not appearing to be strangulated."

no pain during the reduction attempts. Dr. Ivens

onitored. Between June 6, 2002 and June 20, 2006,

thcare professionals, including Nurse Bradley. I

n to reduce the pain, colace for constipation, a

ulcolax.

11.    On June 16, 2002, Nurse Bradley gave me medication and observed me for my nutritional intake, and referred me to a physician assistant who ordered one (1) dose of Tylenol that provided some relief. Nurse Bradley explained to me that Dr. Ivens was unavailable but that Dr. Baalcos would arrive in the morning to examine me.

**RESPONSE:**

12.    Nurse Bradley also examined me on June 18, 2002, June 19, 2002 and June 20, 2002.

**RESPONSE:**

13.    On June 20, 2002, I was observed resting in bed and I did not verbalize any complaints. On that same day, a preliminary x-ray report found I had gas in transverse colon, but no bowel obstruction noted and I was medically cleared to return to general population.

**RESPONSE:**

Nurse Bradley gave me medication and observed

and referred me to a physician assistant who

nol that provided some relief.    Nurse Bradley

was unavailable but that Dr. Baalcos would arrive

so examined me on June 18, 2002, June 19, 2002

2, I was observed resting in bed and I did not

that same day, a preliminary x-ray report found I

ut no bowel obstruction noted and I was medically

opulation.

14.    At no time was Nurse Bradley deliberately indifferent to a serious medical need and at no time did Nurse Bradley refuse to treat me.

**RESPONSE:**

15.    I have no evidence that Nurse Bradley was deliberately indifferent to my serious medical need.

**RESPONSE:**

16.    I had x-rays on June 7, 2002, June 18, 2002, July 9, 2002, August 13, 2002 and a CT scan of my abdomen done on August 6, 2002 at St. Francis Hospital.

**RESPONSE:**

17.    On June 26, 2002, I complained again about having abdominal pain. I was seen on July 3, 2002 and an x-ray was ordered of my abdomen.  The x-ray was performed on July 9, 2002 and revealed no evidence of bowel obstruction.

**RESPONSE:**

urse Bradley deliberately indifferent to a serious

Nurse Bradley refuse to treat me.

that Nurse Bradley was deliberately indifferent

ne 7, 2002, June 18, 2002, July 9, 2002, August 13,

bdomen done on August 6, 2002 at St. Francis

I complained again about having abdominal pain.

an x-ray was ordered of my abdomen. The x-ray

and revealed no evidence of bowel obstruction.

18.    July 8, 2002, laboratory tests were taken to check my CMP, CBC,

amylase and lipase levels.

**RESPONSE:**

19.    On July 12, 2002, I was examined by a health care professional.

**RESPONSE:**

20.    On July 14, 2002 I requested to be seen, and I renewed my request

to be seen on July 18, 2002.  I was seen on July 19, 2002 by Dr. Robinson and an

abdominal sonogram was ordered to rule out pancreatitis and a lab report was

requested for CBC, chemscan, lipase, and amylase.

<u>**RESPONSE:**</u>

ratory tests were taken to check my CMP, CBC,

, I was examined by a health care professional.

2 I requested to be seen, and I renewed my request

I was seen on July 19, 2002 by Dr. Robinson and an

rdered to rule out pancreatitis and a lab report was

, lipase, and amylase.

21.    On July 22, 2002, I was medically excused from work for 15 days and I was approved for a CT Scan of my abdomen to take place at St. Francis Hospital on August 6, 2002.

**RESPONSE:**

22.    As seen by a health care provider either for observation or treatment that included testing, examinations, medications, and education in 2002 on August 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, 23, 23, 26.

**RESPONSE:**

23.    On September 5, 2002, I was sent to be examined by Dr. Thomas Mammen, MD, who examined me and opined that I was in need of hernia surgery.

**RESPONSE:**

24.    I received the hernia surgery and returned to the prison on September 14, 2002 where I was admitted to the infirmary for post operative care.

**RESPONSE:**

I was medically excused from work for 15 days
Scan of my abdomen to take place at St. Francis

th care provider either for observation or
, examinations, medications, and education in
, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, 23, 23,

, 2002, I was sent to be examined by Dr. Thomas
ed me and opined that I was in need of hernia

hernia surgery and returned to the prison on
was admitted to the infirmary for post operative

25.    While in the infirmary, I was examined and/or treated in 2002 every day from September 14 to October 1, 2002.  On September 27, 2002, I requested to be released to the general population, but I was not released until a follow up visit with Dr. Mammen on September 30, 2002.

**RESPONSE:**

26.    As of September 30, 2002, I had no complaints, and I had returned from a follow up with Dr. Mammen on the morning of September 30, 2002.  At that time I refused colace and I was in no distress.  I was released back to population as of October 1, 2002.

<u>**RESPONSE:**</u>

27.    At no time did Dr. Robinson refuse to treat me.

**RESPONSE:**

28.    I have no evidence that Dr. Robinson was deliberately indifferent to a serious medical need.

**RESPONSE:**

mary, I was examined and/or treated in 2002

to October 1, 2002.  On September 27, 2002, I

general population, but I was not released until a

men on September 30, 2002.

30, 2002, I had no complaints, and I had returned

ammen on the morning of September 30, 2002.  At

nd I was in no distress.  I was released back to

02.

Dr. Robinson refuse to treat me.

nce that Dr. Robinson was deliberately indifferent to

---

29.    I have no evidence that the first two months that First Correctional Medical, Inc., was the health car provider (July 2002 to September 2002) that First Correctional Medical, Inc, had any policy or custom of deliberate indifference to a serious medical need.

RESPONSE:

RELATED INTERROGATORIES

1.    As to the accompanying request for admissions,

(a)    if PLAINTIFF denies any portion of the aforesaid request for admissions, defendant requests that said plaintiff answer, under oath, in accordance with Federal Rule of Civil Procedure 33, the following interrogatories:

(i)    State all essential facts upon which you rely in denying each portion of this request for admission.

(ii)    State the names and addresses of each person who has knowledge of the facts relied upon in answer to the preceding interrogatory.

(iii)    List each written document, if any, relied upon in support of these facts set forth in reply to defendant's Interrogatory Nos. (i) and (ii).

that the first two months that First Correctional

provider (July 2002 to September 2002) that First

ny policy or custom of deliberate indifference to

ED INTERROGATORIES

ng request for admissions,

FF denies any portion of the aforesaid request for

defendant requests that said plaintiff answer, under

ordance with Federal Rule of Civil Procedure 33, the

terrogatories:

all essential facts upon which you rely in denying

portion of this request for admission.

e the names and addresses of each person who has

wledge of the facts relied upon in answer to the

eding interrogatory.

each written document, if any, relied upon in support

ese facts set forth in reply to defendant's Interrogatory

. (i) and (ii).

(iv)   State the name and address of each person who has in his or
her possession a copy of each of the documents referred to
in answer to defendant's Interrogatory No (iii).

(b)   If any plaintiff asserts in response to any of the request for
admissions that he cannot truthfully admit or deny any portion of
the request for admissions, defendant requests that the plaintiff
answer, under oath, in accordance with Federal Rule of Civil
Procedure 33, the following interrogatories:

(i)   State the "reasonable inquiry" made by the plaintiff to each
specific portion of the request for admissions; and

(ii)   State the information known or readily attainable by the
plaintiff explaining how that information is insufficient to
enable such plaintiff to admit or deny any portion of the
request for admissions.

ANSWER:

Heckler & Frabizzio, P.A.

/s/Patrick G. Rock
Patrick G. Rock, *DE Bar #4632*
800 Delaware Avenue, Suite 200
PO BOX 128
Wilmington, DE 19899
Attorney for Defendant First
Correctional Medical, Inc.

Dated: June 16, 2008
17810 / 396925

e name and address of each person who has in his or

ssession a copy of each of the documents referred to

er to defendant's Interrogatory No (iii).

f asserts in response to any of the request for

t he cannot truthfully admit or deny any portion of

r admissions, defendant requests that the plaintiff

oath, in accordance with Federal Rule of Civil

he following interrogatories:

e "reasonable inquiry" made by the plaintiff to each

e portion of the request for admissions; and

he information known or readily attainable by the

f explaining how that information is insufficient to

such plaintiff to admit or deny any portion of the

t for admissions.

Heckler & Frabizzio, P.A.

/s/Patrick G. Rock
Patrick G. Rock, *DE Bar* #4632
800 Delaware Avenue, Suite 200
PO BOX 128
Wilmington, DE 19899
Attorney for Defendant First
Correctional Medical, Inc.

---

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

WILLIAM DAVIS, III            )
                             )
            Plaintiff,        )        C.A. No. 04-CV-209 SLR
                             )
        v.                    )
                             )
FIRST CORRECTIONAL MEDICAL,   )        TRIAL BY JURY OF
INC., et al.,                 )        TWELVE DEMANDED
                             )
            Defendants.       )

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on June 16, 2008, I have caused a copy of the

foregoing Requests for Admission to Plaintiff to be served via first Class US Mail,

postage prepaid upon the following:

William F. Davis, III
SBI#162762
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Heckler & Frabizzio, P.A.

/s/Patrick G. Rock
Patrick G. Rock, *DE Bar* #4632
800 Delaware Avenue, Suite 200
PO BOX 128
Wilmington, DE 19899
Attorney for Defendant First
Correctional Medical

Dated: June 16, 2008
17810 / 396925

Smyrna, DE 19977

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/16/2008] [FileNumber=583682-0]
[7c5774f974a2a3566d67ebb3a768722d9962fa64338a8eb0cadbd32b6c03e56c291e
1ca0a6587ada6f7f2850ed811e0e246e939368c65f9c2ee8817004368e0d]]

TATES DISTRICT COURT
RICT OF DELAWARE

    )
    )
    )    C.A. No. 04-CV-209 SLR
    )
    )
    )
AL,    )    TRIAL BY JURY OF
    )    TWELVE DEMANDED
    )
    )

FICATE OF SERVICE

t on June 16, 2008, I have caused a copy of the

to Plaintiff to be served via first Class US Mail,

g:

Davis, III
2
Correctional Center
ock Road
E 19977

**Heckler & Frabizzio, P.A.**

/s/Patrick G. Rock
Patrick G. Rock, *DE Bar #4632*
800 Delaware Avenue, Suite 200
PO BOX 128
Wilmington, DE 19899
Attorney for Defendant First
Correctional Medical

6/17/2008

th this transaction:

=6/16/2008] [FileNumber=583682-0]
fa64338a8eb0cadbd32b6c03e56c291e
c65f9c2ee8817004368e0d]]

---

## Daniel McKenty

| | |
|---|---|
| **From:** | ded_nefreply@ded.uscourts.gov |
| **Sent:** | Monday, June 16, 2008 12:59 PM |
| **To:** | ded_ecf@ded.uscourts.gov |
| **Subject:** | Activity in Case 1:04-cv-00209-SLR Davis v. Corr. Med. Systems, et al Request for Admissions |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of Delaware

### Notice of Electronic Filing

The following transaction was entered by McKenty, Daniel on 6/16/2008 at 12:59 PM EDT and filed on 6/16/2008
**Case Name:** Davis v. Corr. Med. Systems, et al
**Case Number:** 1:04-cv-209
**Filer:** Patrick G. Rock
**Document Number:** 97

**Docket Text:**
**REQUEST for Admissions directed to Plaintiff by Patrick G. Rock.(McKenty, Daniel)**

**1:04-cv-209 Notice has been electronically mailed to:**

Kevin J. Connors    kjconnors@mdwcg.com, dtwalsh@mdwcg.com, lawolhar@mdwcg.com, vllucas@mdwcg.com

Daniel L. McKenty    dmckenty@hfddel.com, nvangorder@hfddel.com

Patrick G. Rock    prock@hfddel.com

**1:04-cv-209 Notice has been delivered by other means to:**

William F. Davis, III
SBI#162762
Delaware Correctional Center
1181 Paddock Road

6/17/2008

Exhibit B

, Corr. Med. Systems, et al Request for Admissions

y the CM/ECF system. Please DO NOT
unattended.
dicial Conference of the United States policy
(including pro se litigants) to receive one free
lly, if receipt is required by law or directed by the
. To avoid later charges, download a copy each
the referenced document is a transcript, the free

trict Court

f Delaware

, Daniel on 6/16/2008 at 12:59 PM EDT and filed on

. et al

tiff by Patrick G. Rock.(McKenty, Daniel)

d to:

lsh@mdwcg.com, lawolhar@mdwcg.com,

ngorder@hfddel.com

means to:

Not Reported in F.Supp.2d
**(Cite as: 2003 WL 292085 (D.Del.))**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.

**Michael T. HYSON, Plaintiff,**
v.
**CORRECTIONAL MEDICAL SERVICES, INC.,**
**Robert Hampton, Dr. Canciho and Dr.**
**Rizwan, Defendants.**

**No. Civ.A. 02-318.**

Feb. 6, 2003.

MEMORANDUM ORDER

ROBINSON, J.

I. INTRODUCTION

*1 On April 30, 2002, plaintiff filed this action under 42 U.S.C. § 1983 against Correctional Medical Services, Inc. ("CMS"), Robert Hampton, Dr. Canciho and Dr. Rizwan. (D.I.2) Plaintiff alleges that he was "denied proper and adequate medical treatment." (*Id.*)

Currently before the court is plaintiff's motion for injunctive relief, motion to compel and motion for summary judgment. (D.I.12, 29, 36) Also before the court is CMS's motion to dismiss for failure to exhaust administrative remedies and for failure to state a claim. (D.I.35) For the following reasons, the court shall deny each motion.

II. BACKGROUND

Plaintiff is currently incarcerated in the Delaware Correctional Center. Plaintiff alleges that sometime in February 2001 he slipped in the stairwell of his unit and injured his leg. (D.I.2) He was treated at that time and was informed that x-rays showed no visible injury. (*Id.*) Plaintiff alleges continuing pain and visible injury to his leg. (*Id.*) Plaintiff states he was examined several times and each time told that there was no visible injury on the x- rays.

III. DISCUSSION

A. Plaintiff's Motion for Injunctive Relief

Plaintiff requests injunctive relief for outside

treatment of his injury and to be reassigned to a bottom bunk. Plaintiff alleges that the Delaware Correctional Center has retaliated against him for this litigation by assigning him a top bunk. Due to his leg injury, plaintiff experiences pain and suffering from having to climb to the top bunk.

"[T]he grant of injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances." ' *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 800 (3d Cir.1989) (quoting *Frank's GMC Truck Center, Inc. v. General Motors Corp.,* 847 F.2d 100, 102 (3d Cir.1988)). In ruling on a a preliminary injunction, this court must consider: 1) the likelihood of success on the merits; 2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; 3) the extent to which the defendant will suffer irreparable harm if the requested relief is granted; and 4) the public interest. *See Clear Ocean Action v. York,* 57 F.3d 328, 331 (3d Cir.1995). An injunction should only issue if all four factors favor injunctive relief. *See S & R Corp. v. Jiffy Lube Intern., Inc.,* 968 F.2d 371, 374 (3d Cir.1992).

Plaintiff's claim is that he was denied treatment for a serious medical need.

Failure to give adequate medical treatment to prisoners is a constitutional violation when it results from "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble,* 429 U.S. 97, 105 (1976). This standard "requires (1) deliberate indifference on the part of prison officials and ... (2) the prisoner's medical needs to be serious." *West v. Keve,* 571 F.2d 158, 161 (3d Cir.1978).

* * *

[The Third Circuit] cases describe acts or omissions that fail to display a serious use of medical judgment. An incidence of negligence or malpractice does not violate the Eighth Amendment. *Estelle,* 429 U.S. at 106. Similarly, a difference of medical opinion between the prison's medical staff and the inmate as to the latter's course of treatment does not support a claim of cruel and unusual punishment. *See Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir.1989).

*2 *Miller v. Correctional Medical Services, Inc.,* 802 F.Supp. 1126, 1130-31 (D.Del.1992).

Under the requisites for injunctive relief, plaintiff has failed to demonstrate a likelihood to succeed on the merits. Plaintiff concedes in his complaint that he has

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Exhibit B

treatment of his injury and to be reassigned to a bottom bunk. Plaintiff alleges that the Delaware Correctional Center has retaliated against him for this litigation by assigning him a top bunk. Due to his leg injury, plaintiff experiences pain and suffering from having to climb to the top bunk.

**NC.,**

"[T]he grant of injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances." ' *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 800 (3d Cir.1989) (quoting *Frank's GMC Truck Center, Inc. v. General Motors Corp.,* 847 F.2d 100, 102 (3d Cir.1988)). In ruling on a a preliminary injunction, this court must consider: 1) the likelihood of success on the merits; 2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; 3) the extent to which the defendant will suffer irreparable harm if the requested relief is granted; and 4) the public interest. *See Clear Ocean Action v. York,* 57 F.3d 328, 331 (3d Cir.1995). An injunction should only issue if all four factors favor injunctive relief. *See S & R Corp. v. Jiffy Lube Intern., Inc.,* 968 F.2d 371, 374 (3d Cir.1992).

**nder**
**dical**
**Dr.**
**that**
**dical**

Plaintiff's claim is that he was denied treatment for a serious medical need.

**a for**
**n for**
**e to**
**e to**
**ined**
**s no**

Failure to give adequate medical treatment to prisoners is a constitutional violation when it results from "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble,* 429 U.S. 97, 105 (1976). This standard "requires (1) deliberate indifference on the part of prison officials and … (2) the prisoner's medical needs to be serious." *West v. Keve,* 571 F.2d 158, 161 (3d Cir.1978).

\* \* \*

**ware**
**ne in**
**unit**
**time**
**ssible**
**ssible**
**ained**
**s no**

[The Third Circuit] cases describe acts or omissions that fail to display a serious use of medical judgment. An incidence of negligence or malpractice does not violate the Eighth Amendment. *Estelle,* 429 U.S. at 106. Similarly, a difference of medical opinion between the prison's medical staff and the inmate as to the latter's course of treatment does not support a claim of cruel and unusual punishment. *See Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir.1989).

**\*2** *Miller v. Correctional Medical Services, Inc.,* 802 F.Supp. 1126, 1130-31 (D.Del.1992).

**tside**

Under the requisites for injunctive relief, plaintiff has failed to demonstrate a likelihood to succeed on the merits. Plaintiff concedes in his complaint that he has

No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 292085, \*2 (D.Del.))

had at least two sets of x-rays and been seen by at least two different doctors for his injury. Both doctors reported no injury based on the x-rays. Plaintiff, on the other hand, believes he is injured. On the face of the complaint, plaintiff has not shown a deliberate indifference on the part of defendants to serious medical needs. [FN1]

> FN1. Plaintiff claims that his bunk placement is in retaliation for this lawsuit. (D.I. 12 at 1) Courts have "recognized that retaliation claims by prisoners are especially 'prone to abuse.' Due to the ease with which retaliation claims may be fabricated, [they should be] viewed[ed] with skepticism and particular care." ' *Woods v. Goord,* No. 01 Civ. 3255, 2002 WL 31296325, at \*7 (S.D.N .Y. Oct. 10, 2002) (quoting *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)).

There being no evidence presented regarding either the extent to which defendants will suffer irreparable harm if injunctive relief is granted, or the public interest, the court cannot address those issues. However, it is not necessary to do so, as failure to meet any one of the factors is sufficient to deny relief. Thus, the court denies plaintiff's motion for injunctive relief.

**B. Plaintiff's Motion to Compel**

Plaintiff has filed a motion to compel CMS to provide the addresses of Robert Hampton, Dr. Canciho and Dr. Rizwan. Although not stated, the court assumes plaintiff desires the addresses to effectuate service of process. [FN2] Plaintiff's motion is granted for the purpose of obtaining addresses to serve process. To the extent CMS is able to provide an address to serve the named defendants, [FN3] it must do so.

> FN2. The court notes that return of service unexecuted has been filed for Drs. Canciho and Rizwan. (D.I.25, 26)

> FN3. The record does not indicate whether the named defendants are currently employed by CMS.

**C. Defendant CMS's Motion to Dismiss**

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc .,* 140

F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally. *See Haines v. Kerner,* 404 U.S. 519, 520-521 (1972); *Gibbs v. Roman,* 116 F.3d 83, 86 n. 6 (3d Cir.1997); *Urrutia v. Harrisburg County Police Dep't.,* 91 F.3d 451, 456 (3d Cir.1996). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc .,* 926 F.2d 1406, 1409 (3d Cir.1991).

**1. Exhaustion of Administrative Remedies**

Defendant Correction Medical Services argues that plaintiff did not exhaust his administrative remedies prior to filing this action pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). [FN4] Before filing a civil action on a denial of medical services claim, a plaintiff-inmate must exhaust his administrative remedies. *See Booth v. Churner,* 206 F.3d 289, 295 (3d Cir.2000), *cert. granted,* 531 U.S. 956 (2000), *aff'd,* 121 S.Ct. 1819 (2001).

> FN4. The PLRA provides, in pertinent part:
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
> 42 U.S.C. § 1997e(a).

**\*3** In the case at bar, the record indicates that plaintiff filed grievance forms on December 12, 2001 and February 24, 2002. (D.I.2) The record does not reflect a resolution of these grievances of the current status. Plaintiff also alleges to have exhausted his administrative remedies. (D.I. 36 at 1) Thus, the court finds that plaintiff has exhausted his administrative remedies. Defendant's motion to dismiss for failure to exhaust administrative remedies is denied.

**2. Liability of CMS**

As to the liability of CMS, it is an established

Not Reported in F.Supp.2d
(Cite as: 2003 WL 292085, *3 (D.Del.))

F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally. *See Haines v. Kerner,* 404 U.S. 519, 520-521 (1972); *Gibbs v. Roman,* 116 F.3d 83, 86 n. 6 (3d Cir.1997); *Urrutia v. Harrisburg County Police Dep't.,* 91 F.3d 451, 456 (3d Cir.1996). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991).

### 1. Exhaustion of Administrative Remedies

Defendant Correction Medical Services argues that plaintiff did not exhaust his administrative remedies prior to filing this action pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). [FN4] Before filing a civil action on a denial of medical services claim, a plaintiff-inmate must exhaust his administrative remedies. *See Booth v. Churner,* 206 F.3d 289, 295 (3d Cir.2000), *cert. granted,* 531 U.S. 956 (2000), *aff'd,* 121 S.Ct. 1819 (2001).

> FN4. The PLRA provides, in pertinent part:
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
> 42 U.S.C. § 1997e(a).

*3 In the case at bar, the record indicates that plaintiff filed grievance forms on December 12, 2001 and February 24, 2002. (D.I.2) The record does not reflect a resolution of these grievances of the current status. Plaintiff also alleges to have exhausted his administrative remedies. (D.I. 36 at 1) Thus, the court finds that plaintiff has exhausted his administrative remedies. Defendant's motion to dismiss for failure to exhaust administrative remedies is denied.

### 2. Liability of CMS

As to the liability of CMS, it is an established principle that, as a basis for liability under 42 U.S.C. § 1983, the doctrine of respondeat superior is not acceptable. *See Monell v. Dep't. of Social Servs.,* 436 U.S. 658 (1978); *see also Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988); *Swan v. Daniels,* 923 F.Supp. 626, 633 (D.Del.1995) (applying principle to liability of private corporations that provide medical services for State). Personal involvement by a defendant is essential in a civil rights action. *See Rode,* 845 F.2d at 1207. "Allegations of personal direction or of actual knowledge and acquiescence" are adequate to demonstrate personal involvement. *Id.* Such allegations are required to be "made with appropriate particularity." *Id.* Plaintiff's complaint states "the defendants knew of and were aware of his foot problem, yet ignored administering the adequate and proper treatment[.]" The court finds that, on a motion to dismiss, the complaint is sufficient to allege actual knowledge with the appropriate particularity. Thus, defendant's motion to dismiss is denied.

### D. Plaintiff's Motion for Summary Judgment

Plaintiff's motion, although styled as a motion for summary judgment, is an answer to defendant's motion to dismiss. The court has denied defendant's motion to dismiss. As such, plaintiff's motion for summary judgment is denied as moot.

### V. CONCLUSION

Therefore, at Wilmington, this 6th day of February, 2003;

IT IS ORDERED that:

1. Plaintiff's motion for injunctive relief (D.I.12) is denied.

2. Plaintiff's motion to compel (D.I.29) is granted. On or before March 5, 2003, defendant Correction Medical Services shall provide plaintiff with the service address for defendants Hampton, Canciho and Rizwan or aver that it does not have such information.

3. Defendant Correctional Medical Service's motion to dismiss (D.I.35) is denied.

4. Plaintiff's motion for summary judgment (D.I.36) is denied as moot.

2003 WL 292085 (D.Del.)

END OF DOCUMENT

03 No Claim to Orig. U.S. Govt. Works

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

U.S.C.
is not
s., 436
te, 845
ls, 923
ciple to
medical
by a
n. *See*
ersonal
cence"
ent. *Id.*
e with
mplaint
of his
dequate
, on a
allege
ularity.

ion for
ndant's
ndant's
on for

summary judgment is denied as moot.

## V. CONCLUSION

Therefore, at Wilmington, this 6th day of February, 2003;

IT IS ORDERED that:

1. Plaintiff's motion for injunctive relief (D.I.12) is denied.

2. Plaintiff's motion to compel (D.I.29) is granted. On or before March 5, 2003, defendant Correction Medical Services shall provide plaintiff with the service address for defendants Hampton, Canciho and Rizwan or aver that it does not have such information.

3. Defendant Correctional Medical Service's motion to dismiss (D.I.35) is denied.

4. Plaintiff's motion for summary judgment (D.I.36) is denied as moot.

2003 WL 292085 (D.Del.)

END OF DOCUMENT

03 No Claim to Orig. U.S. Govt. Works

**EXHIBIT C**

Westlaw.

Not Reported in F.Supp.2d

2003 WL 21994752 (D.Del.)

**(Cite as: 2003 WL 21994752 (D.Del.))**

Page !

---

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Frank WHALEN, Jr., Plaintiff,
v.
CORRECTION MEDICAL SERVICE, et al.,
Defendants.
No. 02-246-JJF.

Aug. 18, 2003.

Frank Whalen, Jr., pro se.

Kevin J. Connors, of Marshall, Dennehey, Warner, Coleman and Goggin, Wilmington, Delaware. for Defendants Correctional Medical Service and Melody Thorpe, N.P.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Pending before the Court is Defendant Correctional Medical Services' ("CMS") Motion to Dismiss Plaintiff's Complaint (D.I.23). For the reasons discussed below, the Court will grant the Motion.

Plaintiff filed a *pro se* Complaint (D.I.2) alleging that Defendants CMS, Dr. Keith Iven, and Nurse Melody Thorpe violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide adequate medical treatment. [FN1] Specifically, Plaintiff contends that Defendants refused to perform back surgery on Plaintiff, caused Plaintiff to suffer a narcotic overdose, and discontinued the administration of necessary pain medication.

> FN1. Plaintiff's Complaint originally named Kathy English and Governor Ruth Minner as Defendants, but the Court

granted their Motion to Dismiss in a prior Order (D.I.32).

Subsequently, CMS filed a Motion (D.I.23) seeking to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [FN2] CMS contends that Plaintiff's Complaint fails to state a claim upon which relief can be granted because CMS cannot be held responsible for the acts of its employees, Dr. Ivens and Nurse Thorpe, under a theory of respondeat superior in a Section 1983 action and because Plaintiff's injury was not caused by a policy or custom of CMS's that demonstrates deliberate indifference to Plaintiff's serious medical needs.

> FN2. CMS also moved for dismissal under Federal Rule of Civil Procedure 12(b)(1) contending that Plaintiff failed to exhaust his administrative remedies; however, CMS withdrew this ground for dismissal in a subsequent submission (D.I.28).

In response, Plaintiff contends that dismissal is inappropriate because CMS acted with deliberate indifference by failing to remedy a continuing or egregious wrong after learning of a violation. Specifically, Plaintiff contends that CMS knew of Plaintiff's serious back condition and his need for surgery and opted to medicate him rather than provide the surgery.

When a court analyzes a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations of the complaint must be accepted as true. *Langford v. City of Atlantic City,* 235 F.3d 845, 847 (3d Cir.2000). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* In sum, the only way a court can grant a Rule 12(b)(6) motion to dismiss is "if it appears that the [nonmoving party] could prove no set of facts" consistent with the allegations that would entitle it to relief. *Id.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 21994752 (D.Del.)

(Cite as: 2003 WL 21994752 (D.Del.))

Page 1

Page 2

granted their Motion to Dismiss in a prior Order (D.I.32).

Subsequently, CMS filed a Motion (D.I.23) seeking to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [FN2] CMS contends that Plaintiff's Complaint fails to state a claim upon which relief can be granted because CMS cannot be held responsible for the acts of its employees, Dr. Ivens and Nurse Thorpe, under a theory of respondeat superior in a Section 1983 action and because Plaintiff's injury was not caused by a policy or custom of CMS's that demonstrates deliberate indifference to Plaintiff's serious medical needs.

> FN2. CMS also moved for dismissal under Federal Rule of Civil Procedure 12(b)(1) contending that Plaintiff failed to exhaust his administrative remedies; however, CMS withdrew this ground for dismissal in a subsequent submission (D.I.28).

In response, Plaintiff contends that dismissal is inappropriate because CMS acted with deliberate indifference to remedy a continuing or egregious wrong after learning of a violation. Specifically, Plaintiff contends that CMS knew of Plaintiff's serious back condition and his need for surgery and opted to medicate him rather than provide the surgery.

When a court analyzes a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations of the complaint must be accepted as true. *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir.2000). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* In sum, the only way a court can grant a Rule 12(b)(6) motion to dismiss is "if it appears that the [nonmoving party] could prove no set of facts" consistent with the allegations that would entitle it to relief. *Id.*

CMS cannot be held liable under a theory of respondeat superior but can be held liable for a policy or custom that demonstrates deliberate indifference. *Miller v. Correctional Medical Systems, Inc.,* 802 F.Supp. 1126, 1131-32 (D.Del.1992) (citing *Monell v. Department of Social Services of New York,* 436 U.S. 658 (1978)); see also *Gregory v. PHS Inc.,* 2001 WL 1182779, at *4 (D. Del. Sep 21, 2001); *Swan v. Daniels,* 923 F.Supp. 626, 633 (D.Del.1995). In order to hold CMS liable, therefore, Plaintiff must show that CMS has an established "policy" or "custom" that resulted in a deliberate indifference to plaintiff's serious medical needs.

"Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict." *Miller,* 802 F.Supp. at 1132 (citations omitted). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.*

*2 In the instant case, the Court concludes that Plaintiff has not alleged, nor could he prove any set of facts that would demonstrate, the existence of any CMS policy or custom that led the medical staff to deprive him of necessary medical care. To state a claim, Plaintiff would have to demonstrate that CMS has a policy or custom of not providing necessary medical care to inmates. Thus, even if the surgery was medically necessary and the treating physician failed to provide it, CMS would not be liable unless it had policy or custom that encouraged or otherwise caused its physicians to not provide such necessary services. Here, Plaintiff admits that he received treatment for his back pain, although not the treatment he deems most appropriate. In the Court's view, the decision to not operate is not a policy or custom, but merely a disagreement over the course of medical treatment which does not rise to a constitutional issue.

> [W]hen a medical professional simply chooses between two equally appropriate forms of treatment, there is no constitutional violation even though the prisoner may not agree with or be

displeased by the doctor's course of action. Likewise, a disagreement between two physicians over the proper course of treatment does not give rise to a constitutional violation since '[t]here may ... be several acceptable ways to treat an illness.'

*Key v. Brewington-Carr,* 2000 WL 1346688, at *11 (D.Del. Sept. 6, 2000) (quoting *White v. Napoleon,* 897 F.2d 103, 110 (3d Cir.1990)) (citations omitted). Accordingly, the Court will dismiss Plaintiff's Complaint against CMS.

*ORDER*

At Wilmington this 18th day of August 2003, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendant Correctional Medical Services' Motion to Dismiss Plaintiff's Complaint (D.I.23) is *GRANTED.*

2003 WL 21994752 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

o Claim to Orig. U.S. Govt. Works.