Westlaw.

Not Reported in F.Supp.2d                                                                                           Page 1
2003 WL 21994752 (D.Del.)
(Cite as: 2003 WL 21994752 (D.Del.))

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Frank WHALEN, Jr., Plaintiff,
v.
CORRECTION MEDICAL SERVICE, et al.,
Defendants.
No. 02-246-JJF.

Aug. 18, 2003.

Frank Whalen, Jr., pro se.

Kevin J. Connors, of Marshall, Dennehey, Warner, Coleman and Goggin, Wilmington, Delaware. for Defendants Correctional Medical Service and Melody Thorpe, N.P.

*MEMORANDUM OPINION*

FARNAN, J.

\*1 Pending before the Court is Defendant Correctional Medical Services' ("CMS") Motion to Dismiss Plaintiff's Complaint (D.I.23). For the reasons discussed below, the Court will grant the Motion.

Plaintiff filed a *pro se* Complaint (D.I.2) alleging that Defendants CMS, Dr. Keith Iven, and Nurse Melody Thorpe violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide adequate medical treatment. [FN1] Specifically, Plaintiff contends that Defendants refused to perform back surgery on Plaintiff, caused Plaintiff to suffer a narcotic overdose, and discontinued the administration of necessary pain medication.

> FN1. Plaintiff's Complaint originally named Kathy English and Governor Ruth Minner as Defendants, but the Court granted their Motion to Dismiss in a prior Order (D.I.32).

Subsequently, CMS filed a Motion (D.I.23) seeking to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [FN2] CMS contends that Plaintiff's Complaint fails to state a claim upon which relief can be granted because CMS cannot be held responsible for the acts of its employees, Dr. Ivens and Nurse Thorpe, under a theory of respondeat superior in a Section 1983 action and because Plaintiff's injury was not caused by a policy or custom of CMS's that demonstrates deliberate indifference to Plaintiff's serious medical needs.

> FN2. CMS also moved for dismissal under Federal Rule of Civil Procedure 12(b)(1) contending that Plaintiff failed to exhaust his administrative remedies; however, CMS withdrew this ground for dismissal in a subsequent submission (D.I.28).

In response, Plaintiff contends that dismissal is inappropriate because CMS acted with deliberate indifference by failing to remedy a continuing or egregious wrong after learning of a violation. Specifically, Plaintiff contends that CMS knew of Plaintiff's serious back condition and his need for surgery and opted to medicate him rather than provide the surgery.

When a court analyzes a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations of the complaint must be accepted as true. *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir.2000). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* In sum, the only way a court can grant a Rule 12(b)(6) motion to dismiss is "if it appears that the [nonmoving party] could prove no set of facts" consistent with the allegations that would entitle it to relief. *Id.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 2

2003 WL 21994752 (D.Del.)

(Cite as: 2003 WL 21994752 (D.Del.))

CMS cannot be held liable under a theory of respondeat superior but can be held liable for a policy or custom that demonstrates deliberate indifference. *Miller v. Correctional Medical Systems, Inc.*, 802 F.Supp. 1126, 1131-32 (D.Del.1992) (citing *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978)); see also *Gregory v. PHS Inc.*, 2001 WL 1182779, at *4 (D. Del. Sep 21, 2001); *Swan v. Daniels*, 923 F.Supp. 626, 633 (D.Del.1995). In order to hold CMS liable, therefore, Plaintiff must show that CMS has an established "policy" or "custom" that resulted in a deliberate indifference to plaintiff's serious medical needs.

"Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict." *Miller*, 802 F.Supp. at 1132 (citations omitted). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.*

*2 In the instant case, the Court concludes that Plaintiff has not alleged, nor could he prove any set of facts that would demonstrate, the existence of any CMS policy or custom that led the medical staff to deprive him of necessary medical care. To state a claim, Plaintiff would have to demonstrate that CMS has a policy or custom of not providing necessary medical care to inmates. Thus, even if the surgery was medically necessary and the treating physician failed to provide it, CMS would not be liable unless it had policy or custom that encouraged or otherwise caused its physicians to not provide such necessary services. Here, Plaintiff admits that he received treatment for his back pain, although not the treatment he deems most appropriate. In the Court's view, the decision to not operate is not a policy or custom, but merely a disagreement over the course of medical treatment which does not rise to a constitutional issue.

> [W]hen a medical professional simply chooses between two equally appropriate forms of treatment, there is no constitutional violation even though the prisoner may not agree with or be displeased by the doctor's course of action. Likewise, a disagreement between two physicians over the proper course of treatment does not give rise to a constitutional violation since '[t]here may ... be several acceptable ways to treat an illness.'

*Key v. Brewington-Carr*, 2000 WL 1346688, at *11 (D.Del. Sept. 6, 2000) (quoting *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir.1990)) (citations omitted). Accordingly, the Court will dismiss Plaintiff's Complaint against CMS.

*ORDER*

At Wilmington this 18th day of August 2003, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendant Correctional Medical Services' Motion to Dismiss Plaintiff's Complaint (D.I.23) is *GRANTED*.

2003 WL 21994752 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIAM DAVIS, III | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-CV-209 SLR |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST CORRECTIONAL MEDICAL, | ) | TRIAL BY JURY OF |
| INC., et al., | ) | TWELVE DEMANDED |
| | ) | |
| Defendants. | ) | |

## REQUEST FOR ADMISSION

In accordance with the provisions of Federal Rules of Civil Procedure 33 and 36, Defendant hereby requests that within thirty (30) days after service hereof, plaintiff admit, for the purposes of this action only, and under the penalty provisions of Federal Rule of Civil Procedure 37 (a), the truth of the following statements of fact.

1. Admit that medical care provider, Correctional Medical Services, Inc., and not First Correctional Medical, Inc. was the healthcare provider from January 2000 to June 30, 2002.

**RESPONSE:**

2.  I had been diagnosed with a hernia by at least January 17, 2001. I was seen on January 23, 2001 but no masses or lumps in my abdomen could be felt and it was determined that no treatment was required at that time.

**RESPONSE:**

3.  On October 16, 2001, I requested to be seen by a healthcare provider due to continuing pain in my side, I renewed the request to be seen on October 17, 2001 and I was seen October 29, 2001. On October 17, 2001 I requested to be seen to see if I have "a hernia or gas so that I can go back to work."

**RESPONSE:**

4.  On October 29, 2001, I was given medication and told to return if my symptoms persisted.

**RESPONSE:**

5. On March 20, 2002, I requested to be seen to have my sugar levels checked and I was seen by a healthcare provider on March 25, 2002.

**RESPONSE:**

6. On May 22, 2002 I was taken to the infirmary and examined by a nurse. The nurse located two (2) "golf ball" size protrusions and I explained they had been giving me trouble for about a month-then "tonight they just popped with excruciating pain." The nurse called a physician and ordered three (3) Tylenols and the plan at that time was to attempt to reduce the hernias in one (1) to two (2) hours. Nurse Betty Bradley requested that I be seen by a physician in the morning.

**RESPONSE:**

7. On May 23, 2002, I was examined by a healthcare professional who palpated a hernia on my right side and a hernia on my left side, that was "easily reducible, and non-tender." After given treatment, my symptoms decreased and I was told to return to the clinic as needed.

**RESPONSE:**

8. On June 2, 2002, I requested to be seen because "I [had] a hernia [and was] having lots of pain." The request to be seen was received on June 3, 2002 and I was seen on June 3, 2002 at Westside Sick Call.

**RESPONSE:**

9. On June 6, 2002, I was evaluated by Dr. Keith Ivens at which point I explained to Dr. Ivens that I believe I have had a hernia for about a year. I explained that I have used an abdominal binder and for the most part did well with the binder. I explained that three (3) weeks ago, the hernia bulged out while I was at work and stayed out about 12 hours until I reduced it myself. Dr. Ivens examined me and found that the two (2) hernias were "incarcerated but not appearing to be strangulated." I received a Nubain injection for pain and while the left hernia was reducible, the right hernia was not reducible. "Dr. Ivens admitted me to the infirmary, requested an x-ray of my abdomen, and recommended a referral to Dr. Mammen for repairs."

**RESPONSE:**

10. In addition to being seen by Dr. Ivens on June 6, 2002, I was seen by Nurse Betty Bradley who gave me the 10 mgs of nubain, who told me I should refrain from eating solids and start a liquid diet to attempt to reduce the hernias. About 45 minutes after my nubain injection, Dr. Ivens examined me and found that the left hernia was reducible but the right was not reducible. I explained to Dr. Ivens that I believe I have had a hernia for about a year. I explained that I have used an abdominal binder and for the most part did well with the binder. I explained that three (3) weeks ago, the hernia bulged out while I was at work and stayed out about 12 hours until I reduced it myself. Dr. Ivens observed that the two (2) hernias were "incarcerated but not appearing to be strangulated." After the injection, I had almost no pain during the reduction attempts. Dr. Ivens ordered that I continue to be monitored. Between June 6, 2002 and June 20, 2006, I was monitored daily by healthcare professionals, including Nurse Bradley. I was prescribed pain medication to reduce the pain, colace for constipation, a liquid diet, suppositories, and dulcolax.

**RESPONSE:**

11. On June 16, 2002, Nurse Bradley gave me medication and observed me for my nutritional intake, and referred me to a physician assistant who ordered one (1) dose of Tylenol that provided some relief. Nurse Bradley explained to me that Dr. Ivens was unavailable but that Dr. Baalcos would arrive in the morning to examine me.

**RESPONSE:**


12. Nurse Bradley also examined me on June 18, 2002, June 19, 2002 and June 20, 2002.

**RESPONSE:**


13. On June 20, 2002, I was observed resting in bed and I did not verbalize any complaints. On that same day, a preliminary x-ray report found I had gas in transverse colon, but no bowel obstruction noted and I was medically cleared to return to general population.

**RESPONSE:**

14. At no time was Nurse Bradley deliberately indifferent to a serious medical need and at no time did Nurse Bradley refuse to treat me.

**RESPONSE:**

15. I have no evidence that Nurse Bradley was deliberately indifferent to my serious medical need.

**RESPONSE:**

16. I had x-rays on June 7, 2002, June 18, 2002, July 9, 2002, August 13, 2002 and a CT scan of my abdomen done on August 6, 2002 at St. Francis Hospital.

**RESPONSE:**

17. On June 26, 2002, I complained again about having abdominal pain. I was seen on July 3, 2002 and an x-ray was ordered of my abdomen. The x-ray was performed on July 9, 2002 and revealed no evidence of bowel obstruction.

**RESPONSE:**

18. July 8, 2002, laboratory tests were taken to check my CMP, CBC, amylase and lipase levels.

**RESPONSE:**

19. On July 12, 2002, I was examined by a health care professional.

**RESPONSE:**

20. On July 14, 2002 I requested to be seen, and I renewed my request to be seen on July 18, 2002. I was seen on July 19, 2002 by Dr. Robinson and an abdominal sonogram was ordered to rule out pancreatitis and a lab report was requested for CBC, chemscan, lipase, and amylase.

**RESPONSE:**

21. On July 22, 2002, I was medically excused from work for 15 days and I was approved for a CT Scan of my abdomen to take place at St. Francis Hospital on August 6, 2002.

**RESPONSE:**

22. As seen by a health care provider either for observation or treatment that included testing, examinations, medications, and education in 2002 on August 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, 23, 23, 26.

**RESPONSE:**

23. On September 5, 2002, I was sent to be examined by Dr. Thomas Mammen, MD, who examined me and opined that I was in need of hernia surgery.

**RESPONSE:**

24. I received the hernia surgery and returned to the prison on September 14, 2002 where I was admitted to the infirmary for post operative care.

**RESPONSE:**

25. While in the infirmary, I was examined and/or treated in 2002 every day from September 14 to October 1, 2002. On September 27, 2002, I requested to be released to the general population, but I was not released until a follow up visit with Dr. Mammen on September 30, 2002.

**RESPONSE:**

26. As of September 30, 2002, I had no complaints, and I had returned from a follow up with Dr. Mammen on the morning of September 30, 2002. At that time I refused colace and I was in no distress. I was released back to population as of October 1, 2002.

**RESPONSE:**

27. At no time did Dr. Robinson refuse to treat me.

**RESPONSE:**

28. I have no evidence that Dr. Robinson was deliberately indifferent to a serious medical need.

**RESPONSE:**

29.  I have no evidence that the first two months that First Correctional Medical, Inc., was the health car provider (July 2002 to September 2002) that First Correctional Medical, Inc, had any policy or custom of deliberate indifference to a serious medical need.

**RESPONSE:**

## RELATED INTERROGATORIES

1. As to the accompanying request for admissions,

    (a) if PLAINTIFF denies any portion of the aforesaid request for admissions, defendant requests that said plaintiff answer, under oath, in accordance with Federal Rule of Civil Procedure 33, the following interrogatories:

    (i) State all essential facts upon which you rely in denying each portion of this request for admission.

    (ii) State the names and addresses of each person who has knowledge of the facts relied upon in answer to the preceding interrogatory.

    (iii) List each written document, if any, relied upon in support of these facts set forth in reply to defendant's Interrogatory Nos. (i) and (ii).

(iv) State the name and address of each person who has in his or her possession a copy of each of the documents referred to in answer to defendant's Interrogatory No (iii).

(b) If any plaintiff asserts in response to any of the request for admissions that he cannot truthfully admit or deny any portion of the request for admissions, defendant requests that the plaintiff answer, under oath, in accordance with Federal Rule of Civil Procedure 33, the following interrogatories:

(i) State the "reasonable inquiry" made by the plaintiff to each specific portion of the request for admissions; and

(ii) State the information known or readily attainable by the plaintiff explaining how that information is insufficient to enable such plaintiff to admit or deny any portion of the request for admissions.

ANSWER:

Heckler & Frabizzio, P.A.

/s/ Patrick G. Rock
Patrick G. Rock, *DE Bar #4632*
800 Delaware Avenue, Suite 200
PO BOX 128
Wilmington, DE 19899
Attorney for Defendant First
Correctional Medical, Inc.

Dated: June 16, 2008
17810 / 396925

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIAM DAVIS, III | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-CV-209 SLR |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST CORRECTIONAL MEDICAL, INC., et al., | ) ) ) | TRIAL BY JURY OF TWELVE DEMANDED |
| | ) | |
| Defendants. | ) | |

### CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on June 16, 2008, I have caused a copy of the foregoing Requests for Admission to Plaintiff to be served via first Class US Mail, postage prepaid upon the following:

> William F. Davis, III
> SBI#162762
> Delaware Correctional Center
> 1181 Paddock Road
> Smyrna, DE 19977

> Heckler & Frabizzio, P.A.
>
> /s/Patrick G. Rock
> Patrick G. Rock, *DE Bar #4632*
> 800 Delaware Avenue, Suite 200
> PO BOX 128
> Wilmington, DE 19899
> Attorney for Defendant First
> Correctional Medical

Dated: June 16, 2008
17810 / 396925

**Daniel McKenty**

**From:** ded_nefreply@ded.uscourts.gov
**Sent:** Monday, June 16, 2008 12:59 PM
**To:** ded_ecf@ded.uscourts.gov
**Subject:** Activity in Case 1:04-cv-00209-SLR Davis v. Corr. Med. Systems, et al Request for Admissions

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

U.S. District Court

District of Delaware

**Notice of Electronic Filing**

The following transaction was entered by McKenty, Daniel on 6/16/2008 at 12:59 PM EDT and filed on 6/16/2008
**Case Name:**        Davis v. Corr. Med. Systems, et al
**Case Number:**      1:04-cv-209
**Filer:**            Patrick G. Rock
**Document Number:** 97

**Docket Text:**
**REQUEST for Admissions directed to Plaintiff by Patrick G. Rock.(McKenty, Daniel)**


1:04-cv-209 **Notice has been electronically mailed to:**

Kevin J. Connors    kjconnors@mdwcg.com, dtwalsh@mdwcg.com, lawolhar@mdwcg.com, vllucas@mdwcg.com

Daniel L. McKenty    dmckenty@hfddel.com, nvangorder@hfddel.com

Patrick G. Rock    prock@hfddel.com

1:04-cv-209 **Notice has been delivered by other means to:**

William F. Davis, III
SBI#162762
Delaware Correctional Center
1181 Paddock Road


6/17/2008

Smyrna, DE 19977

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/16/2008] [FileNumber=583682-0]
[7c5774f974a2a3566d67ebb3a768722d9962fa64338a8eb0cadbd32b6c03e56c291e
1ca0a6587ada6f7f2850ed811e0e246e939368c65f9c2ee8817004368e0d]]

6/17/2008