# EXHIBIT C

# EXHIBIT C

## E. Clothing

Prisoners are entitled to clothing that is "at least minimally adequate for the conditions under which they are confined."[154] They are entitled to clothing that is clean or to have an opportunity to clean it themselves,[155] and to enough clothing that they have something to wear while one change of clothing is being washed.[156] Clothing that fits badly or does not look good generally does not violate the Constitution.[157] Prison officials may limit the amount of clothing an inmate possesses.[158]

Prisoners are not entitled to their choice of clothing, and even pre-trial detainees may be required to wear uniforms.[159] However, persons on trial in criminal courts are entitled to wear civilian clothes and not jail uniforms.[160]

The denial of clothing to prisoners in segregation units or under atric isolation or restraint, even for short periods of time, may violate the Eighth Amendment or deny due process unless prison officials demonstrate a strong justification for such treatment.[161]

## F. Medical Care

Since prisoners cannot obtain their own medical services, the Constitution requires prison authorities to provide them with "reasonably adequate" medical care.[162] Courts have defined "adequate" medical services as "services at a level reasonably commensurate with modern medical science"

---

[154] Knop v. Johnson, 667 F.Supp. 467, 475-77 (W.D.Mich. 1987) (jackets found inadequate for Michigan winters; hats, gloves or mittens, and boots or heavy socks also required), aff'd in pertinent part, 977 F.2d 996, 1012 (6th Cir. 1992), cert. denied, 113 S.Ct. 1415 (1993); accord, Gordon v. Faber, 973 F.2d 686, 687-88 (8th Cir. 1992) (denial of hats and gloves in sub-freezing weather violated the Eighth Amendment); Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991) (allegation of deprivation of coats supported an Eighth Amendment claim); Balla v. Idaho State Bd. of Corrections, 595 F.Supp. 1558, 1575 (D.Idaho 1984) (inmates given lightweight uniforms must also get insulated underwear); see also Hernandez v. Denton, 861 F.2d 1421, 1423-24 (9th Cir. 1988) (month-long deprivation of shoes could violate the Eighth Amendment), vacated on other grounds, 110 S.Ct. 37 (1989). But see Pendergrass v. Hannigan, 788 F.Supp. 488, 489 (D.Kan. 1992) (claim of denial of winter clothing rejected on facts); Kendrick v. Bland, 659 F.Supp. 1188, 1196 (W.D.Ky. 1987) (raincoats and undershirts not constitutionally required), aff'd sub nom. Thompson v. Bland, 843 F.2d 1392 and Smith v. Bland, 856 F.2d 196 (6th Cir. 1988).

[155] Divers v. Dept. of Corrections, 921 F.2d 191, 194 (8th Cir. 1990) ("adequate laundry facilities" required); Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989); Reece v. Gragg, 650 F.Supp. 1297, 1305 (D.Kan. 1986); Martino v. Carey, 563 F.Supp. 984, 1000 (D.Or. 1983); Toussaint v. Rushen, 553 F.Supp. 1365, 1371, 1379, 1385 (N.D.Cal. 1983) (lack of regular laundry service unconstitutional), aff'd in part and vacated in part on other grounds, 722 F.2d 1490 (9th Cir. 1984); Dawson v. Kendrick, 527 F.Supp. 1252, 1288 (S.D.W.Va. 1981); Rutherford v. Pitchess, 457 F.Supp. 104, 116-17 (C.D.Cal. 1978), aff'd in part and rev'd in part on other grounds, 710 F.2d 572 (9th Cir. 1983), rev'd on other grounds, 468 U.S. 589 (1984); Hickson v. Kellison, 170 W.Va. 732, 296 S.E.2d 855, 858 (W.Va. 1982). But see State v. Rouse, 229 Kan. 600, 629 P.2d 167, 172 (Kan. 1981) (two-week deprivation of clean clothing was not unconstitutional); Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986); Shelby County Jail Inmates v. Westlake, 798 F.2d 1085, 1091 (7th Cir. 1986).

[156] Hazen v. Pasley, 768 F.2d 226, 228 n. 2 (8th Cir. 1985); Evans v. Headley, 566 F.Supp. 1133, 1138 (S.D.N.Y. 1983); see also Hickson v. Kellison, 296 S.E.2d at 858 (failure to provide clothing other than what the prisoner was wearing when arrested is unconstitutional).

[157] Knop v. Johnson, 667 F.Supp. at 475.

[158] Rust v. Grammer, 858 F.2d 411, 414 (8th Cir. 1988); Lyons v. Farrier, 730 F.2d 525, 527 (8th Cir. 1984).

[159] Wolfish v. Levi, 573 F.2d 118, 132-33 (2d Cir. 1978), rev'd on other grounds sub nom. Bell v. Wolfish, 441 U.S. 559 (1979); In re Alcala, 222 Cal.App.3d 345, 271 Cal.Rptr. 674, 691-95 (Cal.App. 1990) (prohibition of most civilian clothing did not violate federal or state law).

[160] Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691 (1976); Felts v. Estelle, 875 F.2d (9th Cir. 1989). But see Saenz v. Marshall, 791 F.Supp. 812, 814-15 (C.D.C. (appearance of a defense witness in prison garb did not violate the defendant aff'd, 990 F.2d 1260 (9th Cir. 1993); Wilson v. DeBruyn, 633 F.Supp. 1222 (1986) (federal court lacked jurisdiction to intervene in pending criminal question of clothing at trial).

[161] Johnson v. Williams, 788 F.2d 1319, 1323 (8th Cir. 1986); Wells v. Franzen, 1258, 1264 (7th Cir. 1985); Maxwell v. Mason, 668 F.2d 361, 363-65 (8th C McCray v. Burrell, 622 F.2d 705, 706-07 (4th Cir. 1980), cert. denied, 449 U.S. and 449 U.S. 1003 (1980); Inmates of Allegheny County Jail v. Wecht, 565 F.Supp. 1286 (W.D.Pa. 1983); see also Walker v. Johnson, 544 F.Supp. 345, 361 (E.D.M (prisoners in segregation could not be required to walk naked to the shower pertinent part sub nom. Walker v. Mintzes, 771 F.2d 920, 929 (6th Cir. 1985); an cited in § ] of this chapter, n. 713. But see Johnson v. Boreani, 946 F.2d 67, 70-71 1991) (officials were entitled to qualified immunity for repeated short depri clothing); Porth v. Farrier, 934 F.2d 154, 156-57 (8th Cir. 1991) (unjustifie deprivation of clothing would have permitted, but did not require, a jury verd plaintiff); Campbell v. Grammer, 889 F.2d 797, 802 (8th Cir. 1989) (in deprivation of clothing did not violate Eighth Amendment); Green v. Baron 305, 309-10 (8th Cir. 1989) (deprivation of clothing as part of a behavior mo program might have been justified by prisoner's mental condition); Rodgers v 879 F.2d 380, 385 (8th Cir. 1989) (unjustified deprivation of clothing unconstitutional where other conditions were adequate); Hawkins v. Hall, 644 917-18 (1st Cir. 1981) (deprivation of clothing for less than 24 hours pendin and mental examinations upheld where ventilation, lighting and heat were a McMahon v. Beard, 583 F.2d 172, 174-75 (5th Cir. 1978) (three-month nude con without mattress, sheet or blankets did not violate the Eighth Amendment prisoner continued to present a suicide risk); Friends v. Moore, 776 F.Su 1390-91 (E.D.Mo. 1991) (leaving the plaintiff stripped naked and wet in a se yard area was not unconstitutional because the defendants intended to res rather than punish).

In LeMaire v. Maass, 745 F.Supp. 623, 639 (D.Or. 1990), vacated and remanded 1444 (9th Cir. 1993), the lower court held unconstitutional the practice prisoners' clothing and returning it only after they "earned it back" thro behavior. This practice violated prison rules, and the appeals court held t officials should be enjoined only to follow their own rules.12 F.3d at 1455.

[162] Newman v. Alabama, 559 F.2d 283, 291 (5th Cir.), cert. denied, 438 U.S. 915 (19 Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Wolfish v. Levi, 573 F.2 (2d Cir. 1978), rev'd on other grounds sub nom. Bell v. Wolfish, 441 U.S. 520 (19 Langley v. Coughlin, 888 F.2d 252, 254 (2d Cir. 1989) (officials mus "reasonably necessary medical care . . . which would be available to[the pris incarcerated").

ence and of a quality acceptable within prudent professional standards,"[163] and as "a level of health services reasonably designed to meet routine and emergency medical, dental and psychological or psychiatric care."[164]

In practice, providing care to prisoners generally means paying for the care, since most prisoners have little money and no medical insurance and are ineligible for public assistance.[165] The fact that the care may be expensive does not excuse prison officials from providing it.[166] If a prisoner does have money or insurance, it is probably not unconstitutional to bill the prisoner for the costs of medical care.[167]

Some states have statutes to this effect, usually covering prisoners in local jails who require treatment at outside hospitals.[168] But prison officials may not withhold medical care until the prisoner pays or agrees to pay; they must first provide the care and leave arguments about money until later.[169]

Recently some states have begun requiring prisoners to pay small amounts of money for medical visits. One such requirement was found unconstitutional because it would have required days and even weeks at inmate pay rates to earn the money, and would have fallen particularly harshly on the chronically ill who require more medical care than other prisoners.

---

[163] Fernandez v. United States, 941 F.2d 1488, 1493 (11th Cir. 1991); United States v. DeCologero, 821 F.2d 39, 43 (1st Cir. 1987); Tillery v. Owens, 719 F.Supp. 1256, 1305 (W.D.Pa. 1989), aff'd, 907 F.2d 418 (3d Cir. 1990).

[164] Tillery v. Owens, 719 F.Supp. at 1301; accord, Ramos v. Lamm, 639 F.2d 559, 574 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981).

[165] Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 350 (3d Cir. 1987), cert. denied, 486 U.S. 1066 (1987), citing City of Revere v. Mass. General Hospital, 463 U.S. 239, 245-46, 103 S.Ct. 2979 (1983).

[166] Harris v. Thigpen, 941 F.2d 1495, 1509 (11th Cir. 1991); Langley v. Coughlin, 888 F.2d at 254; Ancata v. Prison Health Services, Inc., 769 F.2d 700, 705 (11th Cir. 1985); Yarbaugh v. Roach, 736 F.Supp. 318, 320 n. 7 (D.D.C. 1990).

[167] Smith v. Linn County, 342 N.W.2d 861, 863 (Iowa 1984); Metro. Dade County v. P.L. Dodge Foundations, 509 So.2d 1170, 1173 (Fla.App. 1987); see City of Revere v. Mass. General Hospital, 463 U.S. at 245 n. 7 (leaving question open); Matter of Commitment of F.H., 258 N.J. Super. 532, 610 A.2d 882, 884-85 (N.J.Super.A.D. 1992) (statute permitting state to recover costs of mental hospitalization from patient's assets did not apply to prisoners).

[168] Ancata v. Prison Health Services, Inc., 769 F.2d at 705 n. 7 (11th Cir. 1985); Smith v. Linn County, 342 N.W.2d at 863; Salem Hospital v. Marion County, 307 Or. 213, 766 P.2d 376, 378-81 (Or. 1988); Montana Deaconess Medical Center v. Johnson, 232 Mont. 474, 758 P.2d 756, 757-58 (Mont. 1988); see also Smith v. Dept. of Corrections, 105 Or.App. 61, 804 P.2d 482, 484 (Or.App. 1990) (upholding rules requiring inmates to pay for certain prosthetic devices; constitutional claims not raised).

[169] Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d at 351.

---

The statute was then amended to charge only for physician visits without a referral from a nurse or physician's assistant, and that version was upheld as constitutional.[170]

Prisoners who are denied adequate medical care may use 42 U.S.C. § 1983 to sue prison medical care providers, including personnel and corporations who work as private contractors.[171] They may also seek relief for medical malpractice under state law.[172]

### 1. The Deliberate Indifference Standard

The Supreme Court has stated that "deliberate indifference to the medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."[173] Many courts have also applied the deliberate indifference standard to pretrial detainees under the Due Process Clause.[174] State law—statutes, regulations, or case law—may provide different standards.[175]

---

[170] Collins v. Romer, 962 F.2d 1508, 1513-14 (10th Cir. 1992); see also Scott v. A. F.Supp. 1064, 1067 (D.Nev. 1991) (describing a similar statute but not ruling on validity), aff'd, 980 F.2d 738 (9th Cir. 1992).

[171] See cases cited in Ch. VIII, § B.1.c.

Some courts have held that you can sue a medical care corporation under § 1983 only for injuries that result from policies of the corporation. Howell v. Evans, 712, 723-25 (11th Cir.), vacated as settled, 931 F.2d 711 (11th Cir. 1991); McIlwain v. Kozakiewicz, 833 F.2d 468, 471-73 (3d Cir. 1987), cert. denied, 485 U.S. 99 (1988); also City of Revere v. Mass. General Hospital, 463 U.S. 239, 244, 103 S.Ct. (detainees' due process rights are "at least as great" as Eighth Amendment); Bryant v. Maffucci, 923 F.2d 979, 983 (2d Cir. 1991) (constitutional standard for detainees' medical care remains unsettled), cert. denied, 112 S.Ct. 152 (1991).

One court has held that detainees "are entitled to a greater degree of care than convicted inmates. They must be provided with 'reasonable medical the failure to supply it is reasonably related to a legitimate governmental Rhyne v. Henderson County, 973 F.2d 386, 391 (5th Cir. 1992) (citations omitted). However, the same court has stated that this "may indeed be a distinction without difference" from the deliberate indifference standard. Cupit v. Jones, 835 F.2d (5th Cir. 1987). Another court has held that denial of medical care to a person who has not been arraigned is governed by a Fourth Amendment "objective reasonableness" standard, under which the presence or absence of punitive intent is not determinative. Freece v. Young, 756 F.Supp. 699, 705-04 (W.D.N.Y. 1991).

[172] See § F.5 of this chapter on negligence and malpractice.

[173] Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).

[174] Salazar v. City of Chicago, 940 F.2d 233, 237-38 (7th Cir. 1991); Martin v. County Comm'rs of Pueblo County, 909 F.2d 402, 406 (10th Cir. 1990); Molton v. Cleveland, 839 F.2d 240, 242-43 (6th Cir. 1988), cert. denied, 489 U.S. 1068 (1989)

[175] See, e.g., Jorgenson v. Schiedler, 87 Or.App. 100, 741 P.2d 528, 529 (Or.App. 1987) (Oregon constitution requires "such medical care in the form of diagnosis and treatment as is reasonably available, under the circumstances of [the prisoner's] confinement and medical condition").

State law claims of malpractice or negligence may be litigated as tort claims

Under the deliberate indifference standard, courts will not take sides in disagreements with medical personnel's judgments or techniques.[176] In general, as long as there has been an exercise of professional judgment—even a mistaken or incompetent one—the courts will hold that the Constitution has not been satisfied.[177] Negligence or medical malpractice generally do not violate the Constitution, with one important exception.

Several courts have held that "repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff" may add up to deliberate indifference.[178]

Deliberate indifference can be shown in various ways.[179] Sometimes it is demonstrated by acts or statements by prison personnel directly showing an indifferent or hostile attitude toward prisoners' medical

---

---

needs.[180] But most often, courts focus on facts that show that judgment was either not exercised or was not followed exercised. In those fact situations, good intentions may not As one court stated:

> Deliberate indifference can be proved by showin prison official's mental state. But delibe indifference is also a standard for measuring adequacy of prison officials' responses to the kno medical needs of inmates and their system allowing inmates to make their needs known.[181]

There are several familiar fact patterns that courts have he tute deliberate indifference:

(a) Delay or denial of access to medical attention.[182] Hov is tolerated, of course, depends on the seriousness and urge

---

---

[176] Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Cf. Bailey v. Gardebring, 940 F.2d 1150, 1155 (8th Cir. 1991) (failure to provide treatment is not deliberate indifference if there is no accepted form of treatment for the patient's condition), cert. denied, 112 S.Ct. 1516 (1992).

There is an exception. Prison officials may not shop around until they get a medical opinion that suits their non-medical concerns and may not intentionally rely on a medical opinion that is without adequate basis. Hamilton v. Endell, 981 F.2d 1063, 1066-67 (9th Cir. 1992).

[177] See Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) (failure to diagnose broken ribs was not deliberate indifference); Givens v. Jones, 900 F.2d 1229, 1232-33 (8th Cir. 1990) (giving a prisoner medication to which he was allergic was negligence at worst); Benson v. Cady, 761 F.2d 335, 341 (7th Cir. 1985) (prescription of wrong drug was only malpractice); Owens-El v. United States Attorney General, 759 F.2d 349, 350 (4th Cir. 1985) (unnecessary continuation of dangerous drug was merely negligent); Supre v. Ricketts, 792 F.2d 958, 963 (10th Cir. 1986) (decision not to give female hormones to transsexual was not deliberately indifferent); Gordon v. Higgs, 716 F.Supp. 1351, 1353 (D.Nev. 1989) (failure to take an x-ray was no more than negligent); Mastrota v. Robinson, 534 F.Supp. 434, 436, 438 (E.D. 1982) (claim of failure to diagnose vertebral fracture and failure to insert drainage tube after surgery did not state an Eighth Amendment violation). But see Boyce v. Alizaduh, 595 F.2d 948, 952-53 (4th Cir. 1979) (giving a prisoner medication to which he was allergic could be deliberate indifference); Thomas v. Pate, 493 F.2d 151, 158 (7th Cir.) (same as Boyce), cert. denied, 419 U.S. 879 (1974).

[178] Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981); accord, Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); DeGidio v. Pung, 920 F.2d 525, 533 (8th Cir. 1990) ("consistent pattern of reckless or negligent conduct" establishes deliberate indifference); Todaro v. Ward, 565 F.2d 48, 52 (2d Cir. 1977) (acts that appear negligent in isolation may constitute deliberate indifference if repeated); Williams v. O'Leary, 805 F.Supp. 634, 638 (N.D.Ill. 1992) (deliberate indifference could be inferred from negligent treatment of long duration); Diaz v. Brogin, 781 F.Supp. 566, 564 (N.D.Ind. 1991); Langley v. Coughlin, 715 F.Supp. 522, 541 (S.D.N.Y. 1988); Robert E. v. Lane, 530 F.Supp. 930, 940 (N.D.Ill. 1981) ("A pattern of similar instances presumptively indicates that prison administrators have, through their programs and procedures, created an environment in which negligence is unacceptably likely"); see also Kelley v. McGinnis, 899 F.2d 612, 616 (7th Cir. 1990) (noting court has not ruled "definitively" on this "potential theory of recovery").

[179] The general definition of deliberate indifference is discussed in § A.2 of this chapter. However, there are large numbers of cases applying the standard to prison medical care, and we focus on those cases here.

[180] Hughes v. Joliet Correctional Center, 931 F.2d 425, 428 (7th Cir. 1991) (r prisoner with spinal injury he was "full of bullshit"); White v. Napole 109 (3d Cir. 1990) (doctor allegedly burned the hand of an inmate who feeling); Kersh v. Derozier, 851 F.2d 1509, 1510, 1513 (5th Cir. 1988) ( sight in one eye because police and jail personnel would not let him out of it); Meriwether v. Faulkner, 821 F.2d 408, 413 (7th Cir.) ( transsexual prisoner and completely denied care), cert. denied, 484 Mullen v. Smith, 738 F.2d 317, 318-19 (8th Cir. 1984) (prisoner was subj and derision" in response to complaints of pain and inability to wa Vincent, 508 F.2d 541, 544 (2d Cir. 1974) (doctor refused to try to reatta severed ear and threw it away in front of him); Phillips v. Mi Corrections, 731 F.Supp. 792, 800 (W.D.Mich. 1990) (doctor direct offensive remarks to a transsexual prisoner), aff'd, 932 F.2d 969 (6th Ci v. Coughlin, 715 F.Supp. 522, 541 (S.D.N.Y. 1988) (deliberate indiffer supported by "displays of hostility by prison psychiatrists to their fen which sometimes led to outright refusals to treat"); Smallwood v. Ren 182, 187-88 (N.D.Ill. 1989) (deliberate indifference claim was suppor that a lieutenant overruled a decision to send the plaintiff to a hospital and hit the plaintiff).

[181] Dean v. Coughlin, 623 F.Supp. 392, 402 (S.D.N.Y. 1985); accord, Weeks v F.2d 185, 187 (6th Cir. 1993) "... [A] determination of deliberate indif require proof of intent to harm or a detailed inquiry into [the defen mind.... [The] facts establish that he was deliberately indifferen Faulkner, 715 F.2d 269, 273 (7th Cir. 1983) ("good intentions" do not e systemic deficiency"), cert. denied, 468 U.S. 1217 (1984); Todaro v. Wa 1129, 1160 (S.D.N.Y.), aff'd, 565 F.2d 48 (2d Cir. 1977).

[182] Estelle v. Gamble, 429 U.S. at 104 ("intentionally denying or delaying a care"); Fields v. City of South Houston, Texas, 922 F.2d 1183, 1192 n. 1 (evidence that police officers exercised wide discretion in summoning prisoners); Miller v. Beorn, 896 F.2d 848, 853-54 (4th Cir. 1990) (nurses infirmary patient who lost consciousness and fell); Boswell v. Sherbu F.2d 1117, 1122 (10th Cir. 1988) (delay in hospitalizing a miscarryin denied, 488 U.S. 1010 (1989); H.C. by Hewett v. Jarrard, 986 F.2d 1080, Cir. 1986) (isolation of injured inmate and deprivation of medical att days); Archer v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984) (similar to Bo Prison Health Services, Inc., 769 F.2d 700, 704-05 (11th Cir. 1985) (re specialty consultations without a court order); Robinson v. Morelan 889-90 (8th Cir. 1981) (weekend's delay in treating a broken hand); Hur F.2d 940, 941-42 (5th Cir. 1978) (refusal to take a prisoner to a doctor

medical need.[183]

(b) Denial of access to medical personnel qualified to exercise judgment about a particular medical problem. There are several variations on this theme. In some cases, personnel may simply lack medical qualifications or training.[184] In others, prisoners are denied access to medical personnel with the necessary specialized expertise.[185] Sometimes prisoners who need a physician's care are permitted to see only lower-level, non-physician personnel.[186]

(c) Failure to inquire into essential facts that are necessary to make a professional judgment. As one court put it, "We will defer to the informed judgment of prison officials as to an appropriate form of medical treatment. But if an informed judgment has not been made, the court may find that an eighth amendment claim has been stated."[187] Such cases may involve failure to conduct an adequate examination,[188] failure to ask nec-

---

[183] McGill v. Mountainside Police Dept. 720 F.Supp. 418, 423 (D.N.J. 1989) (police officers' failure to get medical help for arrestee who was vomiting blood and had breathing difficulties); Tomarkin v. Ward, 534 F.Supp. 1224, 1235 (S.D.N.Y. 1982) (denial of medical care in solitary confinement); Isaac v. Jones, 529 F.Supp. 175, 180 (N.D.Ill. 1981) (delay by guards in providing care); see also Hodge v. Ruperto, 739 F.Supp. 873, 879 (S.D.N.Y. 1990) (police officers could be held liable for removing an arrestee from the hospital before his x-rays could be examined and his injuries treated).

[184] See, e.g., Bass by Lewis v. Wallenstein, 769 F.2d 1173, 1178, 1183 (7th Cir. 1985) (holding ten to fifteen-minute delay in doctor's response to a patient in cardiac arrest supported liability). One court has stated that "an unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference." Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (four-hour delay in treating a broken foot); cert. denied, 110 S.Ct. 2624 (1990); Reed v. Dunham, 893 F.2d 285, 287 (10th Cir. 1990) (two-hour delay in treatment for stab wounds); Van Cleave v. United States, 854 F.2d 82, 84 (5th Cir. 1988) (24-hour delay in treating injuries sustained during arrest); Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978) (22-hour delay in treating a broken arm), cert. denied, 446 U.S. 928 (1980); Johnson v. Summers, 411 Mass. 82, 577 N.E.2d 301, 305 (Mass. 1991) (delay of hours in taking prisoner with a broken leg to the hospital), cert. denied, 112 S.Ct. 1166 (1992). But see Mills v. Smith, 656 F.2d 337, 340 (8th Cir. 1981) (one and a half hour delay in hospitalizing a prisoner with a gunshot wound did not constitute deliberate indifference); Brown v. Commissioner of Cecil County Jail, 501 F.Supp. 1124, 1126-27 (D.Md. 1980) (delay of less than a week in treating gonorrhea was not deliberate indifference); Casey v. Lewis, 834 F.Supp. 1477, 1545 (D.Ariz. 1993) (making of medical judgments by security staff could constitute deliberate indifference).

[185] See § F.3.c of this chapter.

[186] See § F.3.c of this chapter.

[187] Tilery v. Owens, 719 F.Supp. 1256, 1308 (W.D.Pa. 1989), aff'd, 907 F.2d 418 (3d Cir. 1990).

[188] Tilery v. Owens, 719 F.Supp. at 1306, 1308 (citing "cursory" sick call inquiries and make physical examinations that were not "thorough" and in which the patient was never touched); see §§ F.3.a, F.3.b of this chapter. But see Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) (failure to perform a physical examination, resulting in failure to diagnose broken ribs, was not deliberate indifference. In our opinion, Brown was incorrectly decided, and the failure to perform

---

essary questions or take a history,[189] or failure to conduct tests prisoner's symptoms call for.[190]

(d) Interference with medical judgment by non-medical fa These factors can include staffing that is so inadequate that medi sonnel lack the time to do their jobs,[192] facilities and procedures not allow for proper diagnosis and treatment,[193] and rules or pro restricting medical care on non-medical grounds.[194]

---

so obvious an examination should be considered deliberate indifference.

[189] Liscio v. Warren, 901 F.2d 274, 276-77 (2d Cir. 1990) (physician failed to inquire cause of an arrestee's delirium and thus failed to diagnose alcohol withdrawa v. Alizadeh, 595 F.2d 948, 952-53 (4th Cir. 1979) (prison doctor ignored a con allergy to medication).

[190] Miltier v. Beorn, 896 F.2d 848, 853 (4th Cir. 1990) (doctor failed to perform cardiac disease in patient with symptoms that called for them); Medcalf v. Kansas, 626 F.Supp. 1179, 1183 (D.Kan. 1986) (doctor failed to order tests t suggested by "the elemental and classic symptoms of a brain tumor"); Weaver 611 F.Supp. 40, 44 (N.D.Ga. 1985) (prison doctor refused to conduct diagnostic a prisoner with symptoms of optic disease leading to blindness).

[191] See West v. Atkins, 487 U.S. 42, 56 n. 15, 108 S.Ct. 2250 (1988) (acknowledging nonmedical functions of prison life inevitably influence the nature, timing and medical care provided to inmates"); Durner v. O'Carroll, 991 F.2d 64, 68-69 1993) (holding that delay of treatment for non-medical reasons could c deliberate indifference); Hamilton v. Endell, 981 F.2d 1063, 1066-67 (9th C (holding that prison officials' disregarding a surgeon's recommenda non-medical grounds could constitute deliberate indifference); Delker v. Ma F.Supp. 1390, 1398, 1401 (D.Or. 1994).

[192] See § F.3.c of this chapter.

[193] Matzker v. Herr, 748 F.2d 1142, 1147 (7th Cir. 1984) (lack of facilities), overruled grounds, Salazar v. City of Chicago, 940 F.2d 233, 240 (7th Cir. 1991); Green v. 581 F.2d 669, 671, 675 (7th Cir. 1978) (failure to provide coverage for emergencies, failure to maintain working respirator, staff who did not know operate emergency equipment), aff'd, 446 U.S. 14 (1980); Lightfoot v. Wal F.Supp. 504, 517, 527 (S.D.Ill. 1980) (inadequate system of medical records).

A number of cases have held that sick call procedures that did not permit a assessment of the prisoner's complaint are constitutionally inadequate. See § this chapter. Inadequate physical facilities and medical records systems have a found to violate the Constitution. See §§ F.3.e, F.3.f of this chapter.

[194] Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, Cir. 1987) (restrictions on abortion unrelated to individual treatment needs), cer 486 U.S. 1066 (1988); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986) (bu restrictions); Ancata v. Prison Health Services, Inc. 769 F.2d 700, 704-05 (11th C (refusal to provide specialty consultations without a court order); Casey v. Le F.Supp. at 1545 (security staff's overruling of medical orders); United States v. Michigan, 680 F.Supp. 928, 1002, 1043-45 (W.D.Mich. 1987) (security or transp constraints).

There are a few situations in which courts have upheld security-based restric medical treatment. Prisons may limit the availability of narcotics and other a drugs because of their potential for abuse as long as they provide other treatr prisoners' pain and other medical problems. Lawhorn v. Duckworth, 736 F.Sup 1505 (N.D.Ind. 1987), aff'd, 864 F.2d 37 (7th Cir. 1990) (Valium); Wolfel v. Fergu F.Supp. 756, 760-61 (S.D.Ohio 1987); see also Inmates of Allegheny County Jail v. Pi F.2d 754, 760-61 (3d Cir. 1979) (jail officials could limit methadone treatment court has held that female hormone treatment may be denied to male tran because of the security problems in placing them in either male or female White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988). See § F.4.a of this chapter for discussion of transsexuals in prison.

(e) Failure to carry out medical orders.[195] Such cases often involve the failure to provide prescribed medication[196] or the failure to act on medical recommendations for surgery or for other specialized care,[197] including hospitalization or other care not available in the prison.[198]

In addition to these "no professional judgment" cases, there are also many decisions that say, in effect, that not every judgment by a doctor is a medical judgment,[199] or that extreme cases of bad judgment by medical personnel constitute deliberate indifference. For example, one federal peals court has held that treatment "so grossly incompetent, inadequate or excessive as to shock the conscience" or "so inappropriate as to evidence intentional maltreatment" violates the Eighth Amendment.[200]

In these cases, courts give substantial weight to expert testimony cizing the prisoner's care, rather than dismissing it as a difference of ion among doctors.[201] Most cases of this nature involve not just bad but also very serious medical conditions, often leading to death, disability or disfigurement.[202] Their reasoning may not be extended to less serious cases.

---

[195] Estelle v. Gamble, 429 U.S. at 105 ("intentionally interfering with the treatment once prescribed"); Aswegan v. Bruhl, 965 F.2d 676, 677-68 (8th Cir. 1992) (failure to honor doctors' orders and refrain from cuffing the plaintiff's hands behind his back); Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (nurse's failure to perform prescribed dressing change); Martin v. Board of County Comm'rs of Pueblo County, 909 F.2d 402, 406 (10th Cir. 1990) (moving an arrestee with a broken neck against doctor's orders); Payne v. Lynaugh, 843 F.2d 177, 178 (5th Cir. 1988) (denial of access to recommended life-saving equipment); Gill v. Mooney, 824 F.2d 192, 195-96 (2d Cir. 1987) (denial of gymnasium time prescribed as rehabilitation therapy); Arnold on behalf of H.B. v. Lewis, 803 F.Supp. 246, 257 (D.Ariz. 1992) (overriding of medical decisions by security staff); Jones v. Evans, 544 F.Supp. 769, 774-76 (N.D.Ga. 1982) (failure to follow back brace); Goodman v. Wagner, 553 F.Supp. 255, 257 (E.D.Pa. 1982) (failure to follow a doctor's orders for wound treatment); Johnson v. Harris, 479 F.Supp. 333, 335-37 (S.D.N.Y. 1979) (failure to provide special diet for diabetic).

One court has recently held that prison officials' failure to obey a medical order for showers and dressing changes did not constitute deliberate indifference. DesRosiers v. Moran, 949 F.2d 15, 19-20 (1st Cir. 1991). In our opinion this decision is contrary to the treatment Estelle v. Gamble's reference, cited above, to "intentionally interfering with the treatment once prescribed" as a form of deliberate indifference.

[196] Aswegan v. Bruhl, 965 F.2d at 677-78; Hill v. Marshall, 962 F.2d 1209, 1213-14 (6th Cir. 1992), cert. denied, 113 S.Ct. 2992 (1993); Johnson v. Hay, 931 F.2d 456, 461-62 (8th Cir. 1991); Boretti v. Wiscomb, 930 F.2d at 1156; Johnson v. Hardin County, Ky., 908 F.2d 1280, 1284 (6th Cir. 1990); Ellis v. Butler, 890 F.2d 1001, 1003-04 (8th Cir. 1989); Mitchell v. Aluisi, 872 F.2d 577, 581 (4th Cir. 1989) (confiscation of prescribed medication); Williams v. O'Leary, 805 F.Supp. 634, 638 (N.D.Ill. 1992); Lowe v. Board of Comm'rs, County of Dauphin, 750 F.Supp. 697, 700 (M.D.Pa. 1990) (indiscriminate confiscation of medication from all incoming inmates); Goodman v. Wagner, 553 F.Supp. 255, 257 (E.D.Pa. 1982).

Some courts have held that denial or delay of prescribed medication does not violate the Eighth Amendment if the delay is short or the consequences are not serious. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); Martin v. New York City Dept. of Corrections, 522 F.Supp. 169, 170 (S.D.N.Y. 1981); Russell v. Enser, 496 F.Supp. 320, 326-28 (D.S.C. 1979), aff'd, 624 F.2d 1095 (4th Cir. 1980); Burrascano v. Levi, 452 F.Supp. 1066, 1069 (D.Md. 1978), aff'd, 612 F.2d 1306 (4th Cir. 1979); see also Harris v. Mapp, 719 F.Supp. 1317, 1324-25 (E.D.Va. 1989) (failure to provide prescribed Dilantin was merely negligent; the prisoner died), aff'd, 907 F.2d 1138 (4th Cir. 1990).

[197] Johnson v. Lockhart, 941 F.2d 705, 706-07 (8th Cir. 1991) (10-month delay in surgery that doctor recommended be done within days); Howell v. Evans, 922 F.2d 712, 723 (11th Cir. 1991) (failure to act on a medical judgment that prisoners needed access to a respiratory therapist), vacated as settled, 931 F.2d 711 (11th Cir. 1991); Johnson v. Bowers, 884 F.2d 1053, 1056 (8th Cir. 1989) (failure to perform surgery at the direction of prison doctors to carry out surgery scheduled before plaintiff's incarceration); LaFaut v. Smith, 834 F.2d 389, 393-94 (4th Cir. 1987) (failure to provide rehabilitation therapy recommended by orthopedic specialist); Johnson-El v. District of Columbia, 579 A.2d 163, 169 (D.C. 1990) (failure to take prisoner to dermatologist).

[198] See § F.3.d of this chapter.

[199] See, e.g., Hughes v. Joliet Correctional Center, 931 F.2d 425, 428 (7th Cir. 1991) (evidence that medical staff treated the plaintiff "not as a patient, but as a nuisance," and "were insufficiently interested in his health to take even minimal steps to guards against the

---

possibility that the injury was severe" could support a finding of deliberate indifference). Courts have observed that the Constitution is violated "if doctors" by the doctors." Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974); accord, Monmouth County Jail Inmates v. Lanzaro, 834 F.2d at 347; Maynard v. New Jersey, 719 F.Supp. 292, 295 (D.N.J. 1989) (evidence that prisoner received only palliative treatment severe complications of AIDS raised a factual question of deliberate indifference).

[200] Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (emphasis supplied); Howell v. Evans, 922 F.2d 712, 719 (11th Cir. 1991) ("the contemporary standards opinions of the medical profession are highly relevant in determining what constitutes deliberate indifference"), vacated as settled, 931 F.2d 711 (11th Cir. 1991); Smith v. Jenkins, 919 F.2d 90, 93 (8th Cir. 1990) (plaintiff should be permitted to proceed treatment "so deviated from professional standards that it amounted to deliberate indifference"). Rosen v. Chang, 811 F.Supp. 754, 760-61 (D.R.I. 1993) ("grossly incompetent and recklessly inadequate examination by a licensed physician constitute deliberate indifference). Another court recently held that a deliberate indifference claim was stated by "allegations that the doctor intended to inflict prisoners without any medical justification and ... the sheer number of instances in which the doctor allegedly insisted on continuing courses of treatment the doctor knew were painful, ineffective, or entailed substantial risk of serious the prisoners." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

[201] "Whether an instance of medical misdiagnosis resulted from deliberate indifference negligence is a factual question requiring exploration by expert witnesses." Rogers v. Evans, 792 F.2d at 1058; accord, Smith v. Jenkins, 919 F.2d at 94 (suggesting district court "may" appoint an independent expert or obtain an "opinion from prisoner's pre-incarceration doctor); Liscio v. Warren, 901 F.2d 274, 276 (2d Cir. 1990) (expert affidavit describing a prisoner's medical care as "severely mismanaged supported a claim of deliberate indifference); Miltier v. Beorn, 896 F.2d 848, 854 (Cir. 1990); Mandel v. Doe, 888 F.2d 783, 790 (11th Cir. 1989); Medcalf v. State of 626 F.Supp. 1179, 1190 (D.Kan. 1986) (prisoner's expert's description of medical care as "gross negligence" raised a factual question for the jury); see § F.2.b of this chapter, 231-32 for a further comment on medical experts. But see Howell v. Evans, 922 F.2d 722 (expert affidavit stating that a prison doctor "deviated from established standards but not that his actions were "grossly inadequate" or "plainly wrong" did not state deliberate indifference claim), vacated as settled, 931 F.2d 711 (11th Cir. 1991).

[202] Waldrop v. Evans, 871 F.2d 1030, 1032-36 (11th Cir.) (severe self-mutilation following psychiatric neglect), rehearing denied, 880 F.2d 421 (11th Cir. 1989); Rogers v. Evans, F.2d at 1060-62 (suicide following psychiatric neglect); Carswell v. Bay County, 854 F.2d 454, 455-57 (11th Cir. 1988) (treatment of diabetic suffering catastrophic wounds with laxatives and pain-killers); Wood v. Sunn, 865 F.2d 982, 989-90 (9th Cir. 1989) ("doctors" disregarded "complaints" because they assumed the prisoner's problems psychological; he lost the ability to urinate), vacated, 880 F.2d 1011 (9th Cir. 1989); v. Chang, 811 F.Supp. 754, 760 (D.R.I. 1976) (death from untreated appendicitis); v. Brierton, 431 F.Supp. 50, 51-52 (N.D.Ill. 1976) (fatal administration of contra-indicated medication states a claim). Some of the cases cited in n. 191 of this section concern the failure to perform tests are similar.

PRISONERS' SELF-HELP LITIGATION MANUAL

Prison personnel sometimes respond to allegations of deliberate indifference by saying that they did provide some medical care, or that your medical care was adequate in general. This claim may not be a valid defense; they must respond to the *particular* claim of deliberate indifference that you raise.

For example, one prisoner alleged that he suffered a broken nose, broken teeth, and an eye injury in a fight; but he only got treatment for the broken nose; the court ruled that his allegations stated a claim for deliberate indifference.[203]

In another case, a pregnant woman alleged a five-hour delay in taking her to the hospital when she began to miscarry; the court held that she had raised a factual issue of deliberate indifference concerning that incident even though she received "extensive" medical attention on other occasions.[204] The deliberate indifference standard "does not necessarily excuse one episode of gross misconduct merely because the overall pattern reflects general attentiveness."[205]

### a. Suing the Right Defendants

In pursuing a deliberate indifference claim, you must think closely about exactly *who* was deliberately indifferent–that is, who caused the constitutional violation and can be held liable for it.[206] Doctors and other medical personnel can be liable for the consequences of their own acts or omissions if they amount to deliberate indifference,[207] but in some cases the fault may be with correctional personnel who keep you from getting to see the medical staff or interfere with treatment that has been prescribed.[208]

Wardens and other correctional supervisors are not deliberately indifferent when they act in reliance on the judgments of qualified medical personnel.[209]

But they may be deliberately indifferent if they fail to provide adequate staff[210] or qualified staff,[211] if they maintain policies that interfere with adequate medical care,[212] if they fail to remedy unlawful conditions that they know or should know about,[213] or if they otherwise fail to carry out

One court has made this point explicit, stating that "life-threatening" or "fast-developing" conditions call for closer judicial scrutiny of prison medical care. Liscio v. Warren, 901 F.2d at 277.

[203] Matzker v. Herr, 748 F.2d 1142, 1147-48 (7th Cir. 1984), *overruled on other grounds*, Salazar v. City of Chicago, 940 F.2d 233, 240 (7th Cir. 1991).

[204] Archer v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984); *see also* Smith v. Jenkins, 919 F.2d 90, 93-94 (8th Cir 1990) (mere proof of diagnosis by a doctor did not require dismissal of case; district court directed to review prisoner's medical records); Williams v. O'Leary, 805 F.Supp. 634, 638 (N.D.Ill. 1992) ("Mere volume of medical attention is insufficient to defend an Eighth Amendment claim."); Henderson v. Harris, 672 F.Supp. 1054, 1059 (N.D.Ill. 1987) (the fact that the prisoner received some care did not entitle the warden to have the case dismissed.) *Cf.* Knop v. Johnson, 667 F.Supp. 512, 524-25 (W.D.Mich. 1987) (evidence that the prison system spends a lot of money and hires a lot of staff does not refute a deliberate indifference claim about the medical care system), *aff'd in part and rev'd in part on other grounds*, 977 F.2d 996 (6th Cir. 1992), *cert. denied*, 113 S.Ct. 1415 (1993).

[205] Murrell v. Bennett, 615 F.2d 306, 310 n. 4 (5th Cir. 1980); *see* McGuckin v. Smith, 974 F.2d 1050, 1060-61 (9th Cir. 1992) (a finding that maltreatment was an "isolated exception" to the prisoner's overall treatment militates against a finding of deliberate indifference, but a single "egregious" failure may support a deliberate indifference claim); Jones v. Evans, 544 F.Supp. 769, 775 (N.D.Ga. 1982) (a defendant may generally respond to a claim of denial of care or inadequate care by "establishing he was generally attentive to the prisoner's needs"; a claim of interference with prescribed care is less subject to that defense).

[206] The "causation" or "personal involvement" requirement applied in civil rights actions is discussed in Ch. VIII, § B.4.a.

46

---

PRISONERS' SELF-HELP LITIGATION MANUAL

[207] *See* § F.1 of this chapter.

[208] Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990), *cert. denied*, 110 S.Ct. 262 (1990); Kelley v. McGinnis, 899 F.2d 612, 616 (7th Cir. 1990); Parrish v. Johnson, 800 F.2d 600, 605 (6th Cir. 1986); H.C. by Hewett v. Jarrard, 786 F.2d 1080, 1086-87 (11th Cir. 1986); Lewis v. Cooper, 771 F.2d 334, 336-37 (7th Cir. 1985); Harris v. O'Grady, 803 F.Supp. 1361, 1366 (N.D.Ill. 1992).

[209] As one court observed, a warden is "not responsible for second-guessing his medical staff." Tomarkin v. Ward, 534 F.Supp. 1224, 1232 (S.D.N.Y. 1982); *accord* Miltier v. Beorn, 896 F.2d 848, 854-55 (4th Cir. 1990); White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988); Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987); McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977), *cert. denied*, 435 U.S. 917 (1978); *see also* Estate of Cartwright v. City of Concord, Cal., 856 F.2d 1437, 1438 (9th Cir. 1988) (jail staff were not liable for waiting for an ambulance instead of personally administering CPR).

Prison officials may not, however, shop around until they get a medical opinion that suits their non-medical plans for a prisoner. *See* Hamilton v. Endell, 981 F.2d 1062, 1066-67 (9th Cir.1992).

[210] Greason v. Kemp, 891 F.2d 829, 837-40 (11th Cir. 1990); Anderson v. City of Atlanta, 778 F.2d 678, 686-89 (11th Cir. 1985); Miranda v. Munoz, 770 F.2d 255, 260-62 (1st Cir. 1985).

[211] Howell v. Evans, 922 F.2d 712, 723 (11th Cir. 1991), *vacated as settled*, 931 F.2d 711 (11th Cir. 1991); Bass by Lewis v. Wallenstein, 769 F.2d 1173, 1184-86 (7th Cir. 1985); Langley v. Coughlin, 715 F.Supp. 522, 540 (S.D.N.Y. 1988); Medcalf v. State of Kansas, 626 F.Supp. 1179, 1186 (D.Kan. 1986); *see also* § F.3.c of this chapter.

[212] Boswell v. Sherburne County, 849 F.2d 1117, 1123 (10th Cir. 1988) (chief jailer and sheriff could be held liable based on evidence that "inadequately trained jailers were directed to use their own judgment about the seriousness of prisoners' medical needs and that medical care was restricted in order to save money), *cert. denied*, 488 U.S. 1010 (1989); Meade v. Grubbs, 841 F.2d 1512, 1531 (10th Cir. 1988) (the failure of the state health commissioner to carry out statutory duties could be deliberate indifference); Jones v. Johnson, 781 F.2d 769, 771-72 (9th Cir. 1986) (supervisory officials could be liable for budgetary restrictions on medical care); Bass by Lewis v. Wallenstein, 769 F.2d at 1184-88 (damages awarded against assistant warden and medical administrator based on deficiencies in sick call procedure); Ancata v. Prison Health Services, Inc., 769 F.2d 700, 705-06 (11th Cir. 1985) (sheriff could be held liable for requiring court order for outside medical care); Green v. Carlson, 581 F.2d 669, 671, 675 (7th Cir. 1978) (failure to provide emergency coverage when no doctor was on duty stated a claim against the chief medical officer), *aff'd*, 446 U.S. 14 (1980).

[213] Aswegan v. Bruhl, 965 F.2d 676, 677-78 (8th Cir. 1992) (Deputy Warden and Security Director held liable for failure to correct known violations of doctors' orders); Hill v. Marshall, 962 F.2d 1209, 1213 (6th Cir. 1992) (Deputy Superintendent of Treatment held liable for failure to respond to complaints despite his knowledge of a breakdown in the medical system), *cert. denied*, 113 S.Ct. 2992 (1993); Greason v. Kemp, 891 F.2d 829, 839 (11th Cir. 1990) (prison system mental health director could be held liable for failure to remedy known deficiencies in mental health services); LaFaut v. Smith, 834 F.2d 389

47

their responsibilities to provide adequate medical care.[214]

City or county governments may be held liable on a similar basis.[215] In your complaint and other papers, you should be specific about the reasons you think a particular defendant is liable for a medical care deprivation.

### b. Remedies for Deliberate Indifference

Under the deliberate indifference standard, you may seek either an injunction requiring prison officials to give you proper medical care in the future,[216] or damages for their past failure to provide proper care, or both.

The two don't always go together. A court may find that you entitled to damages for what happened in the past, but you may entitled to an injunction to avoid harm in the future.[218]

Conversely, if you have received adequate care (or gotten well it) by the time the court decides the case, you may not need an inj but you can still receive damages for any pain and suffering you enced while waiting to receive proper treatment.[219]

### 2. Serious Medical Needs

Under the Constitution, prison officials need provide care only rious medical needs."[220] Some courts have held that a medical ne rious if it "has been diagnosed by a physician as mandating treat is so obvious that even a lay person would easily recognize th sity for a doctor's attention."[221]

Prisoners may also seek injunctions against conditions that may cause illn future, such as exposure to infectious diseases or unsafe drinking water. McKinney _____ U.S. _____, 113 S.Ct. 2475, 2480-81 (1993). Such conditions are further in § C.3.b of this chapter.

---

[213] 392-94 (4th Cir. 1987) (damages awarded against warden who was "fully advised" of failure to provide a paraplegic inmate with adequate toilet facilities and rehabilitation therapy); Thompkins v. Belf, 828 F.2d 298, 305 (5th Cir. 1987) (Sheriff could be held liable if he knew the plaintiff's requests for medical treatment were being ignored); Bass by Lewis v. Wallenstein, 769 F.2d at 1184-86 (assistant warden and medical administrator could be held liable for failure to act on previous warnings of inadequate medical care); Langley v. Coughlin, 715 F.Supp. at 544-49 (Commissioner, Superintendent, medical unit chief and security captain could be held liable based on their knowledge of deficiencies in mental health care); Jones v. Evans, 544 F.Supp. 769, 777 (N.D.Ga. 1982) (warden and commissioner could be held liable for inadequate training, supervision and direction of subordinate employees); Tomarkin v. Ward, 534 F.Supp. 1224, 1232 (S.D.N.Y. 1982) (warden could be responsible if he knew of denial of medical care in solitary confinement).

[214] Howell v. Burden, 12 F.3d 190, 192-94 (11th Cir. 1994) (Superintendent's "administrative authority" could support liability); Johnson v. Lockhart, 941 F.2d 705, 707 (8th Cir. 1991) ("Abdication of policy-making and oversight responsibilities can reach the level of deliberate indifference"; delays in prescribed surgery could support administrators' liability); Al-Jundi v. Mancusi, 926 F.2d 235, 239-40 (2d Cir. 1991) (Superintendent's failure to plan for medical care after violent suppression of prison disturbance would constitute deliberate indifference), cert. denied, 112 S.Ct. 182 (1991); Meade v. Grubbs, 841 F.2d at 1531 (the failure of the state health commissioner to carry out statutory duties could be deliberate indifference); Brown v. Coughlin, 758 F.Supp. 876, 889 (S.D.N.Y. 1991) (Commissioner and Superintendent have personal duties to ensure adequate medical services).

[215] Colle v. Brazos County, Tex., 981 F.2d 237, 245 (5th Cir. 1993) (inadequate monitoring, lack of arrangements for transfers to medical facilities); Cabrales v. County of Los Angeles, 864 F.2d 1454, 1460-61 (9th Cir. 1988) (inadequate staffing), vacated, 490 U.S. 1087 (1989), reinstated, 886 F.2d 235 (9th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); Anderson v. City of Atlanta, 778 F.2d at 685-89 (inadequate staffing); Ancata v. Prison Health Services, Inc., 769 F.2d at 705-06 (policy of limited funding and requiring court orders for certain medical treatment); Garcia v. Salt Lake County, 768 F.2d 303, 307-08 (10th Cir. 1985) (inadequate staffing and policy of admitting unconscious persons to jail).

If local governments establish adequate procedures for providing medical care to prisoners, they can't be held liable based on isolated failures of their employees to follow them. Holmes v. Sheahan, 930 F.2d 1196, 1201-02 (7th Cir. 1991), cert. denied, 112 S.Ct. 423 (1991); Bryant v. Maffucci, 923 F.2d 979, 986 (2d Cir. 1991), cert. denied, 112 S.Ct. 152 (1991).

Municipal liability in civil rights actions requires proof that the violation was caused by a municipal policy. This requirement is discussed in Ch. VIII, § B.4.b. Similarly, a private corporation that provides prison medical care can only be held liable if the legal violation results from a corporate policy. See cases cited in § F of this chapter, n.171.

48

---

[216] See, e.g., Arnold on behalf of H.B. v. Lewis, 803 F.Supp. 246, 258-57 (D.Ar Yarbaugh v. Roach, 736 F.Supp. 318, 320 (D.D.C. 1990); Phillips v. Michigan Corrections, 731 F.Supp. 792, 800-01 (W.D.Mich. 1990), aff'd, 932 F.2d 969 (6th C

[217] See, e.g., Aswegan v. Bruhl, 965 F.2d 676, 677 (8th Cir. 1992); Hill v. Marshall, 1209, 1215-17 (6th Cir. 1992), cert. denied, 113 S.Ct. 2992 (1993); Leach v. Shelby Sheriff, 891 F.2d 1241 (6th Cir. 1989), cert. denied, 495 U.S. 932 (1990); Mandel v. F.2d 783 (11th Cir. 1989). Other cases involving damage awards are cited the following sections on medical care.

[218] Johnson v. Bowers, 884 F.2d 1053, 1056 (8th Cir. 1989); Crooks v. Nix, 872 804-05 (8th Cir. 1989) (damage claim properly dismissed, but court should current medical records before ruling on injunctive claim); compare Lee v. M 543 F.Supp. 386, 391-93 (D.Kan. 1982) (granting injunction to paraplegic further medical neglect) with Lee v. McManus, 589 F.Supp. 633, 638-41 (D.K (denying damages based on various defenses).

[219] Boretti v. Wiscomb, 930 F.2d 1150, 1154-55 (6th Cir. 1991) (prisoner could get for failure to treat his wound even though it had healed); Hathaway v. Coug F.2d 48 (2d Cir. 1988) (claim for delay in surgery should not have been dismiss the surgery was performed); H.C. by Hewet v. Jarrard, 786 F.2d 1080, 1083, 1 Cir. 1986) (damages awarded for three-day denial of medical care with no pe injury resulting); Robinson v. Moreland, 655 F.2d 887, 890 (8th Cir. 1981); West 571 F.2d 158 (3d Cir. 1978) (similar to Hathaway); Isaac v. Jones, 529 F.Supp. (N.D.Ill. 1981).

[220] Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).

The seriousness of mental health needs is discussed in n.294 concerning transsexualism. 279-80; see also cases cited in n.294 concerning transsexualism.

[221] Duran v. Anaya, 642 F.Supp. 510, 524 (D.N.M. 1986); accord, Johnson v. Busbee, 349, 351 (8th Cir. 1991); Gaudreault v. Municipality of Salem, Mass., 923 F.2d (1st Cir. 1990); Monmouth County Correctional Institution Inmates v. Lanzaro, at 347; Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 (1981) and cases cited; Maynard v. New Jersey, 719 F.Supp. 292, 295 (D.N Henderson v. Harris, 572 F.Supp. 1054, 1059 (N.D.Ill. 1987) (hemorrhoids) McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) ("the existence of a

49

A medical condition may also be serious if it "significantly affects an individual's daily activities."[222]

A more general definition of serious medical needs, and we think a better one, refers to "conditions that cause pain, discomfort, or threat to good health."[223] This definition is consistent with Supreme Court decisions holding that the Eighth Amendment prohibits the "unnecessary and wanton infliction of pain."[224] Many courts have cited pain in finding a medical need serious.[225] One court has stated, "Evidence of recent traumatic injury... has generally been sufficient to demonstrate a serious medical need."[226]

---

[222] that a reasonable doctor or patient would find important and worthy of comment or treatment" supports a finding of seriousness); Davis v. Jones, 936 F.2d 971, 972 (7th Cir. 1991) (police are obligated to obtain medical care if an injury "reasonably appears to be serious"), rehearing denied, 946 F.2d 538 (7th Cir. 1991).

[222] McGuckin v. Smith, 974 F.2d at 1060; accord, Tillery v. Owens, 719 F.Supp. 1256, 1286 (W.D.Pa. 1989) (citing definition of "serious" mental illness as one "that has caused significant disruption in an inmate's everyday life and which prevents his functioning in the general population without disturbing or endangering others or himself"), aff'd, 907 F.2d 418 (3d Cir. 1990); see Johnson v. Bowers, 884 F.2d 1053, 1056 (8th Cir. 1989) (prison must treat a "substantial disability" – in this case, partial disability of an arm); Young v. Harris, 509 F.Supp. 1111, 1113-14 (S.D.N.Y. 1981) (failure to provide leg brace was actionable); see also Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d at 347 (medical need is serious if it imposes a "life-long handicap or permanent loss").

[223] Dean v. Coughlin, 623 F.Supp. 392, 404 (S.D.N.Y. 1985); accord, McGuckin v. Smith, 974 F.2d at 1060 ("chronic and substantial pain" indicates that a medical need is serious); Boretti v. Wiscomb, 930 F.2d 1150, 1154-55 (6th Cir. 1991) (needless pain is actionable even if there is no permanent injury); Moreland v. Wharton, 899 F.2d 1168, 1170 (11th Cir. 1989) ("significant and uncomfortable health problem" is actionable); Johnson-El v. Schoemehl, 878 F.2d 1043, 1055 (8th Cir. 1989) (condition that is "medically serious or painful in nature" may be actionable); Farinaro v. Coughlin, 642 F.Supp. 276, 279 (S.D.N.Y. 1986) (Eighth Amendment requires "a specific showing of pain, discomfort, or threat to health").

[224] Estelle v. Gamble, 429 U.S. at 104.

[225] Ellis v. Butler, 890 F.2d 1001, 1003 (8th Cir. 1989) (swollen, painful knee must be considered "serious" on a motion to dismiss); Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir. 1988) (plaintiff was denied treatment that "eliminated pain and suffering at least temporarily"); West v. Keve, 571 F.2d 158, 161-62 (3d Cir. 1978) (pain while awaiting a delayed operation); Kaminsky v. Rosenblum, 737 F.Supp. 1309, 1319 (S.D.N.Y. 1990) ("unnecessary pain and suffering"), appeal dismissed, 929 F.2d 922 (2d Cir. 1991); Bouchard v. Magnusson, 715 F.Supp. 1146, 1148 (D.Me. 1989) (persistent back pain is serious); Young v. Harris, 509 F.Supp. at 1113 (plaintiff could not walk without "substantial difficulty and discomfort"); see Case v. Bixler, 518 F.Supp. 1277, 1280 (S.D.Ohio 1981) (boil "in full flower" might be serious). But see Wilson v. Franchesci, 735 F.Supp. 395, 398 (M.D.Fla. 1990) (itching is not a serious medical need). Compare Harris v. Murray, 761 F.Supp. 409, 414 (E.D.Va. 1990) ("hair loss is not serious) with Johnson-El v. District of Columbia, 579 A.2d 163, 167-69 (D.C. 1990) (hair loss is serious; dermatological problem of scalp cited).

[226] Brown v. Hughes, 894 F.2d 1533, 1538 n. 4 (11th Cir. 1990), cert. denied, 110 S.Ct. 2624 (1990); see Smallwood v. Renfro, 708 F.Supp. 182, 187 (N.D.Ill. 1989) (cut lip might be serious).

Several courts have held that such injuries were not serious. Gaudreault v. Municipality of Salem, Mass., 923 F.2d at 208; Williams-El v. Johnson, 872 F.2d 224, 230-31 (8th Cir. 1989), cert. denied, 493 U.S. 871 (1989); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (cut over eye and

---

Courts have recognized that "there can be a serious cumulative [effect] from the repeated denial of care with regard to even minor needs. Thus, even a bad headache might not be serious by itself, but if you [have] them continually, we think you have a serious medical need. The fact that certain care has been labelled 'elective' does not necessarily mean your need for it is not serious.[228]

In drafting a complaint or other court papers, you should address the issue of "seriousness" by being very specific about the effects of the denial of medical care.[229] This point is especially important since one federal court has held that if the seriousness of a medical need is "not apparent" to a lay person, the plaintiff must submit expert medical evidence.-- a possible task for most pro se litigants.[230]

You should therefore do what you can to make the seriousness of your need "apparent" to the court by explaining how painful it is, to what extent it interferes with your activities, how long you have had it, whether is getting worse, etc. You may also wish to ask the court to appoint a medical expert witness under Rule 706, Fed.R.Ev. This is a long shot because there is no provision to pay expert witnesses in civil in forma pauperis cases,[231] but in a serious case the court may be able to persuade an expert to donate her services. A Rule 706 expert has been appointed in at least one prison medical case.[232]

---

[227] Jones v. Evans, 544 F.Supp. 769, 775 n. 4 (N.D.Ga. 1982).

[228] Johnson v. Bowers, 884 F.2d at 1056; Monmouth County Correctional Institute Inmates v. Lanzaro, 834 F.2d 326, 349 (3d Cir. 1987), cert. denied, 486 U.S. 1066 Delker v. Maass, 843 F. Supp. 1390, 1399-1400 (D.Or. 1994). But see Bor... Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987) ("elective" surgery could be defended "presumably brief" period of pre-trial detention), cert. denied, 485 U.S. 991 (1988).

[229] piece of glass in hand were not so serious that a 14-hour delay in treating the [issue was] unconstitutional). In these cases, the plaintiff received some treatment, and the issue seems to be that the treatment was not constitutionally inadequate.

The failure to provide this kind of information can lead to the dismissal of your See Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir. 1990) (claim of delay in treating pain dismissed where the prisoner did not allege "that his condition was acute [or] any other reason required immediate attention nor that the [one-month] delay treatment aggravated his condition"); Dixon v. Fox, 893 F.2d 1556, 1557 (8th Cir. (claim of suspension of medical diet dismissed where plaintiffs did not explain their serious medical needs were compromised), cert. denied, 112 S.Ct. 262 Stinson v. Sheriff's Dept. of Sullivan County, 499 F.Supp. 259, 263 (S.D.N.Y. ("bruises and lacerations" were serious; vague claims of head pain and pain suffering from unspecified "eye injury" were not).

[230] Boring v. Kozakiewicz, 833 F.2d at 473-74. The dissenting judge in that case "The inhumanity of this paradoxical rule of law alone suggests a serious flaw." 474. We agree.

[231] Boring v. Kozakiewicz, 833 F.2d at 473-74.

[232] Crabtree v. Collins, 900 F.2d 79, 81 (6th Cir. 1990); see also Smith v. Jenkins, 919 F. 94 (8th Cir. 1990) (suggesting that the district court "may" appoint an independent expert or obtain an opinion from the doctor who treated the plaintiff before imprisonment). See Ch. IX, § 5.1.e for further discussion of expert witnesses.

The need for expert testimony is also a factor that weighs in favor of appoin...

### 3. The Medical Care System

In order to provide adequate medical care, prison officials must have an adequate system for identifying prisoners with medical needs and making sure that they are diagnosed and treated. "[S]ystemic deficiencies in staffing, facilities, or procedures [which] make unnecessary suffering inevitable" constitute deliberate indifference.[233]

In the next several sections, we will discuss what prison officials must do to meet their obligation to provide "a medical care system that meets minimal standards of adequacy."[234]

#### a. Communication of Medical Needs

"Prison officials show deliberate indifference to serious medical needs if prisoners are unable to make their medical problems known to the medical staff."[235] Prisoners in isolated confinement must be able to communicate their medical needs to staff.[236] Sick call must be conducted in a fashion that permits prisoners' complaints to be evaluated in a professional manner."[237] Correctional personnel without medical training used to convey sick call requests[238] but they cannot be allowed which prisoners will receive medical attention.[239]

Prisons may use nurses, physicians' assistants or medical technicians to determine priorities in seeing a doctor and to handle problems for which a doctor is not necessary.[240]

However, in such a system, the person doing the screening must adequate training and physician supervision, and prisoners with physician's direct attention must receive it.[241]

---

[233] Todaro v. Ward, 565 F.2d 48, 52 (2d Cir. 1977), quoting Bishop v. Stoneman, 508 F.2d 1224, 1226 (2d Cir. 1974); accord, Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); DeGidio v. Pung, 920 F.2d 525, 529 (8th Cir. 1990) (lack of "adequate organization and control in the administration of health services" supported finding of Eighth Amendment violation); Free v. Granger, 887 F.2d 1552, 1556 (11th Cir. 1989) ("Proof of staffing or procedural deficiencies may give rise to a finding of deliberate indifference"); Eng v. Smith, 849 F.2d 80, 82 (2d Cir. 1988) (evidence of "systemic deficiencies" in mental health care supported a preliminary injunction); Greason v. Kemp, 891 F.2d 829, 839 (11th Cir. 1990) (state prison mental health director could be held liable for lack of mental health treatment plans, lack of policies and procedures for suicide prevention and inadequate psychiatric staff leading to inmate suicide); French v. Owens, 777 F.2d 1250, 1254 (7th Cir. 1985), cert. denied, 479 U.S. 817 (1986); Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981); Newman v. Alabama, 503 F.2d 1320, 1331 (5th Cir. 1974) ("disorganized lines of therapeutic responsibility" contributed to an Eighth Amendment violation); Tillery v. Owens, 719 F.Supp. 1256, 1305-06 (W.D.Pa. 1989) (lack of proper administration of medical services and general disorganization" of nursing services contributed to an Eighth Amendment violation), aff'd, 907 F.2d 418 (3d Cir. 1990); Inmates of Occoquan v. Barry, 717 F.Supp. 854, 867 (D.D.C. 1989) (lack of a follow-up system for treating chronic diseases cited as part of an Eighth Amendment violation); Lightfoot v. Walker, 486 F.Supp. 504, 522-24 (S.D.Ill. 1980) (organization and administration of health care generally found inadequate); see also cases cited in § F.1.b of this chapter, nn. 211-216.

[234] Wellman v. Faulkner, 715 F.2d 269, 271 (7th Cir. 1983), cert. denied, 468 U.S. 1217 (1984).

[235] Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982); accord, Johnson-El v. Schoemehl, 878 F.2d 1043, 1054-55 (8th Cir. 1989) (sick call may only once a week stated a constitutional claim); Bass by Lewis v. Wallenstein, 769 F.2d 1173, 1184-85 (7th Cir. 1985) (known deficiencies in sick call system supported a finding of deliberate indifference); Arnold on behalf of H.B. v. Lewis, 803 F.Supp. 246, 257 (D.Ariz. 1992) (lack of adequate system of psychiatric referrals supported a finding of deliberate indifference); Dawson v. Feliciano, Colon v. Hernandez Colon, 697 F.Supp. 37, 41, 50 (D.P.R. 1988); Kendrick, 527 F.Supp. 1252, 1308 (D.W.Va. 1981); Lightfoot v. Walker, 486 F.Supp. 504, 516-17 (S.D.Ill. 1980); see Wright v. Jones, 907 F.2d 848, 852 (8th Cir. 1990) (supervisory officials were not liable for denial of treatment where they had instituted policies and procedures for communication of medical requests).

[236] Todaro v. Ward, 565 F.2d 48, 51-52 (2d Cir. 1977) (infirmary patients in isolation rooms must be provided a way to summon nurses); LeMaire v. Maass, 745 F.Supp. 623, 636

---

(D.Or. 1990) (segregation inmates could not be locked into cells from which not summon assistance), vacated and remanded, 12 F.3d 1444 (9th Cir. 1993). court in LeMaire did not disagree with the district court's finding of unconstitutionality but merely held that its injunction was too broad.

[237] Hoptowit v. Ray, 682 F.2d at 1252-53 (9th Cir. 1982) (evaluation of complaints via written "kites" rather than examination of the patient was Todaro v. Ward, 565 F.2d at 50-51) (nurse screening procedure that allows seconds per prisoner, did not permit physical examination, and assigned based on "cryptic" written notes was inadequate); Tillery v. Owens, 719 F. 1306 (W.D.Pa. 1989) ("cursory" sick call and sick call conducted where the Cir. 1990); United States v. State of Michigan, 680 F.Supp. 928, 1043-45, 1061 1987) (decisions about medical priorities cannot be made from the inmate complaint without an examination; court later accepts a written complaint requires all prisoners with non-routine complaints to be seen by a doctor hours).

[238] Miller v. Carson, 401 F.Supp. 835, 898 (M.D.Fla. 1975), aff'd in pertinent part, 5 (5th Cir.), rehearing denied, 566 F.2d 106 (5th Cir. 1977).

[239] Fields v. City of South Houston, Texas, 922 F.2d 1183, 1192 n.10 (5th Cir. 199 v. Aluisi, 872 F.2d 577, 581 (4th Cir. 1989) (allegation of medical screening b lay personnel supported a claim of deliberate indifference); Kelley v. Mc F.2d 612, 616 (7th Cir. 1990) (allegation that non-medical personnel initial access to a doctor stated a deliberate indifference claim); Boswell v. Sherbu 849 F.2d 1117, 1123 (10th Cir. 1988) (deliberate indifference claim was su evidence that "inadequately trained jailers were directed to use their own about the seriousness of prisoners' medical needs"), cert. denied, 488 U.S. Hoptowit v. Ray, 682 F.2d at 1252; Morales Feliciano v. Hernandez Colon, 37, 41, 50 (D.P.R. 1988); Martino v. Carey, 563 F.Supp. 984, 989-90, 997-98 (D

[240] Partee v. Lane, 528 F.Supp. 1254, 1259-61 (N.D.Ill. 1981); Burks v. Teasdale, 650, 678-79 (W.D.Mo. 1980); see Toussaint v. McCarthy, 801 F.2d 1080, 1111 1986) (court should determine what services were performed by assistants, inmates and whether they were qualified to perform them), cert. denied, 48 (1987).

[241] See cases cited in § F.4.c of this chapter, nn. 251 and 253.