IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM F. DAVIS, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 04-209-SLR |
| | ) |
| FIRST CORRECTIONAL MEDICAL, | ) |
| NURSE BETTY BRADLEY, and | ) |
| DR. BENJAMIN ROBINSON, | ) |
| | ) |
| Defendants. | ) |

William F. Davis, III, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro se Plaintiff.

Daniel L. McKenty and Patrick G. Rock, Esquires, Heckler & Grabizzio, Wilmington, Delaware. Counsel for Defendants First Correctional Medical, Betty Bradley, and Dr. Benjamin Robinson.

Kevin J. Connors, Esquire, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware. Co-Counsel for Defendants Betty Bradley and Dr. Benjamin Robinson.

**MEMORANDUM OPINION**

Dated: December 11, 2008
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff William F. Davis ("plaintiff"), an inmate at the James T. Vaughn Correctional Center, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. Presently before the court are cross-motions for summary judgment filed by plaintiff and defendants First Correctional Medical ("FCM"), Nurse Betty Bradley ("Bradley"), and Dr. Benjamin Robinson ("Dr. Robinson") with supporting memoranda and responses thereto. (D.I. 108, 110, 111) For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and will grant defendants' motions for summary judgment.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed this civil rights complaint pursuant to 42 U.S.C. § 1983 seeking compensation for defendants' alleged deliberate indifference to his serious medical need while he was incarcerated at the Gander Hill Correctional Facility, now known as the Howard R. Young Correctional Institution. (D.I. 2, 52, 72, 102, 103) His claim arises due to alleged delay in treatment and inadequate medical care he received in 2002 for hernia and bowel obstruction conditions.

Several defendants have been dismissed during the pendency of this case, with FCM, Bradley, and Dr. Robinson as the remaining defendants. (D.I. 20, 27, 72) On March 29, 2007, the court dismissed the Delaware medical negligence claims against them. (D.I. 69) Plaintiff moves for summary judgment on the remaining issues.[1] (D.I.

---

[1] In opposition to plaintiff's motion, defendants submitted plaintiff's entire medical record instead of limiting it to plaintiff's 2002 health issues. The record is quite voluminous (more than two inches thick) and nearly three-quarters of it irrelevant to the instant motions. Nonetheless, the court was required to review each page of the entire

106) Defendants also move for summary judgment on the remaining claims and rely, in part, upon plaintiff's failure to timely respond to requests for admissions directed to him. (See Aug. 12, 2008 order (D.I. 106) finding that requests to admissions directed to plaintiff are deemed admitted for failure to timely respond.)

Correctional Medical Services ("CMS") was the healthcare provider for the Delaware Department of Correction ("DOC") from January 2000 to June 30, 2002. (D.I. 110, ex. A) Medical records indicate that plaintiff received medical care and treatment up to the time he underwent emergency surgery in September 2002. As of 2001, plaintiff had been diagnosed with a hernia. (Id.) He received treatment for the condition in October 2001. (Id.)

Plaintiff sought medical care on March 20 and 24, 2002 with complaints of excessive bathroom use and was seen on March 25, 2002. (D.I. 118, ex. A2 progress notes) Plaintiff was taken to the infirmary on May 22, 2002, with complaints of excruciating pain. (D.I. 110, ex. A) Bradley requested that plaintiff see a physician, and the next day, received treatment for his hernias. (Id.)

Plaintiff requested medical care on June 2, 2002 due to pain and was seen on June 3, 2002. (D.I. 118, ex. A2 progress notes). He was admitted to the infirmary on June 6, 2002, with a three week history of abdominal pain, to rule out an incarcerated hernia,[2] and placed on a liquid diet. (D.I. 118, ex. A4 physicians' orders; ex. A2

---

submission as it trusted, incorrectly, that defendants had submitted only the pertinent medical records.

[2]A hernia that cannot be reduced without surgery. Also called an irreducible hernia. Stedman's Medical Dictionary 402, 427 (2d ed. 2004).

progress notes) The assessment was a periumbilical hernia, incarcerated but not appearing to be strangulated. (*Id.* at ex. A2 progress notes) Bradley was the nurse on duty for several days during plaintiff's stay in the infirmary. (*Id.* at ex. A4 physicians' orders) During his stay, an x-ray was ordered and it was noted to send plaintiff to the emergency room if he had an increase in abdominal pain. (*Id.*) An abdomen x-ray taken on June 7, 2002, suggested a partial distal small bowel obstruction. (*Id.* at ex. A2 lab/x-ray) Plaintiff was placed on a full liquid diet on June 10, 2002, for one week. (*Id.* at ex. A1) The explanation given was bowel obstruction. (*Id.*) Bradley administered medication to plaintiff on June 16, 2002 and advised that he would see a physician the next day. (D.I. 110, ex. A) A KUB (i.e., kidney, ureter and bladder) x-ray taken on June 18, 2002, revealed a moderate amount of gas in the large bowel, but no other significant abnormalities. (D.I. 118, ex. A2 lab/x-ray) Plaintiff was placed on a full liquid diet on June 19, 2002, for one week. (*Id.* at ex. A1) The explanation given was bowel obstruction. (*Id.*) Bradley examined plaintiff on June 18, 19, and 20, 2002. (D.I. 110, ex. A) Plaintiff was discharged to general population on June 20, 2002. (*Id.*) Plaintiff next sought medical attention on June 26, 2002, again with complaints of pain due to his hernia. (D.I. 118, ex. A2 progress notes) On July 1, 2002, FCM became the healthcare provider for the Delaware Department of Correction. (D.I. 110, ex. A)

Plaintiff was seen by medical on July 3, 13, 19, 21, and 26, 2002. (D.I. 118, ex. A4 physicians' orders; ex. A2 progress notes) Testing was ordered to rule out an obstruction. (*Id.*) A partial x-ray of the abdomen taken on July 9, 2002, revealed no evidence of bowel obstruction. (*Id.* at ex. A2 lab/x-ray) Plaintiff also sought medical attention on July 14, 2002. (D.I. 110, ex. A.)

In the meantime, beginning May 22, 2002, plaintiff's mother, Lois Davis ("Mrs. Davis"), spoke to her son on several occasions when he made complaints of severe pain. (D.I. 108, Mrs. Davis chronology of events) After several contacts from plaintiff complaining of his medical condition, Mrs. Davis contacted various offices regarding her son's condition. (*Id.* at Mrs. Davis aff.; chronology of events) Mrs. Davis received responses from Senator Joseph Biden's office and the Civil Division of the Office of the Attorney General of Delaware ("AG's office"). (D.I. 108, ex. Mrs. Davis. aff.) On July 8, 2002, the AG's office responded that, based upon diagnostic tests, the medical service provider determined that plaintiff's present condition did not require an operation. (*Id.* at ex. B) On July 15, 2002, the warden at the HRYCI advised Senator Biden that plaintiff had received medical attention on May 22 and 23, June 6, 12, and 13, and July 3, and that at the present time there was no reason to recommend surgery for his condition as there was no clinical need to repair the ventral hernia. (*Id.* at ex. C)

On July 18, 2002, plaintiff requested medical care. (*D.I. 118,* ex. A2 progress notes) He was seen the next day. (*Id.*) On July 22, 2002, Dr. Robinson requested an urgent (one to two weeks) referral for plaintiff's complaint of chronic abdominal pain, nausea, vomiting, and weight loss, nausea. (D.I. 118, ex. A3) The referral requested an abdominal CT scan and contrast. (*Id.*) FCM approved the referral on the same day and a CT scan was scheduled for August 6, 2002. (*Id.*)

Plaintiff was seen by medical on August 2, 5, and 6, before he was admitted to the infirmary again on August 9, 2002.[3] (*Id.* at ex. A4 physicians' orders; ex. A2

---

[3]On August 2, 2002, plaintiff asked to see a doctor, and was issued a disciplinary report and placed in solitary confinement after he yelled obscenities at corrections staff

progress notes) He was again placed on a liquid diet. (*Id.*) An x-ray taken on August 6, 2002, was normal. (*Id.* at ex. A2 lab/x-ray) CT scans of the abdomen and pelvis taken on August 7, 2002, were compatible with a mid small bowel obstruction. (*Id.*) On August 13, 2002, Dr. Robinson requested an urgent (one to two weeks) referral for plaintiff's complaint of chronic abdominal pain, weight loss, nausea, and small bowel obstruction. (D.I. 118, ex. A3) The referral requested general surgery and an appointment with Dr. Thomas Mammen ("Dr. Mammen"). (*Id.*) It was approved by FCM the same day. (*Id.*) An abdominal x-ray performed on August 13, 2002, revealed a nonspecific gas pattern, a moderate amount of fecal material in the right and transverse colon, but no other significant abnormalities. (*Id.* at ex. A2 lab/x-ray) Plaintiff remained on a full liquid diet and was placed on a regular diet as tolerated on August 19, 2002. (*Id.* at A4 physicians' orders) Plaintiff was medically discharged from the infirmary on August 23, 2002, and released to return to light duty work as tolerated. (*Id.* at ex. A2 progress notes; ex. A1) Assessment as of August 24, 2002 was a partial obstruction of vertebral hernia - improving. (*Id.*) Plaintiff next sought medical attention on August 26, 2002. (*Id.* at ex. A2 progress notes)

On September 2, 2002, Dr. Robinson placed plaintiff on a full liquid diet. (*Id.*) Assessment of plaintiff's condition as of September 3, 2002, was supra umbilical hernia, nonreducible and tender. (*Id.* at ex. A2 progress notes) On September 5, 2002, Dr. G. Roach ("Dr. Roach") requested an emergency consultation. (D.I. 108, at consultation request) FCM approved the request. (*Id.*) Plaintiff was admitted emergently to St.

---

when his request was not granted within a short time period. (D.I. 108, disciplinary report)

Francis Hospital on September 5, 2002. (D.I. 108, ex. St. Francis discharge summary) Plaintiff presented with a four month history of pain in the umbilical area and was noted to have a hernia approximately four months ago in that area. (*Id.*) The hernia was originally reducible, but then became irreducible. (*Id.*) Plaintiff had intermittent vomiting and abdominal pains for the past three months and lost about forty pounds. (*Id.*) A CT scan performed one month earlier showed near total obstruction of the small bowel. (*Id.*) Physical findings indicated an incarcerated ventral hernia with intestinal obstruction and signs of peritonitis. (*Id.*)

The day plaintiff was admitted to the hospital, September 5, 2002, Dr. Mammen performed an exploratory laparotomy and small bowel resection with anastomosis, peritoneal debridement, and tiolette repair of incarcerated ventral hernia. (*Id.*) Secondary diagnosis was protein calorie malnutrition and postoperative ileus. (*Id.*) Operative findings revealed evidence of long-standing small bowel obstruction with a perforation. (*Id.*) There was massive fecal peritonitis with indications that it had been present for quite some time. (*Id.*) Plaintiff did have a hernia, but at the time of surgery it had decompressed. (*Id.*) Plaintiff was discharged on September 14, 2002. (*Id.*)

Upon discharge, Dr. Robinson wrote orders for plaintiff to be housed in the infirmary and for plaintiff to proceed with post-operative follow-up with Dr. Mammen. (D.I. 118, ex. A4 physicians' orders; infirmary record/admission; progress notes) He was seen by Dr. Mammen on September 30, 2002. (D.I. 118, ex. A4 infirmary record/admission; progress notes) Plaintiff was released to general population on October 1, 2002. (D.I. 110, ex. A)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). To survive a motion for summary judgment, plaintiff cannot rely merely on the unsupported allegations of the complaint, and must present more than the "mere existence of a

scintilla of evidence" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plaintiff moves for summary judgment on the grounds that there are genuine issues of material fact which require trial of the issues, and defendants oppose the motion. Defendants move for summary judgment on the grounds that there are no genuine issue of material fact and, therefore, they are entitled to summary judgment. Plaintiff did not file responses to defendants' motions for summary judgment.

## IV. DISCUSSION

Defendants and plaintiff both seek summary judgment on the medical needs issue. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must prove (1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

Plaintiff argues that defendants were deliberately indifferent to his serious medical needs because of a misdiagnosis that could have resulted in serious complications or death. Plaintiff further argues that Dr. Robinson and Brady were aware of the diagnosis that plaintiff's hernia was not reducible, yet all they did was administer pain medication for four and one-half months. He contends that he received substandard medical care by Dr. Robinson and Bradley and that they did not follow the standards for health services "for jails national commission on correctional health care."

FCM argues that it is entitled to summary judgment because plaintiff has no evidence of a custom or policy of deliberate indifference and cannot produce any facts to support his claim. Dr. Robinson and Bradley argue that plaintiff has not provided any actual instances when they were deliberately indifferent to plaintiff's medical condition. They note that plaintiff was treated on numerous occasions from 2001 up to the date of his surgery in September 2002.

The record reflects that plaintiff's condition was monitored almost immediately following the time that FCM began providing medical services to the DOC in July 2002. The medical record is replete with medical notes evidencing that plaintiff was treated

time and time again for his medical conditions. Granted, plaintiff received emergent medical care on September 5, 2002, but prior to that time, on August 13, 2002, Dr. Robinson made an urgent request for plaintiff to receive outside care and undergo surgery. The record does not indicate if an appointment was scheduled prior to plaintiff's emergent admission. While there may have been a delay in surgery due to diagnostic testing and scheduling, such a delay does not constitute deliberate indifference to plaintiff's medical condition, particularly when there is no indication any delay was intentional.

Plaintiff also argues that he was misdiagnosed and received substandard care. His state medical claims, however, were dismissed. Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation).

Finally, in order to establish that FCM is directly liable for the alleged constitutional violations, plaintiff "must provide evidence that there was a relevant [FCM] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories). Plaintiff produced no such evidence.

There are no genuine issues of material fact as the record does not support a

finding of deliberate indifference to a serious medical need. For the above reasons, the the court will grant defendants' motions for summary judgment and will deny plaintiff's motion for summary judgment.

## V. CONCLUSION

The court will grant defendants' motions for summary judgment and will deny plaintiff's motion for summary judgment. An appropriate order will issue.